IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>          Plaintiff,<br><br>     v.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS 1-10; and DOE<br>GOVERNMENTAL AGENCIES 1-10,<br><br>          Defendants. | CIVIL NO.  1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION FOR SUMMARY<br>JUDGMENT** |

**MEMORANDUM IN SUPPORT OF MOTION
<u>FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

I.   FACTUAL BACKGROUND......................................................................I

   A.   Plaintiff Discloses That He Is Receiving 100% VA Disability
      Benefits for PTSD .............................................................2

   B.   Plaintiff Has a Profanity-Laced Outburst at Mr. Igne Because of
      an Instruction to Wear Pants While Pressure-Washing .....................2

   C.   Plaintiff Claims He is Unable to Work for More than Four
      Months After Receiving a Written Warning...............................4

   D.   L3Harris and Keaki Investigate Plaintiff's Allegation that Mr.
      Igne Stole Gas ..............................................................5

   E.   In January 2020, L3Harris Makes the Initial Decision to
      Terminate Plaintiff's Employment.........................................6

   F.   In February 2020, Plaintiff Makes Concerning Statements
      During an Independent Psychological Examination..........................7

   G.   L3Harris Terminates Plaintiff's Employment in June 2020 ...............8

II.  LEGAL STANDARD ........................................................................10

III. ARGUMENT...............................................................................10

   A.   Plaintiff's Disability Discrimination Claims (Counts I and III)
      Fail As a Matter of Law ...................................................10

      1.   Plaintiff fails to state a claim of disability discrimination
         based on events prior to the termination of his
         employment.........................................................11

      2.   Plaintiff's disability discrimination claims based on his
         termination fail because he cannot establish a prima facie
         case and L3Harris had legitimate, non-discriminatory
         reasons for discharging him. .........................................15

   B.   Plaintiff's Retaliation Claims (Counts II and IV) Fail Because
      He Cannot Show Causation and L3Harris Had Legitimate, Non-
      Retaliatory Reasons for Its Actions.......................................22

   C.   Plaintiff's Whistleblower Claim (Count V) Fails For Similar
      Reasons As His Retaliation Claims........................................24

IV.  CONCLUSION............................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bates v. United Parcel Serv., Inc.,*
    511 F.3d 974 (9th Cir. 2007) ......................................................................5

*Brown v. City of Tucson,*
    336 F.3d 1181 (9th Cir. 2003) ................................................................12

*Calef v. Gillette Co.,*
    322 F.3d 75 (1st Cir. 2003)......................................................................20

*Chancey v. Fairfield S. Co.,*
    949 F. Supp. 2d 1177 (N.D. Ala. 2013)..................................................17

*Cleveland v. Political Systems Corp.,*
    526 U.S. 795 (1999).........................................................................17, 19

*Crosby v. State Dep't of Budget & Fin.,*
    76 Hawai'i 332, 876 P.2d 1300 (1994)............................................24, 25

*Crossley v. CSC Applied Techs., L.L.C.,*
    569 F.App'x 196 (5th Cir. 2014) (Appendix 1) ....................................17

*Curley v. City of N. Las Vegas,*
    772 F.3d 629 (9th Cir. 2014) ..................................................................22

*Feldman v. Am. Mem'l Life Ins. Co.,*
    196 F.3d 783 (7th Cir. 1999) ...........................................................17, 19

*Flowers v. S. Reg'l Physician Servs. Inc.,*
    247 F.3d 229 (5th Cir. 2001) (Appendix 2)......................................12, 13

*French v. Hawaii Pizza Hut, Inc.,*
    105 Hawai'i 462, 99 P.3d 1046 (2004)...................................................11

*Henao v. Hilton Grand Vacations Inc.,*
    772 F. App'x 510 (9th Cir. 2019) ...........................................................24

i

*Hutton v. Elf Atochem N. Am., Inc.,*
  273 F.3d 884 (9th Cir. 2001) ........................................................11, 20

*Jones v. Williams,*
  791 F.3d 1023 (9th Cir. 2015) ...............................................................10

*Lales v. Wholesale Motors Co.,*
  133 Hawaiʻi 332, 328 P.3d 341 (2014).................................................23

*Levar v. Freeman Decorating Co.,*
  967 F. Supp. 1055 (N.D. Ill. 1997).......................................................24

*Manatt v. Bank of America, NA,*
  339 F.3d 792 (9th Cir. 2003) ..........................................................14, 21

*Mayo v. PCC Structurals, Inc.,*
  795 F.3d 941 (9th Cir. 2015) .....................................................16, 19, 20

*Muellner v. Mars, Inc.,*
  714 F. Supp. 351 (N.D. Ill. 1989).........................................................24

*O'Brien v. R.C. Willey Home Furnishings,*
  748 F. App'x 721 (9th Cir. 2018) (Appendix 3) .............................14, 21

*Pardi v. Kaiser Found. Hosps.,*
  389 F.3d 840 (9th Cir. 2004) .................................................................23

*Porter v. California Dep't of Corrections,*
  419 F.3d 885 (9th Cir. 2005) .................................................................10

*Raytheon Co. v. Hernandez,*
  540 U.S. 44 (2003)................................................................................11

*Reed v. Petroleum Helicopters, Inc.,*
  218 F.3d 477 (5th Cir. 2000) .................................................................17

*Roberts v. Dimension Aviation,*
  319 F. Supp. 2d 985 (D. Ariz. 2004) ....................................................12

*Schefke v. Reliable Collection Agency, Ltd.,*
  96 Hawaiʻi 408, 32 P.3d 52 (2001)........................................................11

ii

*Smith v. Clark Cty. Sch. Dist.*,
    727 F.3d 950 (9th Cir. 2013) ........................................................17

*Tagupa v. VIPdesk, Inc.*,
    125 F. Supp. 3d 1108 (D. Haw. 2015) ...........................................25

*Todd v. Fayette Cty. Sch. Dist.*,
    998 F.3d 1203 (11th Cir. 2021) .....................................................22

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) .................................................14, 22

*Williams v. Motorola, Inc.*,
    303 F.3d 1284 (11th Cir. 2002) .....................................................15

*Yamada v. United Airlines, Inc.*, No.19-00551, 2021 WL 2093692
    (D. Haw. May 24, 2021) (Appendix 4) ......................................25, 26

*Yonemoto v. Shulkin*,
    725 F. App'x 482 (9th Cir. 2018) (Appendix 5) ............................16

**Statutes**

42 U.S.C. § 2000e-5(e)(1)..............................................................12

Haw. Rev. Stat. Section 378-2 .......................................................11

Haw. Rev. Stat. Section § 368-11 ...................................................12

**Rules**

Fed. R. Civ. P. 56(a).....................................................................13

**Other Authorities**

*Applying Performance and Conduct Standards To Employees With
    Disabilities*, EEOC-NVTA-2008-3 (September 25, 2008) ...............16

iii

## I.   FACTUAL BACKGROUND

L3Harris Technologies, Inc. ("**L3Harris**") is a civilian contractor that provided services to the Navy at the Pacific Missile Range Facility ("**PMRF**") on Kauai until March 31, 2021. Declaration of John Kreider (**Kreider Decl.**) ¶2. L3Harris supplied these services with a joint venture partner, Keaki Technologies, LLC ("**Keaki**"). *Id.*  The joint-venture was called "Manu Kai." *Id.*

Plaintiff worked as a painter at PMRF until his employment was terminated on June 22, 2020. FAC ¶¶13, 90.  Plaintiff and his co-workers were members of the International Brotherhood of Electrical Workers ("**IBEW**"). Declaration of Danielle Stewart (**Stewart Decl.**) ¶3.  Plaintiff's work was directed by lead man Sean Igne and Plaintiff's and Mr. Igne's supervisor was Facilities Supervisor Rodney Martin. *Id.*; Plaintiff's Depo. Trans. (Exhibit B) ("**Lee Tr.**") at 16:6-16:10; 17:22-17:24.

Plaintiff could be volatile, becoming angry with his co-workers over minor issues. Declaration of Rodney Martin (**Martin Decl.**) ¶3.  Mr. Martin spoke to Plaintiff at various times about the need to be civil towards his co-workers and remain calm and professional. *Id.*  Plaintiff admits that handling disagreements with co-workers in a calm manner was a requirement for his job and swearing at or threatening a co-worker violates company policy.  Lee Tr. at 23:11-14; 27:15-21; Ex. X and Y.

**A.   Plaintiff Discloses That He Is Receiving 100% VA Disability Benefits for PTSD**

In March 2019, L3Harris learned that Plaintiff had been sharing with his co-workers that he had been diagnosed with PTSD and had received a 100% disability rating from the Department of Veteran Affairs (**VA**). Stewart Decl. ¶4.

On March 13, 2019, human resources representatives met with Plaintiff to see if Plaintiff needed any accommodations. Lee Tr. at 178:5-178:12.  During the meeting, Plaintiff disclosed that he had been diagnosed with PTSD and stated that he did not need any accommodations. Lee Tr. at 179:15-180:1.  No action was taken against Plaintiff at this meeting. Stewart Decl. ¶4; Lee Tr. at 180:2-180:19.

**B.   Plaintiff Has a Profanity-Laced Outburst at Mr. Igne Because of an Instruction to Wear Pants While Pressure-Washing**

On November 6, 2019, Mr. Igne observed Plaintiff pressure-washing while wearing shorts and asked him to put on rain pants.[1] Lee Tr. at 24:2-24:7. Ex. O. Plaintiff could not hear Mr. Igne over the noise of the gasoline-powered pressure washer, so Mr. Igne attempted to get Plaintiff's attention by honking and yelling. Lee Tr. at 30:22-31:4.  Plaintiff's co-worker brought him a pair of rain pants and Plaintiff put them on and continued working. Lee Tr. at 24:7-24:12.

Later that day, Plaintiff went to the paint shop office where Mr. Igne was

---

[1] Shortly before this incident, a safety officer observed Plaintiff's co-worker on the roof without fall protection and warned that she would be watching them. Martin Decl. ¶7; Lee Tr. 31:5-32:1.  No one was written up in connection with this warning. Martin Decl. ¶7.

and began yelling and swearing at Mr. Igne, threatening that if Plaintiff has to wear PPE (Personal Protective Equipment)[2] then Mr. Igne does as well, and Mr. Igne better be wearing PPE on Monday, or else Plaintiff would turn Mr. Igne in. Ex. O; Lee Tr. at 37:21-38:16; 39:11-39:22.  Mr. Igne responded, "why, are you going to turn me in?"  Ex. O; Lee Tr. at 39:23-39:24.  In response, Plaintiff returned and continued yelling and swearing at Mr. Igne. Ex. O; Lee Tr. at 25:6-25:15; 39:25-40:5.

Mr. Igne lodged a complaint about the incident with Mr. Martin. Martin Decl. ¶4; Ex. N; Lee Tr. at 40:10-41:16.  Mr. Martin interviewed and obtained signed statements from Plaintiff and co-workers who witnessed the incident.  Lee Tr. at 41:17-41:20; Martin Decl. ¶4; Exs. O-R; BB (**Castro Tr.**) at 16:18-19:22; CC (**Hesapene Tr.**) at 26:5-28:6.  In his signed statement, Plaintiff admitted he "was mad and [he] yelled and swore at [Mr. Igne] many times in a loud disruptive manner". Ex. O; Lee Tr. at 46:17-46:20; 47:23-48:1 (admitting that the contents of his statement are an accurate account of the incident).

Plaintiff's co-workers similarly supported that Plaintiff was angry and swore at Mr. Igne. Exs. P-R.  One co-worker reported that the next morning, Plaintiff said he "was going to punch Sean [Igne] through his face."  Plaintiff does not dispute making this statement. Lee Tr. at 49:16-50:18; Hesapene Tr. at 28:13-28:21.

---

[2] Mr. Igne was not pressure-washing that day and was wearing shorts, as Plaintiff often did at work.  Lee Tr. 35:15-35:17; 44:24-45:5.

**C.      Plaintiff Claims He is Unable to Work for More than Four Months After Receiving a Written Warning**

On November 18, 2019, Mr. Martin and a HR representative met with Plaintiff to issue a written warning for his unprofessional conduct toward Mr. Igne. Ex. S; Martin Decl. ¶4; Lee Tr. at 53:5-53:25.   The warning did not include a suspension, demotion, or cut in pay. Ex. S; Lee Tr. at 64:14-65:10.

During the meeting, Plaintiff accused Mr. Igne of stealing gasoline from the base. Martin Decl. ¶6; Lee Tr. at 55:21-55:24.  Mr. Martin told Plaintiff that they could discuss those accusations later and the purpose of this meeting was to discuss Plaintiff's conduct towards Mr. Igne. Martin Decl. ¶6.  Mr. Martin explained the expectation that Plaintiff act in a professional manner toward co-workers and reviewed the "Respect in the Workplace" training Plaintiff previously received. *Id.* ¶8.  Plaintiff sat with his head down during this discussion and it was apparent that he was not listening. *Id.*; *see also* Lee Tr. 58:3-21 (testifying that what Mr. Martin was saying "was going in one ear and coming out the other").

At the conclusion of the meeting, Plaintiff said that he needed to see his doctor and voluntarily left work. FAC ¶77; Martin Decl. ¶9; Lee Tr. at 65:11-65:16; 67:3-67:8. Subsequently, Plaintiff filed a workers' compensation claim because of ████████████████ Lee Tr. at 77:19-78:9; Ex. K.   Plaintiff submitted doctor's notes claiming he was unable to work for the remainder of November and all of December, January, February, and March. *See* Exs T and U.

**D.    L3Harris and Keaki Investigate Plaintiff's Allegation that Mr. Igne Stole Gas**

While Plaintiff was on leave, Mr. Martin investigated Plaintiff's allegation that Mr. Igne was stealing gasoline and found no evidence to support it. Martin Decl. ¶10. In December 2019, Ross West, a Keaki program manager, advised L3Harris that Plaintiff had made a complaint to the Navy that Mr. Igne was stealing gasoline.[3] Stewart Decl. ¶6; Lee Tr. at 83:20-84:3. Keaki assigned an employee named Scott Taylor to investigate the matter. Stewart Decl. ¶6; Ex. V. In the investigation report, which Keaki shared with L3Harris (Stewart Decl. ¶6), Mr. Taylor wrote when he interviewed Plaintiff by telephone, Plaintiff said Mr. Igne had been stealing gas from 2007-2010. Ex. V at 5; Lee Tr. 93:11-93:19. When asked why Plaintiff was only reporting the alleged theft in 2019, Plaintiff reportedly told Mr. Taylor, "Because he just turned me in, so I will turn him in." Ex. V at 5; Lee Tr. 94:15-95:16. Mr. Taylor reported that Plaintiff "talked in a rage with excessive profanity throughout", and he "was shocked by [Plaintiff's] degree of anger, given that he was about three weeks removed from his 18 Nov 19 counselling." Ex. V at 6.

---

[3] In December, Mr. West also wanted to restrict Plaintiff from accessing the employee areas of the base by collecting his CAC card and badge. Given that Plaintiff was on leave at the time, and collection of those items was consistent with the policy for employees on an extended leave, L3Harris agreed with Mr. West's request to collect those items from Mr. Lee. Kreider Decl. ¶3; Ex. W, Section 6.10.

Mr. Taylor's report concluded that a preponderance of evidence did not support theft of gas by Mr. Igne, and that "revenge is the clear motive for [Plaintiff] making the allegation." *Id.* at 4. The report, which also included statements from co-workers, found that Plaintiff "has demonstrated a pattern of violent behavior." *Id.* at 4, 9-17. The report stated that if Plaintiff "returned to his assigned position at the end of his medical leave, it is likely that the hostile work environment will further deteriorate into violence." *Id.* at 4.

When Keaki transmitted Mr. Taylor's report, Keaki told L3Harris it needed to "elevate" the concerns to a corporate level for consideration. *Id.* at 1; *see also* Stewart Decl. ¶6; Kreider Decl. ¶4. L3Harris also received from IBEW statements signed by some of Plaintiff's co-workers expressing concern for their safety if Plaintiff returned to the workplace. Stewart Decl. ¶7; Castro Tr. at 40:3-42:3.

**E.    In January 2020, L3Harris Makes the Initial Decision to Terminate Plaintiff's Employment**

In January 2020, after reviewing the circumstances involving the incident between Plaintiff and Mr. Igne in November 2019, the statements obtained by Mr. Taylor and the statements presented by IBEW, L3Harris' human resources business partner recommended terminating Plaintiff because of Plaintiff's aggressive conduct towards his co-workers, in order to maintain a safe and healthy workplace. Stewart Decl. ¶7. A L3Harris manager approved the termination in January 2020. Kreider Decl. ¶4. The recommendation and approval had nothing

to do with PTSD or any other alleged medical condition or disability. *Id.* ¶5; Stewart Decl. ¶8.

However, shortly before human resources was going to notify Plaintiff of his termination, Plaintiff presented a doctor's note extending his leave. Stewart Decl. ¶9. Since L3Harris generally does not terminate employees while on leave, the company stopped implementation of the termination at that time.[4] *Id.*

**F.    In February 2020, Plaintiff Makes Concerning Statements During an Independent Psychological Examination**

In February 2020, in conjunction with his workers' compensation claim, Plaintiff underwent an independent psychological exam ("**IPE**") conducted by clinical psychologist Dr. Peter Bianchi.[5] Stewart Decl. ¶10; Ex. Z. Dr. Bianchi's report explained, among other things, that Plaintiff:

_____

[4] After L3Harris put the termination on hold, on February 27, 2020, Plaintiff filed a charge of discrimination alleging disability discrimination and retaliation. Ex. L.

[5]



Ex. Z at 7-8 (emphasis added).

his doctor released

him to return to work effective April 1, 2020.  Ex. U at 5; Lee Tr. at 80:11-20.

**G.     L3Harris Terminates Plaintiff's Employment in June 2020**

To evaluate how best to address the situation, L3Harris placed Plaintiff on

paid administrative leave effective April 1, 2020.  Stewart Decl. ¶11. L3Harris

asked for Dr. Bianchi's opinion of the likelihood of another episode if Plaintiff

returned to work. Ex. AA at 1. Dr. Bianchi responded,

*Id.*

L3Harris also asked for Keaki's position on returning Plaintiff to work. Stewart Decl. ¶12. Mr. West relayed Keaki's position that it would not permit Plaintiff to return to the restricted areas of the base unless Plaintiff or L3Harris could provide medical clearance guaranteeing that Plaintiff was not a danger to himself or coworkers. *Id.*

On June 22, 2020, L3Harris terminated Plaintiff's employment. Stewart Decl. ¶14; FAC ¶90. The final decision to terminate Plaintiff's employment was based on several factors. Stewart Decl. ¶14. First, Plaintiff's comments to Dr. Bianchi regarding ████████████████████████████████████████ ████████████████████████████████████████████ *Id.* His statements suggested that he had not learned from the warning he received in November 2019. *Id.* Second, Keaki would not allow Plaintiff access to the base unless L3Harris could guarantee that he would not be a danger to himself or others, which L3Harris could not do. *Id.* Combined with the concerns described above that prompted the initial discussion to terminate Plaintiff's employment in January 2020, the human resources business partner again recommended that L3Harris terminate Plaintiff's employment, which decision was approved. *Id.*; Kreider Decl. ¶6.

On November 13, 2020, Plaintiff filed the instant lawsuit. On December 12, 2020, Plaintiff filed his second Charge of Discrimination with the Hawaii Civil

Rights Commission and EEOC which included allegations regarding his termination. Ex. M at 4. Plaintiff subsequently filed his FAC.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the moving party does not have the ultimate burden of persuasion at trial, the movant can satisfy its initial burden by "'either produc[ing] evidence negating an essential element of the nonmoving party's claim . . . or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015).

"[O]nce the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who must set forth specific facts showing that there is a genuine issue for trial." *Porter v. California Dep't of Corrections*, 419 F.3d 885, 891 (9th Cir. 2005) (cleaned up).

## III.   <u>ARGUMENT</u>

### A.   **Plaintiff's Disability Discrimination Claims (Counts I and III) Fail As a Matter of Law**

Discrimination claims under the Americans with Disabilities Act ("**ADA**") and Section 378-2 of the Hawaii Revised Statutes ("**HRS**") are analyzed under the

10

*McDonnell Douglas* burden-shifting framework. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49, n.3 (2003); *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001).

Plaintiff must establish a *prima facie* case by showing that "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Raytheon*, 540 U.S. at 49 n.3. If the defendant meets this burden, then the plaintiff must offer evidence demonstrating the explanation is pretextual. *Id.*

1.  Plaintiff fails to state a claim of disability discrimination based on events prior to the termination of his employment.

The FAC appears to allege that Plaintiff suffered discrimination prior to the termination of his employment.  These claims fail as a matter of law.

First, Plaintiff alleges that in February or March 2019, Mr. Igne and fellow union members harassed him on the basis of his PTSD by stating that they were afraid to work with him and saying that he should retire. FAC ¶¶19, 21, 23-25; Lee Tr. at 184:11-189:5. Even assuming a claim of harassment under the ADA is

actionable[6], Plaintiff's claim must be dismissed as untimely because Plaintiff did not file his Charge of Discrimination until February 27, 2020, which is more than 180 or 300 days after the alleged harassment occurred. *See* HRS § 368-11(c)(1) (requiring state law discrimination claims to be filed with the HCRC within 180 days after the alleged unlawful discriminatory practiced occurred);  42 U.S.C. § 2000e-5(e)(1) (300 day deadline for federal discrimination claims).

Moreover, Plaintiff cannot show that his co-workers' comments were based on his alleged PTSD or that they were severe or pervasive. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001) (Appendix 2) (plaintiff must show "that the harassment complained of was based on her disability or disabilities" and it was severe or pervasive). Plaintiff said his co-workers' comments concerned why Plaintiff didn't retire after receiving 100% VA benefits, not his alleged PTSD, which comments Plaintiff addressed on his own.  Lee Tr. at 184:11-189:5; 230:8-232:19.   Furthermore, there is no evidence that Plaintiff reported the alleged harassment such that L3Harris could be found negligent for failing to address it. *See Flowers*, 247 F.3d at 236 (plaintiff must show "that the employer knew or should have known of the harassment and failed to take prompt, remedial action") Martin Decl. ¶ 12; Lee Tr. at 188:15-189:5; 196:16-197:4; Ex. J

---

[6] The Ninth Circuit has not decided this issue. *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003). If it is, the elements would be similar to harassment claims under Title VII. *See, e.g., Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 988 (D. Ariz. 2004) (citing *Flowers*, 247 F.3d at 235-36).

Response #14.

Second, Plaintiff alleges that human resources improperly questioned him about his PTSD during a meeting in March 2019 meeting. FAC ¶¶29-37. Even assuming the questions were improper, Plaintiff did not timely file a Charge of Discrimination within 180 or 300 days of this incident.[7]

Third, Plaintiff claim that he suffered discrimination when Keaki's program manager took his access badges fails because requiring Plaintiff to return his badges while he was on leave was consistent with Manu Kai policy. FAC ¶¶80-81, 87; Lee Tr. at 96:13-98:17; Ex. W, Section 6.10. There is no evidence that this policy was unequally applied to Plaintiff because of his alleged PTSD. *See* Kreider Decl. ¶5.

Fourth, Plaintiff argues that he was unfairly disciplined at the November 2019 meeting.[8] FAC ¶¶53-73. However, there were legitimate, non-discriminatory reasons for the disciplinary action, based on Plaintiff's improper outburst towards Mr. Igne. Martin Decl. ¶4; Ex. O; Lee Tr. 27:15-27:21.[9] Even if L3Harris inaccurately assessed fault for the incident, L3Harris honestly believed that

---

[7] Plaintiff admits no disciplinary action was imposed on him as a result of this meeting, and he requested no accommodations. Lee Tr. at 180:2-180:19.

[8] Plaintiff identified no other disciplinary action after he disclosed he had PTSD and the termination of his employment. Lee Tr. at 236:7-237:4.

[9] The FAC suggests Plaintiff believes the disciplinary action was based on the inaccurate premise that Plaintiff had previously been "written up" by the safety officer. FAC ¶¶54-61. Plaintiff is simply mistaken. No one was written up by the safety officer and that was not the basis for the warning. Martin Decl. ¶7.

Plaintiff's inappropriate conduct warranted discipline based on the statements received from Plaintiff and his co-workers. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (holding that an employer need only show that it "honestly believed its reason for its actions"); Exs O-R; Martin Decl. ¶4.

Furthermore, the November 2019 warning occurred **nine months** after Plaintiff disclosed his alleged PTSD. This is too long to raise an inference of causation that L3Harris disciplined Plaintiff because of his PTSD. *See O'Brien v. R.C. Willey Home Furnishings*, 748 F. App'x 721, 723 (9th Cir. 2018) (Appendix 3) (explaining that causation may be inferred if the adverse employment action takes place "**shortly after** his employer discovers that he is disabled."); *cf. Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (declining to find an inference of causation where "nine months lapsed between the date of Manatt's complaint and the Bank's alleged adverse decision").

Finally, to the extent Plaintiff argues that L3Harris discriminated against him by asking him to undergo the IPE, it fails to state a claim.  L3Harris was entitled to ask Plaintiff to submit to an IPE in light of Plaintiff's workers compensation claim and recent belligerent behavior. *See, e.g., Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002) (employee's recent belligerent behavior, threats, and acts of insubordination justified a medical examination); Stewart Decl. ¶10.

Therefore, the disability discrimination claims premised on events prior to

14

Plaintiff's termination should be dismissed.

> 2. Plaintiff's disability discrimination claims based on his termination fail because he cannot establish a *prima facie* case and L3Harris had legitimate, non-discriminatory reasons for discharging him.

Plaintiff's discrimination claims based on his termination fail for three independent reasons. First, Plaintiff cannot establish that he is a "qualified individual" necessary to make a *prima facie* case. Second, Plaintiff cannot show that his employment was terminated because of his PTSD. Third, even if Plaintiff could establish a *prima facie* case, L3Harris terminated Plaintiff's employment for legitimate, non-discriminatory reasons.

### a.     *Plaintiff cannot establish he is a qualified individual*

To establish a prima facie case of disability discrimination, the plaintiff must show that he is a qualified individual who can perform his essential job functions with or without reasonable accommodation. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). "If a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's employment protections do not apply." *Id.* at 989 (citations omitted).

"An essential function of almost every job is the ability to appropriately handle stress and interact with others." *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015); *see also Yonemoto v. Shulkin*, 725 F. App'x 482, 484 (9th Cir. 2018) (Appendix 5) (holding that an employee was not qualified where he

could not "complete substantive work independently, take constructive criticism, and avoid interpersonal issues"). The Ninth Circuit explained the rationale for this rule as follows:

> The [ADA] does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge—in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone. The Act protects only "qualified" employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one.

*Mayo*, 795 F.3d at 944.

The EEOC similarly recognizes that the "ADA does not protect employees from the consequences of violating conduct requirements even where the conduct is caused by the disability," and employers are entitled to prohibit "violence, threats of violence, stealing, or destruction of property."[10]

A plaintiff can be estopped from establishing that he is a "qualified individual" under the ADA where the plaintiff previously applied for and received disability benefits from the government based on statements that genuinely conflict with the plaintiff's assertion that he can perform the essential functions of his job. *Cleveland v. Political Systems Corp.*, 526 U.S. 795, 805-06 (1999). *Cleveland* concerned statements made to obtain social security disability benefits, but courts

---

[10] *Applying Performance and Conduct Standards To Employees With Disabilities*, EEOC-NVTA-2008-3 (September 25, 2008), available at https://www.eeoc.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabilities#conduct (responses to questions 8 and 9).

16

have applied *Cleveland* and granted summary judgment to employers based on inconsistent statements made in other types of benefits applications, including disability benefits from the VA. *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 956 (9th Cir. 2013) (holding that *Cleveland* applies to receipt of other types of disability benefits); *Crossley v. CSC Applied Techs., L.L.C.*, 569 F.App'x 196 (5th Cir. 2014) (Appendix 1) (affirming summary judgment where employee with PTSD previously submitted a VA benefits application claiming she was totally disabled); *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 480 (5th Cir. 2000) (affirming summary judgment in favor of the employer based on plaintiff's doctor's statements in her benefits application); *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999) (affirming summary judgment for employer where plaintiff's prior statements in benefits application contradicted the notion that she could work as a traveling salesperson); *Chancey v. Fairfield S. Co.*, 949 F. Supp. 2d 1177, 1181 (N.D. Ala. 2013) (granting summary judgment against employee with PTSD where employee was clearly seeking 100% benefits).

Here, Plaintiff should be estopped from claiming he is a qualified individual based on his submissions to the VA that he is 100% disabled, which resulted in 100% disability benefits. Ex. F; Ex. H at 5 ██████████████████████

███████; Ex. D at 2; Ex. E.[11] In connection with his application, Plaintiff submitted

medical records indicating that ████████████████████████████████

████████████████████████████████████████████████████████

██████████ ▉ ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ Ex. H at 7, 13. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[11] The VA's decision granting Plaintiff 100% disability benefits identifies a
list of evidence the VA considered, including ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See* Ex. D at 2-
3 (for ease of reference, the referenced documents from the decision are
highlighted).

[12] ████████████████████████████████████████████████████████

████████████████████████████████████████████



Ex. I at 2, 3, 5.

The VA's decision to award Plaintiff 100% disability benefits were based on precisely these factual findings and statements. Ex. D at 4.

Plaintiff cannot overcome these **factual findings and statements** submitted in support of his benefits application, which flatly contradict his ability to "appropriately handle stress and interact with others," *Mayo*, 795 F.3d at 944 *see also Feldman*, 196 F.3d at 791 ("Although *Cleveland* clarified that an ADA claim is not estopped simply because an individual applied for or received SSDI benefits, a plaintiff cannot avoid summary judgment merely by asserting that she is a qualified individual if she made prior statements, in applying for [disability benefits], regarding her disability that are squarely contradictory."). Given that

---

13

Plaintiff continues to receive taxpayer-funded disability benefits, he should be estopped from claiming that he is a qualified individual. Lee Tr. 130:4-130:6; Ex. J Response #5.

Even if Plaintiff is not estopped, Plaintiff cannot meet his burden to establish that he is a qualified individual because of his conduct in the workplace and subsequent statements to Dr. Bianchi. *See Mayo*, 795 F.3d at 947; *Calef v. Gillette Co.*, 322 F.3d 75, 80-83, 87 (1st Cir. 2003) (affirming summary judgment where the employee was terminated after the employee made erratic and irrational statements towards his supervisor).

Plaintiff does not dispute that he yelled and swore at Mr. Igne, made threatening statements about punching Mr. Igne in the face, and told Dr. Bianchi █ ███████████████████████████████████████████████ Ex. O; Lee Tr. 27:15-27:21; 49:8-50:15; 114:9-20. Because Plaintiff cannot establish he is a qualified individual, his discrimination claims should be dismissed.

> b.    *Plaintiff cannot establish that L3Harris terminated his employment because of his alleged PTSD.*

Summary judgment should also be granted because Plaintiff cannot establish that he "suffered an adverse employment action because of his disability." *Hutton*, 273 F.3d at 891.  To prove causation, the Plaintiff must show that the employment action would not have occurred **but for** his disability. *Mayo*, 934 F.3d at 1105 (joining other circuits in holding that the "motivating factor" standard for causation

no longer applies to ADA discrimination cases), *cert. denied*, 140 S. Ct. 2720 (2020).

"[C]ausation may be inferred from timing alone where an employee is terminated shortly after his employer discovers that he is disabled." *O'Brien*, 748 F.App'x at 723. Plaintiff's termination more than a year after L3Harris learned of his alleged PTSD is too long for causation to be inferred. *See, e.g.*, *Manatt* 339 F.3d at 802 (nine months too long to infer causation). Plaintiff has no other evidence that would' establish that L3Harris terminated Plaintiff's employment because of his alleged PTSD. *See* Lee Tr. 119:16-119:21 (admitting that no one has ever told Plaintiff that he was discharged because of PTSD).

>        c.    *L3Harris had legitimate, non-discriminatory reasons for terminating Plaintiff's employment.*

Even if Plaintiff could establish a *prima facie* case, L3Harris terminated Plaintiff's employment for legitimate, non-discriminatory reasons. Stewart Decl. ¶14; Kreider Decl. ¶¶5, 6. L3Harris was not required to ignore Plaintiff's profanity-laced outburst towards Mr. Igne, the concerns raised by his co-workers and Keaki about his continued presence in the workplace, and Plaintiff's disturbing comments to Dr. Bianchi. Although Plaintiff testified he would not have acted

upon his threats[14], L3Harris was not required to take that risk. *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) ("[T]he plaintiff's threats were an independent and sufficient basis for dismissal, regardless of whether he posed an actual danger."); *Villiarimo*, 281 F.3d at 1063 ("Courts 'only require that an employer honestly believed its reason for its actions"); *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1218 (11th Cir. 2021) (teacher suffering from depressive disorder could not avoid summary judgment on ADA claim where the employer honestly believed that she threatened her co-workers).    Thus, Plaintiff's discrimination claims fail and should be dismissed.

**B.      Plaintiff's Retaliation Claims (Counts II and IV) Fail Because He Cannot Show Causation and L3Harris Had Legitimate, Non-Retaliatory Reasons for Its Actions.**

Like his discrimination claims, Plaintiff's retaliation claims fail because he cannot establish his termination was causally connected to any protected conduct. Even if he could establish a *prima facie* case, as noted above, L3Harris had legitimate, non-retaliatory reasons for its actions and Plaintiff is estopped from arguing otherwise based on his statements to the VA.

"To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an

---

[14] *See* Lee Tr. at 49:22-50:15. However, Plaintiff's contention that he would never follow through with his threats is belied by own admissions of numerous physical altercations. *Id.* at 147:20-152:3; Ex. I at 5.

adverse employment action; and (3) there was a causal link between the two."
*Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). If the employee establishes a *prima facie case*, the employer must offer a legitimate reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the employee to show that the reason is pretextual.  *Id.* The same requirements and analysis apply to claims under Hawaiʻi law. *Lales v. Wholesale Motors Co.*, 133 Hawaiʻi 332, 339 n.6, 328 P.3d 341, 348 n.6 (2014).

Although Plaintiff's FAC does not clearly say what protected activity he engaged in, Plaintiff's response to interrogatories identified his EEOC Charges as the only discrimination complaints he made.  Ex. J Response #14.There is no evidence that L3Harris terminated Plaintiff because he filed those charges.  An initial decision to terminate Plaintiff's employment was actually made in January 2020 (before the filing of any charge), and stopped because of the extension of Plaintiff's leave.  Stewart Decl.¶ 9; Kreider Decl. ¶6.  The subsequent final decision to terminate Plaintiff's employment in June 2020 was not based on the filing of his charge. Stewart Decl. ¶6, 8.  No other actions taken by L3Harris were based on any complaint of discrimination either. *See, e.g.*, Stewart Decl. ¶¶6, 8; Kreider Decl. ¶¶5, 6; Martin Decl. ¶¶3, 7.

Even if Plaintiff could establish a *prima facie* case, summary judgment is appropriate because L3Harris had legitimate, non-retaliatory reasons for

terminating Plaintiff's employment, as discussed in Section III.A.2.c. *supra*. Plaintiff cannot establish otherwise and should be estopped from contending it was wrongful to terminate his employment given Plaintiff's statements to the VA in support of his successful application for disability benefits. *See Muellner v. Mars, Inc.*, 714 F. Supp. 351, 360 (N.D. Ill. 1989) (holding an employee was estopped from asserting her discharge was retaliatory where the plaintiff previously represented to the social security administration that she was totally disabled); *Levar v. Freeman Decorating Co.*, 967 F. Supp. 1055, 1059 (N.D. Ill. 1997) (granting summary judgment for employer on Plaintiff's ADA and state retaliation claims for the period she received union benefits based on her representation that she was totally disabled).

**C.   Plaintiff's Whistleblower Claim (Count V) Fails For Similar Reasons As His Retaliation Claims**

Count V of the FAC also fails as a matter of law. "To establish a prima facie case for retaliation under the [Hawaii Whistleblower Protection Act ("**HWPA**")], the plaintiff must prove that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) the protected activity was a 'substantial or motivating factor' in the adverse employment action." *Henao v. Hilton Grand Vacations Inc.*, 772 F. App'x 510, 511 (9th Cir. 2019) (citing *Crosby v. State Dep't of Budget & Fin.*, 76 Hawai'i 332, 876 P.2d 1300, 1310 (1994)).

"In order for an employee to prevail under the HWPA, however, the

employer's challenged action must have been taken 'because' the employee engaged in protected conduct in order to be considered 'discriminat[ory]' under the HWPA. In other words, a causal connection between the alleged retaliation and the 'whistleblowing' is required." *Crosby*, 76 Hawai'i at 342, 876 P.2d at 1310. Thus, "employers are entitled to summary judgment if they can demonstrate that they would have reached the same adverse employment decision even in the absence of the employee's protected conduct." *Tagupa v. VIPdesk, Inc.*, 125 F. Supp. 3d 1108, 1120 (D. Haw. 2015) (citation and internal quotation marks removed). "If a plaintiff establishes his prima facie case, the burden would then shift to the defendant to articulate a legitimate, nondiscriminatory reason for his termination." *Yamada v. United Airlines, Inc.*, No.19-00551, 2021 WL 2093692, at *7 (D. Haw. May 24, 2021) (Appendix 4).

Although not identified in his FAC, Plaintiff stated at his deposition that his alleged protected activity occurred in November 2019 when he reported Mr. Igne was stealing gas and leaving work early. Lee Tr. at 197:5-198:12. Plaintiff's decision to make allegations against his lead man because he was "pissed off" that his lead man had made a complaint about Plaintiff's angry outburst is hardly the sort of conduct that the HWPA was designed to encourage or protect. *Id.* at 93:11-96:6; Ex. V at 5.

Furthermore, Plaintiff cannot establish a causal connection between his

25

alleged protected activity and his termination, which occurred more than six months later. *See Yamada*, 2021 WL 2093692, at \*7 (holding that six months between the protected activity and plaintiff's termination was too long to raise an inference of causation for HWPA claim). And even if Plaintiff could establish a *prima facie* case, L3Harris had legitimate reasons for terminating Plaintiff's employment wholly unrelated to Plaintiff's report. *See* Section III.A.2.c *supra*. Thus, summary judgment should also be entered on Plaintiff's HWPA claim.

## IV.   **CONCLUSION**

For the foregoing reasons, L3Harris respectfully requests that the Court enter summary judgment in its favor on all claims asserted in the FAC.

DATED:  Honolulu, Hawai'i, September 29, 2021.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Amanda M. Jones*
AMANDA M. JONES
MICHAEL R. SOON FAH
Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

26