CADES SCHUTTE
A Limited Liability Law Partnership

AMANDA M. JONES        8854-0
MICHAEL R. SOON FAH    11156-0
Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
Fax: (808) 521-9210
Email: ajones@cades.com
       msoonfah@cades.com

Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>Plaintiff,<br><br>v.<br><br>L3HARRIS TECHNOLOGIES, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>Defendants. | CIVIL NO. 1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S SEPARATE AND CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT;**<br><br>**DECLARATION OF AMANDA M. JONES;**<br><br>**DECLARATION OF LINDSAY HAEN;**<br><br>**DECLARATION OF DANIELLE STEWART;** |

|  | DECLARATION OF RODNEY MARTIN; |
|---|---|
|  | DECLARATION OF JOHN KREIDER; |
|  | EXHIBITS A-CC; |
|  | CERTIFICATE OF COMPLIANCE WITH WORD COUNT; |
|  | CERTIFICATE OF SERVICE |

# DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S SEPARATE AND CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendant L3Harris Technologies, Inc. ("**L3Harris**") submits this Separate and Concise Statement of Material Facts in support of its Motion for Summary Judgment.

| No. | Fact | Citation |
|---|---|---|
| 1. | L3Harris is a civil contractor who supplied services to the U.S. Navy at the Pacific Missile Range Facility ("**PMRF**") at Barking Sands on Kauai under a contract with its joint venture partner, Keaki Technologies, Inc. ("**Keaki**"), which joint-venture was called "Manu Kai." | Declaration of John Kreider (**Kreider Decl.**) ¶2. |
| 2. | Plaintiff Preston Lee ("**Plaintiff**") worked as a painter for L3Harris until his employment was terminated on June 22, 2020. | Ex. A (**FAC**) ¶¶13, 90 |
| 3. | Plaintiff worked under the direction of lead man, Sean Igne, and Mr. Igne's and Plaintiff's supervisor was Rodney Martin. | Ex. B ("**Lee Tr.**") at 16:6-16:10; 17:22-17:24. |

| No. | Fact | Citation |
|---|---|---|
| 4. | Handling disagreements with co-workers in a calm manner is a requirement for Plaintiff's position and swearing at or threatening a co-worker violates company policy. | Lee Tr. at 23:11-23:14; 27:15-27:21; Ex. X and Y; Martin Decl. ¶3 |
| 5. | [REDACTED] | Ex. F; Lee Tr. at 132:5-132:8 |
| 6. | [REDACTED] | Ex. G at 2, 3-4; Lee Tr. at 133:8-134:18 |
| 7. | [REDACTED] | Ex. H at 1, 5; Lee Tr. at 138:13-142:10 |
| 8. | [REDACTED] | Ex. I; Lee Tr. at 156:11-158:20 |
| 9. | [REDACTED] | Ex. I at 5; Lee Tr. at 144:14-144:21; 162:16-164:17 |
| 10. | [REDACTED] | Ex. D at 4 |
| 11. | [REDACTED] | *Id.* at 2-3 |

| No. | Fact | Citation |
|---|---|---|
| 12. | ████████████████████ | Ex. E; Lee Tr. 130:4-130:6; Ex. J Response #5 |
| 13. | In March 2019, L3Harris learned that Plaintiff had been sharing with his co-workers that he had been diagnosed with PTSD and received a 100% VA disability rating. | Declaration of Danielle Stewart (**Stewart Decl.**) ¶4; Lee Tr. at 176:24-177:16 |
| 14. | On March 13, 2019, Plaintiff met with human resources representatives where he disclosed that he had been diagnosed with PTSD and stated that he did not need any accommodations. | Stewart Decl. ¶4; Lee Tr. 177:25-178:15 |
| 15. | No disciplinary action was taken against Plaintiff at this meeting. | Stewart Decl. ¶4; Lee Tr. at 180:2-180:19 |
| 16. | On November 6, 2019, Mr. Igne observed Plaintiff pressure-washing while wearing shorts and asked Plaintiff to put on rain pants. | Lee Tr. at 24:2-24:7. Ex. O |
| 17. | Later that day, Plaintiff began yelling and swearing at Mr. Igne, stating that if Plaintiff has to wear PPE (Personal Protective Equipment) then Mr. Igne does as well, and Mr. Igne better be wearing PPE on Monday, or else Plaintiff would turn Mr. Igne in. | Ex. O; Lee Tr. at 25:6-25:15; 37:21-38:16; 39:11-39:22; 39:25-40:5; 46:17-46:20; 47:23-48:1 |
| 18. | Plaintiff admits that his behavior violated L3Harris' code of conduct. | Ex. O; Lee Tr. 27:15-27:21; 61:6-61:15 |
| 19. | Mr. Igne reported this incident to Rodney Martin, who interviewed Plaintiff and his coworkers whose statements validated that Plaintiff acted aggressively and swore at Mr. Igne, and that the day after the incident, Plaintiff told a co-worker he wanted to punch Mr. Igne in his face. | Declaration of Rodney Martin (**Martin Decl.**) ¶4, 5; Exs N; O; P-R; Lee Tr. at 49:16-50:18; Ex. BB at 16:8-19:22; Ex. CC at 28:13-28:21. |
| 20. | On November 18, 2019, Mr. Martin and a human resources representative met with Plaintiff and issued Plaintiff a written disciplinary warning for his unprofessional conduct towards Mr. Igne, which did not include a suspension, demotion, or pay cut. | Martin Decl. ¶4; FAC ¶69; Ex. S; Lee Tr. at 53:5-53:25; 64:2-65:10 |

4

| No. | Fact | Citation |
|---|---|---|
| 21. | During the meeting, Plaintiff accused Mr. Igne of stealing gas. | FAC ¶¶75-76; Martin Decl. at 6; Lee Tr. at 55:21-58:2 |
| 22. | At the conclusion of the meeting, Plaintiff stated that he needed to see his doctor and voluntarily left work. | FAC ¶77; Martin Decl. ¶9; Lee Tr. at 67:3-67:8 |
| 23. | Plaintiff subsequently initiated a workers compensation claim for [REDACTED], and submitted doctor's notes claiming he was unable to work for the remainder of November and December, January, February, and March. | Ex. K.; Lee Tr. at 77:25-78:9; Exs T and U |
| 24. | While Plaintiff was on leave, a Keaki program manager requested that Plaintiff return his CAC card and access badge, consistent with Manu Kai policy. | Kreider Decl. ¶3; Ex. W at 4, Section 6.10 |
| 25. | While on leave, Plaintiff made a complaint to the Navy accusing Mr. Igne of stealing gasoline and this complaint was forwarded to Keaki, who appointed an employee named Scott Taylor to investigate. | Lee Tr. 83:18-83:24; Ex. V |
| 26. | Keaki forwarded Mr. Taylor's report to L3Harris and asked L3Harris to elevate concerns regarding Plaintiff. | Ex. V at 1, 4-6; Stewart Decl. ¶6; Kreider Decl. ¶4 |
| 27. | In January 2020, after reviewing the November 2019 incident, the statements obtained by Mr. Taylor and the statements obtained by IBEW, L3Harris' human resources business partner recommended terminating Plaintiff because of Plaintiff's aggressive conduct towards his co-workers, in order to maintain a safe and healthy workplace. | Stewart Decl. ¶7 |
| 28. | Before L3Harris could notify Plaintiff of his termination, Plaintiff presented a doctor's note extending his leave, and L3Harris decided not to implement the termination at that time. | Stewart Decl. ¶9; Ex. U at 1 |
| 29. | In February 2020, in conjunction with his workers compensation claim, Plaintiff underwent an independent psychological exam conducted by Dr. Peter Bianchi. | Ex. Z; Lee Tr. at 103:25-104:7 |

| No. | Fact | Citation |
|---|---|---|
| 30. | Dr. Bianchi's report states that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ | Ex. Z at 7-8; Lee Tr. at 111:11-111:24; 113:24-115:18 |
| 31. | ■■■■■■■■■■■■■■■■■■■■■■■■■ his doctor released him to return to work effective April 1, 2020. | Ex. U at 5; Lee Tr. at 80:11-80:20 |
| 32. | To evaluate how best to address the situation, L3Harris placed Plaintiff on paid administrative leave effective April 1, 2020. | Stewart Decl. ¶11; Lee Tr. at 115:23-116:1 |
| 33. | L3Harris asked Dr. Bianchi how likely it is that there would be another episode if Plaintiff returned to work, to which Dr. Bianchi responded, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ | Ex. AA at 1 |
| 34. | Manu Kai's program manager relayed Keaki's position that it would not permit Plaintiff to return to the areas of the base for which access cards were required unless Plaintiff or L3Harris had a medical clearance guaranteeing that Plaintiff was not a danger to himself or his coworkers. | Stewart Decl. ¶12 |
| 35. | On June 22, 2020, L3Harris terminated Plaintiff's employment based on the concerns that prompted the initial decision in January 2020 to terminate Plaintiff's employment, as well as Plaintiff's comments to Dr. Bianchi regarding ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ and Keaki not allowing Plaintiff access to the base unless L3Harris could guarantee that he would not be a danger to himself or others. | FAC ¶90; Stewart Decl. ¶14 |
| 36. | Plaintiff has never been told by anyone at L3Harris that he was discharged because of PTSD. | Lee Tr. 119:16-119:21 |

| No. | Fact | Citation |
|-----|------|----------|
| 37. | Plaintiff did not make a complaint about discrimination or harassment by his co-workers until he filed his first EEOC Charge on February 27, 2020. | Martin Decl. ¶12; Lee Tr. at 188:19-189:5; 196:16-197:4; Ex. J Response #14; Ex. L |

DATED: Honolulu, Hawai'i, September 29, 2021.

/s/ *Amanda M. Jones*
AMANDA M. JONES
MICHAEL R. SOON FAH
Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.