IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>      Plaintiff,<br><br>    v.<br><br>L3HARRIS TECHNOLOGIES, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>      Defendant. | CIVIL NO. 1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**DECLARATION OF RODNEY MARTIN** |

## DECLARATION OF RODNEY MARTIN

I, Rodney Martin, hereby declare as follows:

1. I was employed by L3Harris Technologies, Inc. ("**L3Harris**") as the Facilities Maintenance Supervisor at the Pacific Missile Range Facility until my retirement on January 10, 2020. I make this declaration based on personal knowledge of the matters stated herein, unless otherwise noted.

2. In my role as Facilities Maintenance Supervisor, I oversaw facilities maintenance operations for Manu Kai, which was the joint-venture between L3Harris and Keaki Technologies. My responsibilities as Facilities Maintenance

Supervisor included oversight of the paint shop where Plaintiff Preston Lee worked. I was Mr. Lee's supervisor. Sean Igne was the lead man for the paint shop and a co-worker of Mr. Lee.

3. I served as Mr. Lee's supervisor for several years. While I got along with him fine, Mr. Lee could be volatile, becoming angry with his co-workers over minor issues. I had discussions with him at various times over the years about the need to be civil towards his co-workers and remain calm and professional. In particular, Mr. Lee did not like Mr. Igne, and vice versa. The dislike between them went back several years when they first started working together.

4. In November 2019, Mr. Igne contacted me and was very upset about an interaction he had with Mr. Lee at work. Mr. Igne expressed to me that he felt threatened by Mr. Lee and did not feel comfortable working with him after that. He relayed that other workers were present during the interaction. Mr. Igne made a written complaint to me about this incident. I investigated the incident by speaking with Mr. Lee and other individuals who were present, and I took statements from those involved. While Mr. Lee and Mr. Igne had somewhat differing versions of the interaction, the statements by his co-workers generally supported Mr. Igne's version of events and that Mr. Lee was swearing, angry and aggressive towards Mr. Igne. Based on the interviews that I conducted, I concluded that Mr. Lee's conduct towards Mr. Igne violated L3Harris policies, and

that a written warning should be issued to Mr. Lee for his inappropriate conduct. I met with Mr. Lee and a human resources representative later that month to issue the written disciplinary action to Mr. Lee. I understand that Mr. Lee is now making allegations of disability discrimination. However, the disciplinary action that was issued had nothing to do with any disability that Mr. Lee might have.

5. In speaking with Mr. Lee's co-workers at the time of this incident, his co-workers did express concern about Mr. Lee's volatile conduct. They expressed to me that they were concerned that Mr. Lee was a loose cannon and they did not know when he was going to snap because of how angry he would become about little things.

6. When we met with Mr. Lee to issue the written warning, Mr. Lee accused Mr. Igne of stealing gas on the base. I told Mr. Lee that we could discuss that later, as the purpose of the meeting was to discuss his conduct towards Mr. Igne. This allegation was consistent with how Mr. Lee had engaged in the past when his conduct was questioned. He would frequently bring up other issues or make accusations against others to try to avoid responsibility for his actions.

7. When I spoke with Mr. Lee about the incident with Mr. Igne, Mr. Lee had argued that he had not been written up by the safety officer for failing to wear proper protective equipment while pressure washing. However, the disciplinary action had nothing to do with Mr. Lee allegedly having been written up by a

PMRF safety officer. No one had been written up by the safety officer. I understood the officer had said she would be watching the guys after she observed Gilbert Castro on the roof without fall protection. I tried to explain that to Mr. Lee, but he refused to listen, and continued to insist he had not been written up. The disciplinary action issued to Mr. Lee was based on Plaintiff's aggressive and unprofessional behavior towards Mr. Igne, not a failure to wear protective equipment or having purportedly been written up by a PMRF safety officer. When I learned about the safety officer's comment, I told the paint shop employees to be careful and to be sure to wear fall protection, but I did not write anyone up for that.

8. During the meeting at the human resources office to issue the disciplinary action to Mr. Lee, I explained what was expected of him going forward, including that he needed to act in a professional manner towards his co-workers, including his lead man. I also reviewed the "Respect in the Workplace" training that he had previously received. During this portion of the discussion, Mr. Lee sat with his head down. It did not appear as though he heard anything that I was saying. There was no indication that Mr. Lee was going to change his conduct going forward. It did not appear that Mr. Lee was remorseful for his actions.

9. At the conclusion of the meeting, Mr. Lee said that he was going to the doctor and would find a lawyer and file a grievance. He then said he was leaving. He voluntarily left work that day and never returned before I retired in

January 2020.

10. After the meeting, I investigated Mr. Lee's allegation that Mr. Igne was stealing gasoline from base. As part of my investigation, I interviewed Mr. Lee's coworkers about this allegation. Based on my investigation, I found no evidence to support Mr. Lee's accusations.

11. In December 2019, I was interviewed by a Keaki employee named Scott Taylor, who was also investigating Mr. Lee's accusations that Mr. Igne was stealing gas from base. I informed Mr. Taylor that I found no evidence to support Mr. Lee's accusations.

12. I understand that Mr. Lee has alleged that he was harassed by his co-workers based on a disability. I am not aware of any such harassment. Mr. Lee did not make any complaints to me about any such harassment. If he had, I would have investigated those allegations, like I did with Mr. Igne's complaint about Mr. Lee and like I did with Mr. Lee's allegation of gas theft.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: __Kekaha__, Hawaii, September __9__, 2021.

_Rodney Martin_
RODNEY MARTIN