IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>                Plaintiff,<br><br>      v.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS 1-10; and DOE<br>GOVERNMENTAL AGENCIES 1-10,<br><br>           Defendant. | CIVIL NO.  1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**DECLARATION OF DANIELLE<br>STEWART** |

## DECLARATION OF DANIELLE STEWART

I, Danielle Stewart, hereby declare as follows:

1.     I worked at L3Harris Technologies, Inc. ("**L3Harris**") from July 2018 to May 2021.  I started as a Human Resources Business Partner and later became Human Resources Manager.  I make this declaration based on personal knowledge of the matters stated herein, unless otherwise noted.

2.     L3Harris is a civilian contractor that provided services to the United States Navy at the Pacific Missile Range Facility ("**PMRF**") at Barking Sands, Kauai until March 31, 2021 when L3Harris's contract ended and it no longer

employed any workers at PMRF. L3Harris supplied these services under a contract with its joint venture partner, Keaki Technologies, LLC (**"Keaki"**). The joint-venture was called "Manu Kai."

3.      In my role as Human Resources Business Partner, I was aware that Plaintiff Preston Lee worked at L3Harris as a painter.  I never met him in person, but in my capacity as Human Resources Business Partner, I was informed of issues that arose during his employment and was ultimately involved with the decision to terminate Mr. Lee's employment. Sean Igne was one of Mr. Lee's co-workers and the lead man for the paint shop.  Their supervisor was Rodney Martin. Mr. Lee and his co-workers in the paint shop were members of the International Brotherhood of Electrical Workers, Local Union 1260 (**"IBEW"**).

4.      I was informed in around March 2019, that Mr. Lee had been sharing with coworkers that he had been diagnosed with PTSD and had been awarded a 100% disability rating from the VA. Jasmine Apo, an HR specialist for L3Harris working at PMRF who reported to me, informed me that she and Julie Broyles, an HR Manager for Keaki, spoke with Mr. Lee and asked if he needed any accommodations.  Mr. Lee reportedly said none was needed.  No action was taken against Mr. Lee relating to the reported PTSD diagnosis.

5.      In November 2019, I was informed that a complaint had been made about Mr. Lee engaging in aggressive, unprofessional conduct towards Mr. Igne, in

violation of L3Harris policies, which was investigated by Rodney Martin. I was informed that Mr. Martin's investigation revealed that Mr. Lee had violated L3Harris policies and engaged in inappropriate conduct towards Mr. Igne warranting disciplinary action, which was issued by Mr. Martin later that month. I was informed that when the disciplinary action was issued, Mr. Lee alleged that Mr. Igne had been stealing gas from the base. I was also informed that Mr. Lee left work immediately after the meeting and later claimed that he was unable to work due to stress associated with the disciplinary action.

6.    After Mr. Lee went out on leave, Keaki program manager Ross West informed L3Harris that Mr. Lee had reported Mr. Igne's alleged gas theft to a Navy hotline and PMRF commanding officer. Mr. West informed L3Harris that he assigned a Keaki employee, Scott Taylor, to conduct an inquiry into the complaint. Mr. West subsequently shared Mr. Taylor's report with L3Harris, which included signed statements from Mr. Lee's co-workers expressing concern about working with Mr. Lee due to his conduct. Mr. West asked that these matters be elevated to a corporate level. I reviewed Mr. Taylor's report and the statements that Mr. Taylor obtained and discussed them with my manager, Amanda Arnold, and Jay Kreider, a L3Harris manager who oversaw operations at PMRF.

7.    After receiving Mr. Taylor's report, L3Harris also received from IBEW statements signed by some of Mr. Lee's co-workers expressing concern for

their safety if Mr. Lee returned to the workplace.  In reviewing the circumstances involving the incident with Mr. Igne in early November 2019, the statements obtained by Mr. Taylor and the statements presented by the union, and consulting with L3 legal counsel, I recommended to my manager, Amanda Arnold, in January 2020, that Mr. Lee's employment be terminated due to his aggressive conduct towards his co-workers, so that we could maintain a safe and healthy workplace.

8.      My recommendation to terminate Mr. Lee's employment had nothing to do with Mr. Lee reportedly having PTSD or any other medical condition or disability.  At the time I made this recommendation, I was not aware of any complaints having been made by Mr. Lee of discrimination, harassment, or retaliation.

9.      I began making arrangements to notify Mr. Lee of the termination decision when he returned from leave later in January.  However, right before we were to notify Mr. Lee about the termination decision, he presented a doctor's note extending his leave.  L3Harris generally does not terminate employees while on leave, so we stopped the termination from being implemented at that time.

10.     While Mr. Lee was on leave, in connection with a workers' compensation claim he had filed, Mr. Lee underwent an independent psychological exam with Dr. Peter Bianchi in February 2020.  I received a copy of Dr. Bianchi's report, which stated, among other things, that Mr. Lee had said he had thoughts of

doing something stupid at work like instigating a fight or argument with others for no reason. Particularly given Mr. Lee's prior angry outburst directed at Mr. Igne and the concerns expressed by his co-workers, Mr. Lee's threatening statement to Dr. Bianchi raised concerns about returning Mr. Lee to the workplace.

11.     Mr. Lee later submitted a doctor's note stating that he could return to work on April 1, 2020. To evaluate how best to address the situation, I decided, in consultation with L3Harris legal counsel and my manager, to place Mr. Lee on paid administrative leave effective April 1, 2020, until we could make a decision on how to proceed with his employment.

12.     As part of the assessment, I asked Mr. West for Keaki's position on returning Mr. Lee back to work following his administrative leave. Mr. West relayed that Keaki's position was that it would not permit Mr. Lee to return to the employee areas of the base for which access cards were required that Keaki had taken possession of unless Mr. Lee or L3Harris could provide medical clearance guaranteeing that Mr. Lee was not a danger to himself or coworkers. L3Harris could not provide that guarantee for Mr. Lee or any other employee.

13.     Following further discussions with Mr. Kreider and Ms. Arnold, and after consulting legal counsel, I again recommended termination of Mr. Lee's employment. I was aware at this point that Mr. Lee had filed a charge of discrimination with the Equal Employment Opportunity Commission against

L3Harris. However, the charge played no role in the termination decision.

14.    The final decision to terminate Mr. Lee's employment was based on several factors. First, Mr. Lee's comments to Dr. Bianchi regarding instigating a fight or argument with others for no reason raised concerns about employee safety and disruption to the workplace. His statements suggested that he had not learned from the warning he received in November 2019. Second, Keaki would not allow Mr. Lee access to the base unless L3Harris could guarantee that he would not be a danger to himself or others. Combined with the concerns described above that prompted the initial discussion to terminate Mr. Lee's employment in January 2020, I once again recommended that L3Harris terminate Plaintiff's employment, which decision was approved by Mr. Kreider and Ms. Arnold. I informed Mr. Lee of the termination decision by phone on June 22 2020, and thereafter sent him a letter confirming the decision and providing information about benefits and other matters relating to the termination of employment.

15.    I am aware that Mr. Lee has stated that he has PTSD. I do not know if he actually has PTSD or not. Whether he has PTSD or not was not relevant to and was not a basis for the decision to terminate his employment.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  Ashburn, Virginia, September 24, 2021.

DANIELLE STEWART