CADES SCHUTTE LLP
A Limited Liability Law Partnership

AMANDA M. JONES         8854
MICHAEL R. SOON FAH     11156
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
FAX: (808) 521-9210
Email:   ajones@cades.com
         msoonfah@cades.com

Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PRESTON LEE,<br><br>      Plaintiff,<br><br>   v.<br><br>L3HARRIS TECHNOLOGIES, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNICORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMNENTAL AGENCIES 1-10.<br><br>      Defendants. | CIVIL NO. 1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS;**<br><br>**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT;**<br><br>**CERTIFICATE OF SERVICE** |

**DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON ALL CLAIMS**

## TABLE OF CONTENTS

                                                                                                   **Page**

A.    The Opp. Did Not Address Fatal Deficiencies With the Discrimination Claims Based on Pre-Termination Events. .................1

B.    Plaintiff's Claims of Discrimination Based on His Termination Fail Because He Has Not Established a Prima Facie Case or Demonstrated L3Harris's Reasons Were Pretextual. ...........................4

       1.    Plaintiff cannot establish he is a "qualified individual." ...........4

       2.    Plaintiff should be estopped from arguing he is a "qualified individual." ................................................................8

       3.    Plaintiff cannot establish L3Harris terminated him because of PTSD. ..................................................................10

       4.    L3Harris's reasons for terminating Plaintiff were not pretextual. ................................................................................12

C.    Plaintiff's Retaliation Claim Fails Because He Cannot Establish Causation or Pretext. ............................................................................13

D.    Plaintiff's HWPA Claim Has Similar Fatal Defects. .........................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alamillo v. BNSF Ry. Co.*,
  869 F.3d 916 (9th Cir. 2017) ...................................................................................7

*Alvarez v. Sch. Bd. of Broward Cty.*,
  208 F.Supp.3d 1281 (S.D. Fla. 2016) .....................................................................8

*Casumpang v. Hawaiian Com. & Sugar Co.*,
  Civ.12-00694, 2014 WL 4322168 (D. Haw. Aug. 29, 2014)..............................12

*Cleveland v. Pol'y Mgmt. Sys. Corp.*,
  526 U.S. 795 (1999).......................................................................................4, 8, 9

*Curley v. City of N. Las Vegas*,
  772 F.3d 629 (9th Cir. 2014) ...................................................................................5

*Dark v. Curry County*,
  451 F.3d 1078 (9th Cir. 2006) ................................................................................7

*Feldman v. Am. Mem'l Life Ins. Co.*,
  196 F.3d 783 (7th Cir. 1999) ...................................................................................9

*Gambini v. Total Renal Care*,
  486 F.3d 1087 (9th Cir. 2007) ................................................................................7

*Humphrey v. Mem'l Hosps. Ass'n*,
  239 F.3d 1128 (9th Cir. 2001) ................................................................................7

*Kimbro v. Atlantic Richfield Co.*,
  889 F.2d 869 (9th Cir. 1990) ...................................................................................7

*Kuhn v. Washtenaw Cnty.*,
  709 F.3d 612 (6th Cir. 2013) ................................................................................15

*Lewis v. Ameron Int'l*,
  Civ.12-00453, 2014 WL 2968918 (D. Haw. July 1, 2014)................................15

*Mayo v. PCC Structurals, Inc.*,
   795 F.3d 941 (9th Cir. 2015) ..................................................................5, 6, 9

*Pietro v. Walt Disney Co.*,
   SACV11-0819, 2012 WL 4755415 (C.D.Cal. Oct. 4, 2012) ...............................7

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010)..............................................................................................9

*Sch. Dist. No.1J, Multnomah Cty., Or. v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) .................................................................................2

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ...........................................................................12

*Westendorf v. W.Coast Contractors of Nevada, Inc.*,
   712 F.3d 417 (9th Cir. 2013) ...............................................................................4

*Yonemoto v. Shulkin*,
   725 F.App'x 482 (9th Cir. 2018) .........................................................................6

**Statutes**

42 U.S.C. Section 2000e-5(e)(1)................................................................................3

Haw. Rev. Stat. Section 368-11(c)(1).......................................................................3

L3Harris Technologies, Inc. ("**L3Harris**") submits this reply in support of its Motion for Summary Judgment ("**Motion**") to address Plaintiff's Memorandum in Opposition to the Motion ("**Opp.**").

**A.    The Opp. Did Not Address Fatal Deficiencies With the Discrimination Claims Based on Pre-Termination Events.**

Plaintiff's Opp. ignores some of the fatal deficiencies identified in the Motion concerning alleged events prior to the termination of Plaintiff's employment. Plaintiff has tacitly conceded that these claims should be dismissed.

The Opp. did not dispute that Plaintiff did not file a timely charge of discrimination with respect to the alleged harassment by his co-workers. The Opp. confirms the alleged harassment occurred in February and March 2019,[1] which is more than 180 and 300 days prior to the filing of Plaintiff's first charge, and thus, untimely. HRS §368-11(c)(1); 42 U.S.C. §2000e-5(e)(1).

The Opp. also failed to address that the alleged conduct was not actionable because the co-workers' comments were not severe or pervasive and there was no evidence of negligence by L3Harris, *i.e.*, that any harassment occurred after notice to L3Harris. Mem. in Supp. of Motion at 12. In his declaration, Plaintiff claims he said during the November 18, 2019 disciplinary meeting that he felt he was being "singled out" due to his PTSD diagnosis. Lee Decl. ¶111. Even if Plaintiff could be

---

[1] *See* Opp. at 4; Plaintiff's Concise Statement ("**Lee CSF**") ¶¶14-15; Declaration of Preston Lee [Doc. 61-5] (**Lee Decl.**) ¶¶29-35.

1

found to have complained of discrimination during this meeting, contradicting his sworn statements[2], Plaintiff identifies no harassment occurring thereafter. Plaintiff left work to see his doctor after the disciplinary meeting and never returned to the workplace. Lee CSF ¶22; Lee Decl. ¶¶111-12; Ex. B at 67:3-:21.

Similarly, the Opp. did not dispute that Plaintiff did not timely file a charge of discrimination with respect to the alleged improper questioning during a meeting that Plaintiff admits occurred in March 2019. Lee Decl. ¶50. Thus, any claims based on this allegation or alleged co-worker harassment must be dismissed for failure to timely file a charge with respect to those alleged events.

Regarding the collection of Plaintiff's CAC badge during his extended absence, Plaintiff does not dispute that Manu Kai policy specified that employees "shall surrender" the badge when "beginning an extended leave of absence of 30-days or more," Ex. W ¶6.10. Plaintiff's absence undisputedly satisfied that period. Concise Statement ¶23. Plaintiff argues other employees went on leave and were not asked to return their badges, Opp. at 11, but Plaintiff produced no information

---

[2] Plaintiff did not identify any such complaint in his sworn response to an interrogatory request wherein the only complaints he identified were those filed with the EEOC/HCRC. Ex. J to the Motion #14. Under the "Sham-Affidavit Rule," Plaintiff cannot create a question of fact by submitting a declaration which contradicts his prior deposition testimony or interrogatory responses. *See Sch. Dist. No.1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993) (explaining that "a party should not be able to substitute an affidavit alleging helpful facts for earlier deposition testimony harmful to its case in order to avoid summary judgment" and that this rule "applies to conflicts between affidavits and interrogatory responses as well as deposition testimony").

regarding the length of the absences. Plaintiff proffered no evidence that the request to return the badge was based on a disability. Moreover, since Plaintiff was on leave from work, he had no need for the badge and thus suffered no harm from its retrieval.

Plaintiff's complaint that he was unfairly disciplined in November 2019 fails because he admits that he violated the Code of Conduct during the incident with Igne, Lee CSF ¶18. Plaintiff cannot establish he was disciplined not for that violation, but for his PTSD diagnosis, which L3Harris learned about at least eight months earlier, CSF ¶14.

Plaintiff erroneously contends his co-workers later refuted their statements about the incident. To the contrary, Castro and Hesapene testified that they spoke honestly to their supervisor about what happened between Plaintiff and Igne, and signed statements describing Plaintiff's angry, profane verbal attack. Ex.BB (Castro Depo.) at 16:6-19:2 & Ex.2; Ex.CC (Hesapene Depo.) at 26:18-28:6 & Ex.3. Whether these individuals presently believe Plaintiff's conduct was threatening is irrelevant. What matters is the information presented at the time the disciplinary decision was made, all of which, including Plaintiff's own statement about the incident (Ex. O) demonstrated that Plaintiff angrily yelled and swore at Igne "in a loud disruptive manner" (*id.*) because Igne had earlier directed Plaintiff to put on rain pants. Ex. N, P-R. Plaintiff may disagree about who was at fault, but

based on the signed statements describing what occurred, Plaintiff cannot establish that L3Harris did not believe disciplinary action was warranted. *Westendorf v. W.Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 425 (9th Cir. 2013) ("If the employee presents no evidence that the employer did not believe its proffered justification, summary judgment in favor of the employer is warranted.").

**B.      Plaintiff's Claims of Discrimination Based on His Termination Fail Because He Has Not Established a *Prima Facie* Case or Demonstrated L3Harris's Reasons Were Pretextual.**

Plaintiff's discrimination claim based on his termination fails because he cannot meet his burden to make a *prima facie* case. The Opp. misunderstands the requirements for demonstrating Plaintiff is a "qualified individual" and the law regarding estoppel.  Even if he could overcome those problems, Plaintiff cannot establish he was terminated "because of his disability" given that L3Harris was undisputedly aware of Plaintiff's PTSD diagnosis more than a year before Plaintiff's employment was terminated.  Finally, Plaintiff has not submitted evidence demonstrating the legitimate, non-discriminatory reasons for terminating Plaintiff were pretextual.

1.      <u>Plaintiff cannot establish he is a "qualified individual."</u>

Plaintiff bears the burden of proving he is a "qualified individual with a disability." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). The Opp. suggests Plaintiff satisfies the standard because he never had a physical

4

altercation at work and disputes having made threats on which he intended to act. Opp. at 14-17. These arguments miss the mark.

It is undisputed that Plaintiff's co-worker, David Hesapene, reported to L3Harris on November 7 that Plaintiff, still upset from having been told by Igne to put on rain pants the day before, said that he did not care if he lost his job, and that he was going to "punch Sean through his face." Ex. P (Hesapene Statement); Ex.CC (Hesapene Depo.) at 28:13-21 & Ex.3 (confirming same). Although Plaintiff now argues otherwise, at his deposition, Plaintiff testified, "I might have said I like punch him in his face but that's just speaking out loud." Ex. B at 49:22-:24.

The law does not require an employer to take the risk on whether an employee will act upon threats or wait for a violent incident before deciding to terminate, particularly where co-workers come forward with concerns about the threat-making employee returning to the workplace.[3] *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (holding an employer can terminate based on past threats, regardless of if that employee poses any actual danger); *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015) (recognizing that the ADA does not require an employer to stand on a "razor's edge" by retaining an

---

[3] The fact that not all employees were fearful of Plaintiff does not excuse the threat that was made or Plaintiff's angry outburst, which did understandably cause concern for certain of his co-workers.

5

employee who has made violent threats against a co-worker).

The Opp. argues Plaintiff's conduct should be excused because "[c]onduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." Opp. at 19 (citing *Humphrey, Gambini, Dark*, and *Kimbro*). This argument fails for several reasons.

First, in *Mayo*, the Ninth Circuit rejected that very argument because those cases did not address whether the plaintiff could make a *prima facie* case by demonstrating he was a "qualified individual," 795 F.3d at 946-47, which is the issue here. As *Mayo* recognized, an employee whose inability to control his stress leads to threats is not a "qualified individual," even if the stress was caused by a disability. *Id.*; *see also id.* at 944 ("[A]n essential function of almost every job is the ability to appropriately handle stress and interact with others."); *Yonemoto v. Shulkin*, 725 F.App'x 482, 484 (9th Cir. 2018) (holding that an employee cannot perform his essential job functions if he is "unable to complete substantive work independently, take constructive criticism, and avoid interpersonal issues").

Second, Plaintiff presented no evidence that his actions that led to his termination were caused by his PTSD. Instead, he blames Igne and others for conduct that he now argues was no big deal. Plaintiff still does not accept responsibility for his actions, much less proffer evidence that his conduct was caused by his disability. Courts have distinguished *Humphrey* in these

6

circumstances. *Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 921 (9th Cir. 2017) (holding that "no reasonable jury could find the requisite causal link" between the plaintiff's disability and attendance violations where the plaintiff produced no evidence that his disability caused the violations); *Pietro v. Walt Disney Co.*, SACV11-0819, 2012 WL 4755415, at *9 (C.D.Cal. Oct. 4, 2012) ("Unlike in *Humphrey*, where plaintiff produced documents from both a doctor and a psychologist attesting to this causal link, here Plaintiff's doctor wrote that Plaintiff 'can return to full duties with no restrictions on 4/14/2008.'").

Third, a critical issue in each of the cited cases was that the employees requested accommodations that arguably could have prevented the disability-induced problems that led to their terminations. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1140 (9th Cir. 2001); *Gambini v. Total Renal Care*, 486 F.3d 1087, 1094 (9th Cir. 2007); *Dark v. Curry County*, 451 F.3d 1078, 1089–90 (9th Cir. 2006); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1990). In contrast, Plaintiff admits he was asked and he **denied the need for any accommodation**. Lee Decl. ¶59-60. Plaintiff does not contend he later requested any accommodation[4], or that one could have provided to prevent the conduct that

---

[4] The Opp. argues that L3Harris did not offer Plaintiff any accommodation when he was ready to return from his extended leave. Opp. at 21. But Plaintiff does not allege he asked for an accommodation at that time, and even if he had, it was too late. *Alamillo*, 869 F.3d at 922 ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if

7

led to his termination.

In this case, the record shows that Plaintiff yelled and swore at Igne because of an instruction to wear pants while pressure washing, and the next day, he told a co-worker he wanted to punch Igne. After being warned his actions were inappropriate and disruptive, Plaintiff claimed he was unable to work for months and during his absence, made statements to Dr. Bianchi that raised legitimate concerns about Plaintiff's ability to safely return and work with others. Based on this evidence, Plaintiff cannot establish that he is capable of taking constructive criticism and avoiding interpersonal issues as required for all jobs.

### 2. Plaintiff should be estopped from arguing he is a "qualified individual."

Plaintiff should also be estopped from arguing he is a "qualified individual" based on the records he submitted to the VA in support of his claim for 100% disability benefits. Plaintiff asks the court to disregard the estoppel argument because L3Harris did not have Plaintiff's statements to the VA when it made the termination decision. Opp. at 16; Lee Decl. ¶23. L3Harris has not suggested otherwise, nor does the estoppel doctrine articulated in the Supreme Court's *Cleveland* decision and its progeny require it. Rather, Plaintiff is estopped because

---

it is the result of the individual's disability.") (quoting EEOC Enforcement Guidance); *Alvarez v. Sch. Bd. of Broward Cty.*, 208 F.Supp.3d 1281, 1286 (S.D.Fla. 2016) ("An employer generally is not required to grant a request for reasonable accommodation after the occurrence of workplace misconduct that warrants demotion or termination.").

his statements about his ability to work with others in this action are contradicted by the statements made in documents that he admits he submitted to the VA in support of his successful disability benefits claim. Lee CSF ¶¶5-12; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010) (explaining that estoppel focuses on the party's prior statements and applies when "a party has succeeded in persuading a [tribunal] to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second [tribunal] was misled") (internal quotations omitted).

Plaintiff has not attempted to reconcile his statements to the VA with his current assertion that he is a qualified individual because he cannot. Plaintiff's submissions to the VA are replete with statements establishing he cannot "appropriately handle stress and interact with others." *Mayo*, 795 F.3d at 944; Concise Statement ¶¶5-12. The problem is not that Plaintiff applied for disability benefits, but that the ***factual findings and statements*** in the documents that he submitted to obtain those benefits and a 100% disability rating contradict his contentions here that he is qualified. *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 791 (7th Cir. 1999) ("Although *Cleveland* clarified that an ADA claim is not estopped simply because an individual applied for or received SSDI benefits, a plaintiff cannot avoid summary judgment merely by asserting that she is a qualified individual if she made prior statements, in applying for SSDI, regarding

9

her disability that are squarely contradictory.").

Plaintiff argues his statements to the VA are not disqualifying because he is able to control his emotions at work and had no thoughts of hurting his co-workers. (Lee Decl.¶¶37-38, 132, 150).  But the records that Plaintiff submitted to the VA to obtain benefits say the opposite, reflecting Plaintiff's problems penetrated into the work environment, directly affected work relationships and his thoughts about his co-workers, and impeded his ability to control his actions without devolving to violence.  Ex. H (Progress Notes at 7 and 13 of 16); Ex. I (pages 3, 5, and 9 of 10). The VA relied on those assertions in awarding Plaintiff taxpayer-funded benefits. Ex. D at 4. Plaintiff cannot come to this court with a contrary story about his ability to function effectively in the workplace.   Because Plaintiff cannot demonstrate he is a "qualified individual," he cannot make a *prima facie* case of discrimination.

   3. <u>Plaintiff cannot establish L3Harris terminated him because of PTSD.</u>

Plaintiff also cannot demonstrate he was terminated because of PTSD.  As temporal proximity is absent, Plaintiff tries to invoke the cat's paw theory, arguing that Igne influenced the decision to terminate Plaintiff's employment. Opp. at 22. This argument fails for several reasons.

First, even assuming the cat's paw theory could apply to a non-supervisory employee like Igne, there is no evidence that his complaint in November 2019 was

motivated by disability-based bias. Plaintiff contends he told Igne about his PTSD diagnosis in February 2019. Lee Decl. ¶26. Igne's complaint was nine months later concerning conduct occurring that day, and does not mention PTSD.  Ex. N.

Second, L3Harris did not act based solely on Igne's complaint.  Mr. Martin conducted an investigation, interviewing Plaintiff and his co-workers who witnessed the incident. Those statements (including Plaintiff's own statement) established that Plaintiff angrily yelled and swore at Igne for no good reason. Exs. O-R. Based upon these statements and Plaintiff's admission that his actions violated company policy, Plaintiff cannot establish that L3Harris simply adopted Igne's complaint, but rather, verified there was a legitimate basis for discipline.

Third, the conduct addressed in Igne's complaint was not the sole reason for Plaintiff's termination. As explained in the Motion, after Plaintiff was disciplined for his conduct towards Igne, Plaintiff's co-workers (through the union) submitted signed statements expressing concern for their safety if Plaintiff returned to the workplace. Stewart Decl. ¶7; Ex.BB (Castro Depo) at 40:1-42:10 & Ex.4.  After that, Plaintiff made concerning statements to Dr. Bianchi, Ex. Z, and Keaki required a medical clearance guaranteeing that Plaintiff was not a danger, which L3Harris could not provide, Stewart Decl. ¶12. Igne was not involved with those events, which culminated in the termination of Plaintiff's employment.  Thus, the cat's paw theory does not save Plaintiff from the fatal problem that he cannot

11

establish he was terminated because of PTSD.

    4.  <u>L3Harris's reasons for terminating Plaintiff were not pretextual.</u>

Even if Plaintiff could make a *prima facie* case, summary judgment should be granted because Plaintiff has not submitted evidence demonstrating that the reasons for termination described in the declarations of Ms. Stewart and Mr. Kreider were pretextual.[5] Plaintiff disagrees on how the company should have handled the situation wherein Plaintiff had a profanity-laced outburst, made a threat to punch his co-worker, was unable to handle a disciplinary meeting to address that conduct, and made concerning statements to Dr. Bianchi, and where Plaintiff's co-workers expressed fear about his return to the workplace and Keaki required a guarantee of safety before it would allow Plaintiff to return. Even assuming the assessment was wrong that these circumstances raised concerns about employee safety and workplace disruption warranting termination, the question is not whether the employer's decision was wise or correct. "[C]ourts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*,

---

[5] Plaintiff asks that the declarations be stricken as to "any events that Ms. Stewart and Mr. Kreider did not have personal, firsthand knowledge of, such as what occurred in the workplace and at meetings with HR on Kauai for L3." Opp. at 13. The purpose for these declarations was not to identify what happened in the workplace, but to establish the legitimate, non-discriminatory reasons for terminating Plaintiff's employment. They are admissible for that purpose. *See Casumpang v. Hawaiian Com. & Sugar Co.*, Civ.12-00694, 2014 WL 4322168, *16 (D.Haw. Aug. 29, 2014), aff'd, 712 F.App'x 709 (9th Cir. 2018).

281 F.3d 1054, 1063 (9th Cir. 2002). There is no evidence demonstrating that L3Harris did not honestly believe the articulated reasons for terminating Plaintiff's employment. For this additional reason, summary judgment should be entered on Plaintiff's discrimination claims.

C. **Plaintiff's Retaliation Claim Fails Because He Cannot Establish Causation or Pretext.**

The Opposition lumps together the discussion of Plaintiff's retaliation and whistleblower claims. Because the conduct protected by the disability discrimination and whistleblower statutes is different, the claims should be separately analyzed. Relevant to his retaliation claim based on the ADA and state law, the only complaints of discrimination Plaintiff identified in his sworn interrogatory responses were the EEOC/HCRC charges, the first of which was filed in late February 2020. Ex. J #14. Given the initial decision to terminate Plaintiff was made in January 2020 (before the charge was filed), and deferred because Plaintiff extended his leave, and there is no evidence showing that Plaintiff was terminated "because of" the filing of the charges, Plaintiff failed to establish a prima facie case of retaliation.

Plaintiff attempts to create a factual question by suggesting he referenced being "singled out" due to PTSD during the November 2019 disciplinary meeting. However, as discussed above, any suggestion that he made an earlier complaint is contradicted by his sworn interrogatory responses, which identify the

13

EEOC/HCRC charges as the only discrimination complaints Plaintiff made. Ex. J #14.

The Opp. argues a "pattern of antagonism" can give rise to an inference of causation and argues such a pattern "culminated in **Mr. Ho's** termination." Opp. at 24 (emphasis added). This argument seems to have been copied from another brief with different facts. No such pattern existed here. It is undisputed that Plaintiff disclosed his PTSD diagnosis in February 2019, and L3Harris was aware of it no later than March 2019. Lee CSF ¶14. Following the meeting where Plaintiff was asked and he denied the need for any accommodation, *id.*, no action was taken against him until the disciplinary warning in November 2019, prompted by Plaintiff's angry outburst toward Igne.

Even if Plaintiff could make a *prima facie* case, for the reasons described above, Plaintiff has not demonstrated that L3Harris's legitimate reasons for terminating Plaintiff's employment were pretextual. Furthermore, Plaintiff should be estopped from arguing it was wrongful to terminate Plaintiff's employment given the statements in Plaintiff's documentation submitted to the VA. Plaintiff's retaliation claim should be dismissed.

**D.  Plaintiff's HWPA Claim Has Similar Fatal Defects.**

Apparently recognizing problems with his "gas theft" allegations he initially claimed supported his whistleblower claim, the Opp. argues this claim is also

14

premised on Plaintiff's alleged objection to the handling of his "CAC/secret clearance card." Opp. at 25. However, Plaintiff testified unequivocally at his deposition that he did <u>not</u> express his alleged concerns that the handling of his card was illegal when Ross West asked for the card because Plaintiff was not going to tell the project manager how to do his job. Ex. B at 100:19-101:20. As noted above, Plaintiff cannot create a factual question through a declaration contradicting his prior testimony.

Plaintiff's gas theft allegation fails because he cannot establish causation. Lacking any evidence that L3Harris would be motivated to fire Plaintiff based on that allegation, Plaintiff attempts to rely on temporal proximity. But temporal proximity is "not the sole measuring stick." *Lewis v. Ameron Int'l*, Civ.12-00453, 2014 WL 2968918, *7 (D.Haw. July 1, 2014); *see also Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) ("[A]n intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity"). One cannot ignore the events that transpired after Plaintiff's allegation. Thereafter, (1) Keaki relayed concerns about Plaintiff's behavior based on Taylor's investigation, (2) L3Harris received statements from Plaintiff's union by co-workers expressing concern for their safety if Plaintiff returned to work; (3) Plaintiff made concerning statements to Dr. Bianchi; and (4) Keaki asked for a guarantee that Plaintiff could safely return, which L3Harris could not provide.

15

These events were specifically considered in the ultimate decision to terminate Plaintiff's employment. Stewart Decl. ¶14; Kreider Decl. ¶6. Plaintiff presents no evidence that L3Harris did not honestly believe these reasons. Furthermore, Plaintiff should be estopped from asserting it was wrongful to terminate him.

Based on the foregoing and reasons described in the Motion, summary judgment should be granted on all of Plaintiff's claims.

DATED: Honolulu, Hawai'i, October 29, 2021.

                                             CADES SCHUTTE LLP
                                             A Limited Liability Law Partnership

                                             */s/ Michael R. Soon Fah*
                                             AMANDA M. JONES
                                             MICHAEL R. SOON FAH
                                             Attorneys for Defendant
                                             L3HARRIS TECHNOLOGIES, INC.