FUJIWARA AND ROSENBAUM, LLLC

ELIZABETH JUBIN FUJIWARA 3558
JOSEPH T. ROSENBAUM 9205
1100 Alakea St., 20th Fl., Ste B
Honolulu, Hawaii 96813
Telephone: 808-203-5436

Attorneys for Plaintiff
PRESTON LEE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>    Plaintiff,<br><br>  vs.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS<br>1-10; and DOE GOVERNMENTAL<br>AGENCIES 1-10,<br><br>    Defendants. | ) CIVIL NO. 20-00489 LEK-KJM<br>) (Other Civil Action)<br>)<br>) **PLAINTIFF'S NOTICE OF**<br>) **APPEAL TO THE UNITED**<br>) **STATES COURT OF APPEALS**<br>) **FOR THE NINTH CIRCUIT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Action Filed: November 13, 2020<br>) Judge: Hon. Leslie E. Kobayashi<br>) |

**PLAINTIFF'S NOTICE OF APPEAL TO THE UNITED STATES COURT
OF APPEALS FOR THE NINTH CIRCUIT**

Plaintiff PRESTON LEE hereby appeals to the United States Court of

1

Appeals for the Ninth Circuit from this Court's January 31, 2022 Order (Doc. 82)

Granting Defendant L3HARRIS TECHNOLOGIES, INC.'s Motion for Summary

Judgment (attached hereto) and the Court's January 31, 2022 Judgment in a Civil

Case (Doc. 83) (attached hereto) in favor of Defendant L3HARRIS

TECHNOLOGIES, INC.

        DATED:    Honolulu, Hawaii; February 25, 2022.

                /s/ Joseph T. Rosenbaum
                JOSEPH T. ROSENBAUM
                Attorney for Plaintiff Preston Lee

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>              Plaintiff,<br><br>      vs.<br><br>L3HARRIS TECHNOLOGIES, INC.,<br>JOHN DOES 1-10, JANE DOES 1-10,<br>DOE CORPORATIONS 1-10,  DOE<br>PARTNERSHIPS 1-10,  DOE<br>UNINCORPORATED ORGANIZATIONS 1-<br>10,  DOE GOVERNMENTAL AGENCIES<br>1-10,<br><br>              Defendants. | CIV. NO. 20-00489 LEK-KJM |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

          Before the Court is Defendant L3Harris Technologies,

Inc.'s ("L3Harris") Motion for Summary Judgment on All Claims

("Motion"), filed on September 29, 2021.  [Dkt. no. 49

(redacted).[1]]  Plaintiff Preston Lee ("Lee") filed his memorandum

in opposition on October 22, 2021, and L3Harris filed its reply

on October 29, 2021  [Dkt. nos. 60, 66.]  The Court finds this

matter suitable for disposition without a hearing pursuant to

Rule LR7.1(c) of the Local Rules of Practice for the United

States District Court for the District of Hawaii ("Local

_____

          [1] L3Harris filed the unredacted version of the Motion under
seal on October 1, 2021.  [Dkt. no. 54.]

Rules"). L3Harris's Motion is hereby granted for the reasons set forth below.

<u>BACKGROUND</u>

This action concerns a workplace dispute and the events that followed. L3Harris is a civil contractor that supplied services, with its joint venture partner, Keaki Technologies Inc. ("Keaki"), to the United States Navy at the Pacific Missile Range Facility ("PMRF") at Barking Sands on Kauai. Lee worked as a painter for L3Harris. Lee's work was directed by lead man, Sean Igne ("Igne"), and Lee and Igne's supervisor was Facilities Supervisor Rodney Martin ("Martin"). [L3Harris's Separate and Concise Statement of Material Facts in Supp. of Motion for Summary Judgment ("L3Harris's CSOF"), filed 9/29/21 (dkt. no. 50), at ¶¶ 1-3;[2] Lee's Concise Statement of Facts ("Lee's CSOF"), filed 10/22/21 (dkt. no. 61), at ¶¶ 1-3 (stating L3Harris's ¶ 1 is undisputed).]

I.   <u>Lee's Initial Meeting with Human Resources</u>

On March 13, 2019, Lee participated in a meeting with L3Harris's human resources ("HR") representatives ("3/13/19 Meeting") where the parties discussed that Lee was diagnosed with post-traumatic stress disorder ("PTSD"), and Lee stated he

---

[2] Docket number 50 is the redacted version of L3Harris's CSOF. The unredacted version was filed under seal on October 1, 2021 ("L3Harris's Sealed CSOF"). [Dkt. no. 55.]

did not need accommodations.  [L3Harris's CSOF ¶ 14; Lee's CSOF at ¶ 14 (partially disputing L3Harris's CSOF ¶ 14 on other grounds).]  Lee was not disciplined during the 3/13/19 Meeting. [L3Harris's CSOF ¶ 15; Lee's CSOF ¶ 15 (partially disputing L3Harris's CSOF ¶ 15 on other grounds; L3Harris's CSOF, Decl. of Amanda M. Jones ("Jones Decl."), Exh. B (excerpts of trans. of 6/25/21 depo. of Lee) ("Lee Depo. Trans.") at 180.]

II.  **The Incident**

On November 6, 2019, Igne witnessed Lee pressure-washing while wearing shorts and asked Lee to change into rain pants.  [L3Harris's CSOF ¶ 16; Lee's CSOF ¶ 16.]  Because Lee could not hear Igne's requests due to the pressure washer's noise, Igne attempted to get Lee's attention by yelling and honking a vehicle's horn.  [Lee Depo. Trans. at 30–31; L3Harris's CSOF, Decl. of Lindsay Haen ("Haen Decl."),[3] Exh. O (Lee's written statement to Martin regarding the 11/6/19 events, dated 11/7/19).]  A coworker then walked over to Lee and gave him a pair of rubber rain pants.  [Lee Depo. Trans. at 24.]

Later during the day of the pressure-washing incident, Lee went to the office where Igne was.  According to Lee, he did not yell at Igne, but he admits he swore at Igne because Igne swore at him first.  Lee states he told Igne that, if he had to

_____

[3] Haen is the Director, Human Resources of L3Harris's Mission Networks Division.  [Haen Decl. ¶ 1.]

wear his personal protective equipment ("PPE"), then Igne needed to wear his.  Lee then told Igne that, if he did not bring his PPE the following Monday, then he would turn Igne in.  According to Lee, it was at this point when Igne swore at Lee and Lee swore back at Igne.  [Id. at 39-40.]  They exchanged swear words "twice, maybe three times," then Lee walked away.  [Id. at 40.] Lee contends in his deposition testimony that he did not yell at Igne.  [Id. at 39.]  But, in his written statement to Martin the day after the incident, Lee wrote that he yelled at Igne.  [Haen Decl., Exh. O ("that's when I started yelling and swearing at him").]

The next day, Igne submitted a written complaint to Martin.  [L3Harris's CSOF, Decl. of Rodney Martin ("Martin Decl.") ¶ 4.]  Martin states Igne expressed to him that he "felt threatened by" Lee and "did not feel comfortable working with [Lee] after" their interaction.  [Id.]  Martin investigated the incident by speaking with Lee and the other workers present and took statements from those involved.  [Id.]  Although Lee and Igne "had somewhat differing versions of the interaction," Martin states "the statements by [Lee's] co-workers generally supported Mr. Igne's version of events and that Mr. Lee was swearing, angry and aggressive towards Mr. Igne."  [Id.]

One of Lee's coworkers, David Hesapene ("Hesapene"), submitted a written statement to Martin the day after the

incident.[4]  [Haen Decl., Exh. P (Hesapene's written statement to Martin regarding the 11/6/19 events, signed 11/7/19).]  There, Hesapene states that, around 5:45 p.m., he heard Lee "going off, yelling at [Igne]."  [Id.]  Hesapene heard Lee "swearing the F word at [Igne] and [Igne] yelled back in defense."  [Id.] Although Hesapene "couldn't hear everything that was being said clearly," he states Lee "was extremely loud and angry and not acting in a civil manner."  [Id.]  The day after the incident, Lee said to Hesapene, "'I don't care if I going to lose my job, I just going to punch [Igne] through his face.'"[5]  [Id.]  After Hesapene told Lee, "I thought you guys settled this years ago," Lee said "' F _ _ _ [Martin], F _ _ _ [Igne], nobody can touch me, not [Martin], not [Igne] or HR.'"  [Id.]  However, Hesapene testified in his deposition that he did not believe Lee was going to punch Igne.  [Lee's CSOF, Decl. of Joseph T. Rosenbaum

_____

⁴ In this individual's deposition, he spelled his last name as "Hesapene," see Jones Decl., Exh.  CC (excerpts of trans. of 9/22/21 Hesapene depo.) at 4, but his declaration spells his last name as "Hasapene," see generally Lee's CSOF, Decl. of David Hasapene ("Hesapene Decl.").  For simplicity, the Court refers to this individual as "Hesapene."

⁵ Lee denied saying he was going to punch Igne through the face, but he admitted that he might have said he would have liked to punch Igne.  See Lee Depo. Trans. at 49.

("Rosenbaum Decl."), Exh. B (excerpts of trans. of 9/22/21 Hesapene depo.) ("Hesapene Depo. Trans.") at 44.[6]]

Another coworker, Mark Vegas ("Vegas"), also submitted a written statement to Martin the day after the incident. [L3Harris's CSOF, Haen Decl., Exh. Q (Vegas's written statement to Martin regarding the 11/6/19 events, dated 11/7/2019).] Vegas states that, around 5:45 p.m., he could hear Lee "explode in anger with [Igne] about something to do with having to wear pants. [Lee's] voice was very loud as he yelled and swore at [Igne] and seemed to get louder . . . ." [Id.] Vegas also states "[t]here was such a flurry of words coming out of [Lee's] mouth that it was difficult to remember everything [Lee] was saying plus [he] was in another office with the door closed but [he] could still hear [Lee] yelling." [Id.] The next day, Vegas heard Lee "bragging in the shop out loud that [Igne] tried and he cannot touch me, [Martin] cannot touch me and HR cannot touch me." [Id.]

The last coworker present during the incident, Gilbert Castro ("Castro"), also wrote a statement to Martin. [Haen Decl., Exh. R (Castro's written statement, dated 11/7/19).] Castro "heard [Lee] yelling at [Igne] in an angry tone" and

---

[6] The Hesapene Deposition Transcript does not include the reporter's certification. However, L3Harris does not question the deposition transcript's authenticity.

"swearing." [Id. at PageID #: 530.]   Although Castro "could not hear all the details that were being said because [he] was in another room and the office door was closed[,]" he "could tell that [Lee] was very angry and was very loud." [Id. at PageID #: 530-31.]

Martin states that, during his investigation, Lee's coworkers expressed their concerns about Lee's "volatile conduct," and that they were concerned Lee "was a loose cannon and they did not know when [Lee] was going to snap because of how angry he would become about little things." [Martin Decl. ¶ 5]   However, Hesapene testified in his deposition that he did not believe Lee's aggressive behavior created a hostile work environment for him, Igne, Martin, or in general. [Hesapene Depo. Trans. at 39-41.]   Castro testified similarly. [Rosenbaum Decl., Exh. A (excerpts of trans. of 9/22/21 depo. of Castro) ("Castro Depo. Trans.") at 63.[7]]

**III.  Lee's Meeting with Martin and Lee's Leave of Work**

After his investigation, Martin determined that Lee's conduct toward Igne violated L3Harris's policies.   Later that month, Martin met with Lee and a HR representative and they issued a written disciplinary warning to Lee.   The meeting did

---

[7] The Castro Deposition Transcript does not include the reporter's certification.   However, L3Harris does not question the deposition transcript's authenticity.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 10 of 51
                                        PageID.1210
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 8 of 42   PageID #:
                                        1112

not result in a suspension, demotion, or pay cut.  Lee then told

Martin during the meeting that Igne stole gas on the base.

[L3Harris's CSOF ¶¶ 20-21; Lee's CSOF ¶¶ 20-21.]  Martin told

Lee that they would discuss the accusation against Igne later.

[Martin Decl. ¶ 6.]

          At the conclusion of the meeting, Lee told Martin that

he was going to the doctor and then voluntarily left work.  Lee

subsequently filed a workers' compensation claim.  He also

submitted doctor's notes to L3Harris, which stated he was unable

to work for the remainder of November and all of December 2019,

January, February, and March 2020.  [L3Harris's CSOF ¶¶ 22-23;

Lee's CSOF ¶¶ 22-23.]  On December 5, 2019, Ross West ("West"),

a Keaki program manager, asked Lee to give back the security

clearance card previously issued to Lee.  See Lee's CSOF, Decl.

of Preston Lee ("Lee Decl.") at ¶ 114.

**IV.   The Investigation Into Lee's Accusation Against Igne**

          After Lee went on leave, Martin investigated Lee's

accusation that Igne was stealing gasoline and found no evidence

to support the allegation.  [Martin Decl. ¶ 10.]  In December

2019, West informed L3Harris that Lee made a complaint to the

Navy regarding Igne stealing gasoline.  West assigned a Keaki

employee named Scott Taylor ("Taylor") to investigate the

complaint.  [L3Harris's CSOF, Decl. of Danielle Stewart

Case 1:20-cv-00489-LEK-KJM    Document 82    Filed 01/31/22    Page 9 of 42    PageID #:
1113

("Stewart Decl.")[8] ¶ 6.[9]]  Taylor's investigation report noted
that Lee told Taylor that he witnessed Igne steal gasoline from
2007 to 2010.  [L3Harris's CSOF, Decl. of John Kreider ("Kreider
Decl."),[10] Exh. V (email correspondence dated 12/11/19
transmitting Taylor's) at PageID #: 538.]  According to Taylor,
when he asked Lee why he was "just now reporting this in 2019,"
Lee said "[b]ecause [Igne] just turned me in, so I will turn him
in."  [Id. at PageID #: 540.]

        Taylor noted that during his phone interview with Lee,
Lee "talked in a rage with excessive profanity throughout." [Id.
at PageID #: 541.]  Taylor was "shocked by [Lee's] degree of
anger, given that [Lee] was about three weeks removed from his
18 Nov 19 counselling."  [Id.]  Taylor found that Lee "has
serious psychological issues, to include anger management and
low self-esteem, and has demonstrated a pattern of violent
behavior."  [Id. at PageID #: 538.]  His findings also stated
"[t]hat severe friction has existed for several years between
Preston Lee and his co-workers and supervisor that has led to an

--------------------

        [8] Danielle Stewart was employed at L3Harris from July 2018
to May 2021 as a Human Resources Business Partner and Human
Resources Manager.  [Stewart Decl. ¶ 1.]

        [9] See infra Discussion Section I regarding Lee's objections
to two of the declarations submitted by L3Harris.

        [10] John Kreider ("Kreider") is employed at L3Harris as a
General Manager, Surveillance and Automated Solutions.  [Kreider
Decl. ¶ 1.]

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 12 of 51
PageID.1212
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 10 of 42   PageID #:
1114

exceptionally hostile work environment." [Id.] Taylor

therefore recommended that "HR address Preston Lee's obvious

mental instability," and that "Lee not be reassigned to his

current position to reduce the possibility of violence." [Id.

at PageID #: 539.]

Taylor ultimately determined that under the

preponderance of the evidence, there was insufficient evidence

to support the claim that Igne committed gasoline theft. [Id.]

He sent his report to West, and West sent the report to

L3Harris. [Id. at PageID #: 536-37] In the email to L3Harris,

West wrote:

> I also requested a formal investigation to be
> conducted by [the Naval Criminal Investigative
> Service]. Due to the recent two active shooter
> events, many personnel are raising concerns about
> Preston Lee's stability. Preston himself has
> openly told his co-workers that he has been
> diagnosed with PTSD and has had other issues.
> Those concerns were addressed by HR in a
> confidential manner in the past, but I believe we
> need to elevate it concerns to a corporate level
> based upon the findings [Taylor] presented.
> Apparently the situation with Preston Lee's
> stability is deteriorating.

[Id. at PageID #: 536.]

After receiving Taylor's report, L3Harris also

received from the International Brotherhood of Electrical

Workers, Local Union 1260 ("IBEW") statements signed by Lee's

coworkers expressing concern with Lee returning to the

workplace. [Stewart Decl. ¶ 7.]

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 13 of 51
PageID.1213
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 11 of 42   PageID #:
1115

V.    **The Decision to Terminate Lee's Employment**

In January 2020, after reviewing the circumstances involving the incident between Lee and Igne, the statements obtained by both Taylor and the IBEW, and consulting with L3Harris's legal counsel, Stewart recommended to her manager, Amanda Arnold ("Arnold"), that Lee's employment be terminated due to his "aggressive conduct," and to "maintain a safe and healthy workplace." [Id.]  Kreider approved of Stewart's recommendation.  [Kreider Decl. ¶ 4.]

Before L3Harris could notify Lee about the termination decision, Lee presented a doctor's note to L3Harris extending his leave.  Lee's termination was therefore postponed. [L3Harris's CSOF at ¶ 28; Lee's CSOF at ¶ 28.]  On February 27, 2020, Lee dual filed with the EEOC and the Hawai`i Civil Rights Commission ("HCRC") a Charge of Discrimination against L3Harris, alleging disability discrimination and retaliation.  [Jones Decl., Exh. L.]

Also in February 2020, clinical psychologist Peter Bianchi, Ph.D., conducted an independent psychological examination of Lee in connection with Lee's workers' compensation claim.  [L3Harris's CSOF at ¶ 29; Lee's CSOF at ¶ 29; Stewart Decl. ¶ 10.]  Lee's doctor released Lee to return to work effective April 1, 2020.  To evaluate the situation, L3Harris placed Lee on paid administrative leave effective

11

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 14 of 51
                                    PageID.1214
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 12 of 42   PageID #:
                                    1116

April 1, 2020.  [L3Harris's CSOF at ¶¶ 31, 32; Lee's CSOF at

¶¶ 31, 32.]  In an April 5, 2020 letter, L3Harris asked

Dr. Bianchi for a further opinion regarding Lee.  <u>See</u> Haen Decl.

at ¶ 10; L3Harris's Sealed CSOF, Exh. AA (letter from

Dr. Bianchi, dated 4/7/20, responding to 4/5/20 letter request).

L3Harris specifically asked for, among other things,

Dr. Bianchi's opinion "regarding the likelihood of another

episode such as the situation on 11-18-19."  In an April 7, 2020

letter, Dr. Bianchi opined "that without treatment the prognosis

for successful maintenance of occupational functioning without

another episode as the situation on 11-18-19 is at best

guarded."  Dr. Bianchi further opined that it was incumbent upon

Lee's treating physician, Dr. Williamson, to certify that Lee

was cleared to return to work.  [<u>Id.</u>]

          L3Harris also asked West for Keaki's position

regarding Lee returning to work following his administrative

leave.  [Stewart Decl. ¶ 12.]  According to Stewart, West stated

that Keaki would not allow Lee to return to the employee areas

of the base for which access cards were required, unless Lee or

L3Harris could provide medical clearance guaranteeing that Lee

was not a danger to himself or coworkers.  [<u>Id.</u>]

          After discussing with Arnold, Kreider, and legal

counsel, Stewart made a second recommendation to terminate Lee's

employment.  [<u>Id.</u> ¶ 13.]  On June 22, 2020, L3Harris terminated

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 15 of 51
PageID.1215
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 13 of 42   PageID #:
1117

Lee's employment.  [Id. ¶ 14.[11]]  According to Stewart, the final decision to terminate Lee's employment was based on: Lee's comments to Dr. Bianchi; Keaki's refusal to give Lee access to the base unless L3Harris could guarantee that he would not be a danger to himself or others; and the reasons for the initial recommendation to terminate Lee's employment.  [Id.]

On November 13, 2020, Lee filed this action.  The operative pleading is the First Amended Complaint, which alleges: (1) disability discrimination, in violation of the Americans with Disabilities Act ("the ADA") ("Count I"); (2) a retaliation claim under the ADA ("Count II"); (3) a state law disability discrimination claim pursuant to Haw. Rev. Stat. § 378-2 ("Count III"); (4) a state law retaliation claim, pursuant to § 378-2 ("Count IV"); and (5) a state law retaliation claim, pursuant to Hawaii's Whistleblowers' Protection Act ("HWPA"), Haw. Rev. Stat. § 378-62 ("Count V"). [Dkt. no. 20.]  In the instant Motion, L3Harris argues it is entitled to summary judgment on all of Lee's claims because,

---

[11] L3Harris submitted an erratum because the original Stewart Declaration omitted paragraphs 14 and 15.  See Errata Regarding Decl. of Danielle Stewart in Supp. of Defendant L3Harris Technologies, Inc.'s Separate and Concise Statement of Material Facts in Supp. of Its Motion for Summary Judgment, Filed September 29, 2021 [Dkt. 50-3.], filed 10/11/21 (dkt. no. 58).

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 16 of 51
PageID.1216
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 14 of 42   PageID #:
1118

even in viewing the evidence in the light most favorable to Lee,

he cannot establish the elements of any of his claims.

## DISCUSSION

### I.   Lee's Request to Strike Declarations

Lee seeks to strike Stewart and Kreider's declarations

"as to any events that Ms. Stewart and Mr. Kreider did not have

personal, firsthand knowledge of, such as what occurred in the

workplace and at meetings with HR on Kauai for L3[Harris]."

[Mem. in Opp. at 13.]  Lee does not point to any specific

paragraphs in either declaration that should be stricken.

Moreover, Lee neither cites to case law nor civil procedure

rules to support his position.  L3Harris contends the

declarations should not be stricken because they are being used

to establish the legitimate, non-discriminatory reasons for

terminating Lee's employment.  [Reply at 12 n.5.]  The Court

agrees with L3Harris.

"An affidavit or declaration used to support or oppose

a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated."  Fed.

R. Civ. P. 56(c)(4).  "Courts will look to the Federal Rules of

Evidence to determine if the contents of an affidavit would be

admissible."  Parker v. CB Richard Ellis Haw., Inc., No. CV 09-

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 17 of 51
PageID.1217
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 15 of 42   PageID #:
1119

00574 DAE LEK, 2010 WL 5388362, at *3 (D. Hawai`i Dec. 21, 2010)

(citations omitted).

Here, the two declarations concern Stewart and

Kreider's recollection of events pertaining to them and their

roles within L3Harris, including the reasons supporting Lee's

employment termination.  As such, the declarations are proper.

See, e.g., Casumpang v. Hawaiian Com. and Sugar Co., 2014 WL

4322168, at *16 (D. Hawai`i Aug. 29, 2014) (stating that

statements made by employees to associate general counsel and HR

director were not hearsay because their real purpose was to

establish that the company had a legitimate good-faith basis for

suspending and terminating the plaintiff).  Lee's request to

strike the declarations is therefore denied.

## II.  <u>Lee's Discrimination Claims Under the ADA and Hawai`i Law</u>

"Discrimination and retaliation claims under the ADA

are both subject to the burden-shifting framework outlined in

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802–04, 93 S.

Ct. 1817, 36 L. Ed. 2d 668 (1973)."  <u>Curley v. City of N. Las

Vegas</u>, 772 F.3d 629, 632 (9th Cir. 2014) (citations omitted).

> Under that framework, an employee challenging an
> adverse employment action has the initial burden
> of establishing a prima facie case of
> discrimination (or retaliation).  The burden then
> shifts to the employer to provide a legitimate,
> nondiscriminatory (or nonretaliatory) reason for
> the adverse employment action.  If the employer
> does so, then the burden shifts back to the
> employee to prove that the reason given by the

15

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 18 of 51
PageID.1218
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 16 of 42   PageID #:
1120

> employer was pretextual.  See Raytheon [Co. v.
> Hernandez], 540 U.S. [44,] 49-52 & n.3, 124 S.
> Ct. 513 [(2003)]; Brown [v. City of Tuscon], 336
> F.3d [1181,] 1187 [(9th Cir. 2003)]; Snead [v.
> Metro. Prop. & Cas. Ins. Co.], 237 F.3d [1080,]
> 1093 [(9th Cir. 2001)].

Id.

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, "the plaintiff must show that: (1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." Braunling v. Countrywide Home Loans Inc., 220 F.3d 1154, 1156 (9th Cir. 2000) (citation omitted).  The Hawai`i statute prohibiting disability discrimination, Haw. Rev. Stat. § 378-2, is "textually similar" to the ADA and therefore uses the same analysis. French v. Haw. Pizza Hut, Inc., 105 Hawai`i 462, 467, 99 P.3d 1046, 1051 (2004).  Thus, the Court analyzes Lee's ADA and state law discrimination claims together.

16

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 19 of 51
PageID.1219
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 17 of 42   PageID #:
1121

A.   **Lee's Harassment Claims**

As a preliminary matter, L3Harris argues that any disability discrimination claims based on events prior to Lee's termination fail as a matter of law.   In his memorandum in opposition, Lee does not address any of L3Harris's arguments related to Lee's purported disability discrimination claims based on events prior to his employment termination.   Although Lee seemingly alleges disability discrimination before his termination, his claims are unclear.   The only claim Lee seems to allege is that, since disclosing his PTSD diagnosis, he "was harassed and unfairly disciplined."   [First Amended Complaint ¶ 19.]   To the extent Lee brings harassment or hostile work environment claims under the ADA, the Ninth Circuit has not yet resolved whether a plaintiff can bring such claims under the ADA.   See McIntyre v. Eugene Sch. Dist. 4J, 976 F.3d 902, 916 (9th Cir. 2020).

Assuming that a hostile work environment claim is actionable under the ADA,

> a hostile work environment claim exists when
> there is severe or pervasive and unwelcome verbal
> or physical harassment because of a plaintiff's
> membership in a protected class." See Meritor
> Savings Bank, FSB v. Vinson, 477 U.S. 57, 66–67
> (1986)).   To be actionable, the environment must
> be both objectively and subjectively offensive.
>
> When determining whether an environment was
> sufficiently hostile or abusive, courts examine
> all of the circumstances, including the frequency

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 20 of 51
PageID.1220
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 18 of 42   PageID #:
1122

of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance. See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment. Id. at 788; McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004) ("Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment").

Under the ADA, plaintiffs must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 or 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."); 42 U.S.C.A. § 2000e-5 (charge must be filed within 180 days of unlawful practice, but is extended to 300 days when a person initially institutes proceedings with a state or local agency); Stiefel v. Bechtel Corp., 624 F.3d 1240, 1243-44 (9th Cir. 2010) (administrative exhaustion required under ADA); Ramirez v. Reeve-Woods Eye Ctr., 2014 WL 2807638, at *4 (E.D. Cal. June 20, 2014) ("exhaustion of administrative remedies is required under the ADA").

Crowley v. Wal-Mart Stores, Inc., CIVIL NO. 16-00293 SOM/RLP,

2018 WL 4345251, at *8 (D. Hawai`i Sept. 11, 2018).

Lee claims he was harassed in the workplace because:

(1) Igne told HR that he was afraid to work with Lee because of

his PTDS; (2) in or about February 2019, Igne asked Lee why he
did not retire given his disability; (3) in or about March 2019,
Vegas asked in a union meeting how Lee could work if he had a
disability rating for PTSD; and (4) a L3Harris electrician, Tony
Pereira, stated at the same union meeting that L3Harris needed
to let Lee go because his PTSD diagnosis is a liability for the
company.  See Lee Decl. ¶¶ 30—34.  Lee does not provide the
exact dates of these purported harassing statements.  Yet, even
assuming these statements were made on March 31, 2019, Lee did
not file a claim with the EEOC and the HCRC until February 27,
2020, which is not within 180 or 300 days as required.
Accordingly, to the extent that Lee claims harassment or a
hostile work environment based on the statements made in
February and March 2019, those claims are time-barred.[12]  Summary
judgment is therefore granted in favor of L3Harris with respect
to these claims.  See Fed. R. Civ. P. 56(a) (stating summary
judgment shall be granted "if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law").

_____

[12] "The continuing violations doctrine extends the accrual
of a claim if a continuing system of discrimination violates an
individual's rights up to a point in time that falls within the
applicable limitations period."  Douglas v. Cal. Dep't of Youth
Auth., 271 F.3d 812, 822 (9th Cir. 2001) (internal quotation
marks and citation omitted).  Lee does not assert that these
claims are timely given a continuing violation.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 22 of 51
PageID.1222
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 20 of 42   PageID #:
1124

B.   **Lee's Claims Relating to his Employment Termination**

The parties do not dispute the first element needed for a prima facie disability discrimination claim, *i.e.*, that Lee is an individual with a disability within the meaning of the ADA.  See Mem. in Supp. of Motion at 15.  As such, only the second and third elements for a prima facie ADA discrimination claim are analyzed.

1.   **Whether Lee is a "Qualified Individual"**

The Ninth Circuit has stated:

> Section 12111(8) of the ADA explicitly defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

> However, the "Equal Employment Opportunity Commission ('EEOC'), the agency to which Congress delegated authority to implement Title I of the ADA, has promulgated a regulation expanding this definition."  Johnson v. Bd. of Trustees of Boundary Cty. Sch. Dist. No. 101, 666 F.3d 561, 564–65 (9th Cir. 2011) (internal citations omitted) (citing 56 Fed. Reg. 35,726, 35,735 (July 26, 1991)).  The EEOC promulgated 29 C.F.R. § 1630.2(m) to further elaborate upon the meaning of the term "qualified."  That subsection sets forth a two-step inquiry for determining whether the individual is qualified.  We first determine whether the individual satisfies the prerequisites of the job; more specifically, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires."  At step two, we determine whether, "with or without reasonable accommodation," the individual is able to

20

Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 21 of 42   PageID #:
1125

"perform the essential functions of such
position."  29 C.F.R. § 1630.2(m).

Anthony v. Trax Int'l Corp., 955 F.3d 1123, 1127–28 (9th Cir.
2020).

Neither party addresses this issue.  Because Lee
worked as a painter for L3Harris from 2006 until his
termination, see, e.g., Lee Depo. Trans. at 17:13–15, and the
parties do not dispute the issue, there is sufficient evidence
to raise a genuine issue of material fact whether Lee satisfies
the prerequisites of the job.

However, the parties disagree on whether Lee, with or
without reasonable accommodation, can perform the essential
functions of his job.  L3Harris relies on Mayo v. PCC
Structurals, Inc., 795 F.3d 941, 944 (9th Cir. 2015), to argue
Lee cannot appropriately handle stress or interact with others,
and therefore he cannot perform the essential functions of his
job.  See Mem. in Supp. of Motion at 19; Mayo, 795 F.3d at 944
("An essential function of almost every job is the ability to
appropriately handle stress and interact with others." (citation
omitted)).  In Mayo, the Ninth Circuit held that "[a]n employee
whose stress leads to serious and credible threats to kill his
co-workers is not qualified to work for the employer, regardless
of why he makes those threats."  795 F.3d at 944–45.  There, the
plaintiff's employment was terminated because he "threaten[ed]

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 24 of 51
PageID.1224
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 22 of 42   PageID #:
1126

to kill his co-workers in chilling detail" at least five times.
Id. at 944.

Mayo is not analogous because the facts here do not
compare to the "extreme" circumstances in Mayo. See id. at 945
n.4. Depending on the account, Lee told Hesapene the day after
the incident with Igne that he was going to punch Igne through
the face (or that he would like to punch Igne). See, e.g.,
Hesapene Depo. Trans. at 43; Lee Depo. Trans. at 49. That is
the only threat Lee made. Notably, Hesapene testified in his
deposition that he neither believed Lee created a hostile work
environment nor that Lee was going to follow through and punch
Igne. [Hesapene Depo. Trans. at 39-40, 44.] Castro also
testified that he did not believe Lee was a threat to anyone in
the workplace. [Castro Depo. Trans. at 63.] Both Castro and
Hesapene testified that they never witnessed Lee threaten anyone
at the workplace before. [Id. at 63; Hesapene Depo. Trans. at
39.] Unlike in Mayo, where the threats were serious and
credible, it is questionable here whether Lee's threat was
credible.

Viewing the evidence in the light most favorable to
Lee as the nonmoving party, see Harris v. Cnty. of Orange, 17
F.4th 849, 855 (9th Cir. 2021), Lee's adverse reactions stemming
from the one incident are not enough to conclude, as a matter of
law, that Lee cannot perform the essential functions of his job.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 25 of 51
                                        PageID.1225
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 23 of 42   PageID #:
                                        1127

See Mayo, 795 F.3d at 944 (noting that "an employee can be
qualified despite adverse reactions to stress").  Furthermore,
"to the extent that an employer challenges an ADA plaintiff's
claim that he can perform the job's essential functions, . . .
it [is] appropriate to place a burden of production on the
employer to come forward with evidence of those essential
functions."  Bates v. United Parcel Serv., Inc., 511 F.3d 974,
991 (9th Cir. 2007) (citations omitted).  L3Harris only raises
concerns with Lee's ability to appropriately handle stress and
interact with coworkers.  No other evidence that Lee cannot
perform the essential functions of his job has been provided.
Conversely, Lee states he can perform the essential functions of
the job because he has been able to do so for the past twenty-
six years without any negative performance evaluations.  [Lee
Decl. at ¶¶ 18, 47, 60–61.]  Accordingly, Lee raises a genuine
issue as to whether he can perform the essential functions of
his job.

        L3Harris also argues Lee should be estopped from
claiming he is a qualified individual because statements in his
Department of Veterans Affairs ("VA") disability application
contradict his current contention that he possesses the ability
to appropriately handle stress and interact with others.  [Mem.
in Supp. of Motion at 17–20.]  The United States Supreme Court
has considered "the legal effect upon an ADA suit of the

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 26 of 51
PageID.1226
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 24 of 42   PageID #:
1128

application for, or receipt of, disability benefits." Cleveland

v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 800 (1999) (citations

omitted).  Although Cleveland concerned the legal effect of

receiving Social Security Disability Insurance ("SSDI") upon an

ADA claim, the Supreme Court stated that, "[w]hen faced with a

plaintiff's previous sworn statement asserting 'total

disability' or the like, the court should require an explanation

of any apparent inconsistency with the necessary elements of an

ADA claim."  Id. at 807.  The Ninth Circuit has interpreted

Cleveland to apply to "any application for, or receipt of,

disability benefits."  Smith v. Clark Cnty. Sch. Dist., 727 F.3d

950, 956 (9th Cir. 2013) (citing Cleveland, 526 U.S. at 800,

806, 807, 119 S. Ct. 1597).  VA disability applications and

claims are therefore assessed under the Cleveland framework to

determine their effect on ADA claims.

          To determine the legal effect of Lee's VA disability

claim on his ADA claim, a two-step analysis is required.  First,

it must be determined whether, as a legal matter, a claim under

the ADA "inherently conflicts" with a VA disability claim "to

warrant a negative presumption against the ADA claim."  Id. at

956 (brackets, quotation marks, and citations omitted).  Second,

if there is no inherent conflict, then a court must analyze

whether the VA disability claim "genuinely conflict[s]" with the

ADA claim "so as to negate an essential element of [the] ADA claim."  Id. (citation and internal quotation marks omitted).

        First, a VA disability claim does not, as a matter of law, inherently conflict with an ADA claim.  Like SSDI, Public Employees' Retirement System ("PERS"), Family Medical Leave Act ("FMLA"), and private disability insurance claims, which can coexist with an ADA claim, see id. at 957, so too can a VA disability claim.  Because a VA disability claim does not necessarily "account for an applicant's ability to work with reasonable accommodation, it is possible that a person could claim he or she qualifies for disability benefits and still be able to work if accommodated."  Cf. id.

        Second, Lee's VA disability claim does not "genuinely conflict" with his ADA claim.  On February 7, 2019, the VA made a determination regarding Lee's disability claim based on his PTSD.  [Jones Decl. at ¶ 5; L3Harris's Sealed CSOF, Exh. D (VA disability decision) at PageID #: 778.]  The VA considered many documents in making its decision, including a 2018 PTSD evaluation performed by a psychologist.  See generally Jones Decl. at ¶ 10; L3Harris's Sealed CSOF, Exh. I.  The findings in the 2018 PTSD evaluation show that, although it may be challenging for Lee to perform the essential functions of his job, he is not necessarily precluded from doing so.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 28 of 51
PageID.1228
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 26 of 42   PageID #:
1130

Moreover, the findings in the 2018 PTSD evaluation, which L3Harris argues are inconsistent statements, along with the rest of the evidence supporting the VA disability determination, are neither "so blatant as to demonstrate that [Lee] is playing fast and loose with the courts," nor "so damaging that no rational trier of fact could rule in [Lee's] favor." See Fredenburg v. Contra Costa Cnty. Dep't of Health Servs., 172 F.3d 1176, 1179 (9th Cir. 1999) (internal quotation marks omitted).

Furthermore, in Smith, the plaintiff's statements in her PERS and FMLA applications appeared to negate an essential element of her ADA claim – i.e., whether she could perform the essential functions of her job – because her applications stated she was unable to work and was unable to perform either her current job or any comparable job. 727 F.3d at 958. That is not the case here because the VA disability decision did not address Lee's ability to work. Lee also did not make such a claim in his VA disability application. L3Harris's estoppel argument is therefore rejected.

Because there is a genuine issue of material fact concerning whether Lee is a qualified individual under the ADA, and Lee is not estopped from claiming he is a qualified individual, summary judgment as to that issue is improper.

Case 1:20-cv-00489-LEK-KJM    Document 87-1    Filed 03/02/22    Page 29 of 51
PageID.1229
Case 1:20-cv-00489-LEK-KJM    Document 82    Filed 01/31/22    Page 27 of 42    PageID #:
1131

2.    **Whether Lee was Terminated
Because of his Disability**

"[A]n ADA discrimination plaintiff bringing a claim

under 42 U.S.C. § 12112 must show that the adverse employment

action would not have occurred **but for** the disability." Murray

v. Mayo Clinic, 934 F.3d 1101, 1105 (9th Cir. 2019) (emphasis

added), *cert denied*, 140 S. Ct. 2720 (2020).  "For purposes of

the ADA, with a few exceptions, conduct resulting from a

disability is considered to be part of the disability, rather

than a separate basis for termination."[13]  Humphrey v. Mem'l

Hosps. Ass'n, 239 F.3d 1128, 1139-40 (9th Cir. 2001) (footnote

and citation omitted).

In Humphrey, the Ninth Circuit stated:

The link between the disability and termination
is particularly strong where it is the employer's
failure to reasonably accommodate a known
disability that leads to discharge for
performance inadequacies resulting from that
disability.  See Borkowski v. Valley Central Sch.
Dist., 63 F.3d 131, 143 (2d Cir. 1995).  In
Kimbro [v. Atlantic Richfield Co., 889 F.2d 869
(9th Cir. 1989)], for example, we found that
there was a sufficient causal connection between
the employee's disability and termination where
the employee was discharged for excessive
absenteeism caused by migraine-related absences.
See Kimbro, 889 F.2d at 875.  Similarly, Humphrey
has presented sufficient evidence to create a

---

[13] The exceptions to this general rule are when an employee
is discharged for misconduct caused by alcoholism or illegal
drug-use, or for "egregious and criminal conduct."  See
Humphrey, 239 F.3d at 1139 n.18 (citation and quotation marks
omitted).

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 30 of 51
PageID.1230
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 28 of 42   PageID #:
1132

> triable issue of fact as to whether her
> attendance problems were caused by [obsessive
> compulsive disorder ("OCD")].  In sum, a jury
> could reasonably find the requisite causal link
> between a disability of OCD and Humphrey's
> absenteeism and conclude that MHA fired Humphrey
> because of her disability.

Id. at 1140.

Here, L3Harris was aware of Lee's PTSD diagnosis, as
evidenced by the 3/13/19 Meeting.  See, e.g., Stewart Decl. ¶ 4.
According to Lee, the human resource representatives present at
the meeting asked Lee many questions relating to his PTSD
diagnosis, including if he wanted to hurt himself or others, if
he had anger problems, if he needed anger management classes, if
he needed a psychiatrist, and if he needed any accommodations.
Lee states he answered "no" to all those questions.  [Lee Decl.
¶¶ 57—60.]  Although Lee answered the questions in the negative,
a jury could reasonably conclude that L3Harris's questions to
Lee about his PTSD show that it was aware of the possible
symptoms or stereotypes associated with PTSD.  Additionally,
L3Harris received Dr. Bianchi's February 2020 psychological
report about Lee, which highlighted some of Lee's PTSD symptoms.
[Haen Decl. at ¶ 9; L3Harris Sealed CSOF, Exh. Z at PageID
#: 893.]  The evidence, when viewed in the light most favorable
to Lee, suggests that L3Harris had reason to believe Lee's
conduct was associated with his PTSD.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 31 of 51
PageID.1231
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 29 of 42   PageID #:
1133

Ultimately, L3Harris's decision to terminate Lee's employment stems from Lee's conduct during the incident with Igne.[14] See, e.g., Stewart Decl. ¶¶ 7, 14; Kreider Decl. ¶¶ 3-4. Lee's VA disability application and decision, and the psychological evaluation performed by Dr. Bianchi show that Lee's PTSD affects his ability to interact with others, including at work, and can make him irritable.  Viewing the evidence in the light most favorable to Lee, a rational trier of fact could find that, although L3Harris terminated Lee's employment because of his conduct surrounding the incident, his conduct was caused by his PTSD.  Cf. Gambini v. Total Renal Care, Inc., 486 F.3d 1087, 1094 (9th Cir. 2007) ("[T]he jury was entitled to infer reasonably that [the plaintiff's] 'violent outburst' . . . was a consequence of her bipolar disorder, which the law protects as part and parcel of her disability.").  Put differently: but for Lee's conduct, which could reasonably have been caused by his PTSD, Lee's employment would not have been terminated.  Accordingly, there is a genuine issue of material fact as to whether Lee's employment was terminated because of

---

[14] Lee contends his termination letter does not state the reason for his employment termination.  He also states he was never given a reason for his employment termination.  [Lee Decl. ¶¶ 125—26.]

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 32 of 51
PageID.1232
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 30 of 42   PageID #:
1134

his PTSD.  Summary judgment as to this issue is therefore
inappropriate.[15]

### 3.  Legitimate, Non-Discrimination Reason

Because Lee has established a prima facie case of
discrimination, the burden shifts to L3Harris to provide a
legitimate, nondiscriminatory reason for Lee's employment
termination.  The Supreme Court has explained this burden:

> The defendant need not persuade the court that it
> was actually motivated by the proffered reasons.
> See [Bd. of Trs. of Keene State Coll. v.]
> Sweeney, [439 U.S. 24,] 25 [(1978)].  It is
> sufficient if the defendant's evidence raises a
> genuine issue of fact as to whether it
> discriminated against the plaintiff.  To
> accomplish this, the defendant must clearly set
> forth, through the introduction of admissible
> evidence, the reasons for the plaintiff's
> rejection.  The explanation provided must be
> legally sufficient to justify a judgment for the
> defendant.

Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254—55

(1981) (footnotes omitted).

---

[15] L3Harris's sole argument against finding that Lee's
employment was terminated because of his PTSD is that Lee was
terminated more than a year after L3Harris learned about his
PTSD.  [Mem. in Supp. of Motion at 21 (citing Manatt v. Bank of
Am., 339 F.3d 792, 802 (9th Cir. 2003) (nine months too long to
infer causation)).]  L3Harris relies on O'Brien v. R.C. Willey
Home Furnishings, 748 F. App'x 721, 723 (9th Cir. 2018), where
the Ninth Circuit held that "causation may be inferred from
timing alone where an employee is terminated shortly after his
employer discovers that he is disabled."  Although Lee may not
benefit from the inference of causation because he not
terminated shortly after L3Harris found out about his PTSD, that
does not mean L3Harris is entitled to a ruling on summary
judgment that Lee cannot establish causation.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 33 of 51
PageID.1233
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 31 of 42   PageID #:
1135

Stewart states she initially recommended to Arnold in January 2020 that Lee's employment be terminated "due to his aggressive conduct toward his co-workers" and to "maintain a safe and healthy workplace." [Stewart Decl. ¶ 7.] Stewart also states her recommendation "had nothing to do with" Lee's PTSD." [Id. at ¶ 8.] As to her second recommendation around June 2020, Stewart states:

> The final decision to terminate Mr. Lee's employment was based on several factors. First, Mr. Lee's comments to Dr. Bianchi regarding instigating a fight or argument with others for no reason raised concerns about employee safety and disruption to the workplace. His statements suggested that he had not learned from the warning he received in November 2019. Second, Keaki would not allow Mr. Lee access to the base unless L3Harris could guarantee that he would not be a danger to himself or others. Combined with the concerns described above that prompted the initial discussion to terminate Mr. Lee's employment in January 2020, I once again recommended that L3Harris terminate Plaintiff's employment . . . .

[Id. at ¶ 14.] Stewart further relied on Martin's investigation report, which concluded that Lee engaged in aggressive and unprofessional conduct towards Igne that violated L3Harris policies. [Id. at ¶ 5.] Similarly, Kreider states Lee's PTSD diagnosis was not a factor in approving the decision to terminate Lee's employment. [Kreider Decl. ¶ 5.] He also states he "approved the termination decision because of Mr. Lee's disruptive conduct in the workplace." [Id.]

31

L3Harris has provided a legitimate non-discriminatory reason for Lee's employment termination.  Based on the statements from Castro, Igne, Hesapene, Vegas, Martin, Taylor, West, the IBEW, and Dr. Bianchi, L3Harris concluded after its investigation that Lee disrupted the workplace, which can serve as a legitimate non-discriminatory reason for an adverse employment action.  See, e.g., Unt v. Aerospace Corp., 765 F.2d 1440, 1446 (9th Cir. 1985) (stating termination for disrupting work environment can be a legitimate, nondiscriminatory basis); Ogunleye v. Arizona, 66 F. Supp. 2d 1104, 1108 (D. Ariz. 1999) (stating the plaintiff's disruptive presence was a legitimate, nondiscriminatory reason for not renewing her contract).  There appears to be some inconsistent statements made by Hesapene and Castro in their written statements submitted to Martin as compared with their deposition testimony pertaining to whether Lee created a hostile workplace.  See, e.g., Hesapene Depo. Trans. at 39-40; Castro Depo. Trans. at 61-63.  Nevertheless, L3Harris had sufficient reason to believe, at the time of its review, that Lee's conduct was disruptive to the workplace.

Moreover, Lee was found to have violated L3Harris's policies.  See, e.g., Haen Decl., Exh. S (Disciplinary Warning, issued by Martin, dated 11/18/19, describing the company policies violated); Stewart Decl. at ¶ 5.  Violation of company policies and procedures can also be a legitimate,

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 35 of 51
PageID.1235
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 33 of 42   PageID #:
1137

nondiscriminatory reason for termination.  See, e.g., Dumas v. New United Motor Mfg., Inc., 305 F. App'x 445, 448 (9th Cir. 2008); Rezentes v. Sears, Roebuck & Co., 729 F. Supp. 2d 1197, 1205 (D. Hawai`i 2010).  As such, L3Harris has met its burden in providing legitimate, nondiscriminatory reasons for terminating Lee's employment.

### 4.   Pretext

The burden shifts back to Lee to show that L3Harris's proffered reasons for termination were pretextual.  Lee "must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (citation and internal quotation marks omitted).  If Lee "rel[ies] on circumstantial evidence to show pretext, such evidence must be both specific and substantial."  See id. (citation omitted).  In evaluating L3Harris's proffered reasons, the Court "only require[s] that [L3Harris] honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless."  See id. at 1063 (quotation marks and citation omitted).

"Although [Lee] has provided sufficient evidence to support an inference of discrimination, and thus has met [his]

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 36 of 51
PageID.1236
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 34 of 42   PageID #:
1138

burden on [his] prima facie case, that evidence is not
[necessarily] sufficient to raise a genuine issue of material
fact regarding the truth of [L3Harris's] proffered
nondiscriminatory reasons . . . ."  See Snead v. Metro. Prop. &
Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001) (citation
omitted).  Here, Lee raises arguments against some of L3Harris's
proffered reasons, but he does not address L3Harris's reason to
maintain a non-disruptive workplace.  Lee primarily focuses on
L3Harris's reasoning that it wanted to maintain a safe work
environment, i.e., that it was concerned Lee posed a future
threat to the workplace.  See Mem. in Opp. at 20-22.  But, even
assuming that L3Harris could not make a sufficient showing that
Lee posed a credible threat in the future, or that Lee could not
safely return to work, part of L3Harris's reason for terminating
Lee's employment was based on his past threat to punch Igne.
The Ninth Circuit has held that past threats can be "an
independent and sufficient basis for dismissal, regardless of
whether [the plaintiff] posed an actual danger."  Curley v. City
of N. Las Vegas, 772 F.3d 629, 633 (9th Cir. 2014).

        In any event, Lee fails to address L3Harris's
legitimate reason for providing a work environment free from
disruption.  See id. ("Disputing only one of several well-
supported, independently sufficient reasons for termination is
generally not enough to defeat summary judgment." (citations

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 37 of 51
PageID.1237
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 35 of 42   PageID #:
1139

omitted)).  Lee generally argues the basis of his termination

was pretextual because Igne engaged in identical behavior and

was not fired, with the only difference between the two being

that Lee has PTSD and Igne does not.  See Mem. in Opp. at 18.

Lee's framing of the events fails to take the totality of the

circumstances into consideration.  The evidence shows that,

while Igne likely swore at Lee as well, Lee's behavior went

beyond that.  Lee went into the shop and initiated the

discussion with Igne about the power-washing incident.  [Lee

Depo. Trans. at 24.]  Lee's coworkers stated Lee was aggressive

and yelling.  See Haen Decl., Exhs. P, Q, R; Hesapene Depo.

Trans. at 23:2-16; Castro Depo. Trans. at 28:2-21.  Lee also

told a coworker the next day that he was going to, or wanted to,

punch Igne.  See Hesapene Depo. Trans. at 28:13-21.  After

Martin investigated the incident, he concluded that Lee violated

company policy.  [Martin Decl. at ¶ 4.]  Taylor recommended that

L3Harris "address Preston Lee's obvious mental instability."

[Kreider Decl., Exh. V. at PageID #: 539.]  Additionally, IBEW

sent L3Harris statements concerning Lee's behavior.  See Stewart

Decl. at ¶ 7.  Dr. Bianchi provided L3Harris with information

pertaining to Lee's likelihood of disruptive behavior in the

future.  See Haen Decl. at ¶ 10; L3Harris's Sealed CSOF,

Exh. AA.  Although Lee contests the veracity of some of the

statements provided to L3Harris, the evidence reasonably

35

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 38 of 51
PageID.1238
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 36 of 42   PageID #:
1140

supports L3Harris's belief that Lee was disruptive, and that it was concerned about future disruptions.  Importantly, Lee has not identified any evidence to show that L3Harris's belief was not honestly held.

Finally, Lee seems to argue L3Harris's reasons are pretextual because West's email to Kreider and Arnold mentions Lee's PTSD.  [Mem. in Opp. at 21.]  In the email, West states he believes concerns about Lee's stability should be elevated to a corporate level because (1) there were two recent active shooter events; (2) personnel raised concerns about Lee's stability; (3) Lee was telling his coworkers he had PTSD; and (4) HR previously talked with Lee about his PTSD diagnosis.  See Kreider Decl., Exh. V at PageID #: 536.  Lee's argument is not persuasive.  The information relayed to West concerned him enough to raise the concerns to Arnold and Kreider at L3Harris. West does not suggest or tell Arnold and Krieder that Lee's employment should be terminated based on the circumstances raised.  Rather, West elevated the information to higher authority within the company for consideration.  Stewart and Kreider at L3Harris then investigated numerous statements and reports before making a decision about Lee's employment.  West mentioning Lee's PTSD alongside other pressing circumstances does not, by itself, raise a genuine issue of material fact that

36

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 39 of 51
PageID.1239
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 37 of 42   PageID #:
1141

L3Harris's reasons for terminating Lee's employment were pretextual.

Because Lee has not met his burden in raising a genuine issue of material fact that L3Harris's reason for terminating his employment was a pretext for unlawful discrimination, his claims for disability discrimination under the ADA and Hawai`i law must fail. Accordingly, summary judgment in favor of L3Harris as to Counts I and III is appropriate.

**III. Lee's Retaliation Claims**

Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Lee "must make out a prima facie case by showing "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." See Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003) (quotation marks and citation omitted). The burden-shifting framework of McDonnell Douglas applies to this analysis. See id. at 1186. Moreover, Hawaii's statute protecting employees from discriminatory retaliation, Haw. Rev. Stat. § 378-2, is

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 40 of 51
PageID.1240
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 38 of 42   PageID #:
1142

subject to the same analysis as a retaliation claim under the

ADA.  See Lales v. Wholesale Motors Co., 133 Hawai`i 332, 339

n.6, 328 P.3d 341, 348 n.6 (2014).  The Court therefore

considers both claims together.

Lee engaged in a protected activity when he filed his

EEOC and HCRC claim on February 27, 2020.  See Jones Decl.,

Exh. J (Lee's answers to Interrogatories No. 14) at PageID

#: 514.  But, Lee cannot meet his burden to establish a prima

facie case of retaliation because L3Harris decided to terminate

his employment in January 2020, which was before Lee filed his

EEOC and HCRC claim.  Thus, there cannot be a causal link

between the protected activity and the employment termination.

However, even if Lee could establish a prima facie case of

retaliation, summary judgment would be proper for the same

reasons as Lee's discrimination claims.  That is, L3Harris has

provided a legitimate, nondiscriminatory reason for Lee's

employment termination and Lee cannot show that the reason is

pretextual.  See supra Discussion Sections II.B.3 & 4.  Thus,

summary judgment in favor of L3Harris as to Counts II and IV is

proper.

**IV.  Lee's Claim Under the HWPA**

The HWPA "prohibits an employer for retaliating

against an employee who engages in certain protected

activities."  Cambron v. Starwood Vacation Ownership, Inc., 945

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 41 of 51
PageID.1241
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 39 of 42   PageID #:
1143

F. Supp. 2d 1133, 1142 (D. Hawai`i 2013); see generally Haw.

Rev. Stat. § 378-62.

> To establish a prima facie case for
> retaliation under the [HWPA], the plaintiff must
> prove that (1) he engaged in a protected
> activity, (2) he was subjected to an adverse
> employment action, and (3) the adverse employment
> action resulted because of the participation in
> the protected activity.  See Griffin v. JTSI,
> Inc., 654 F. Supp. 2d 1122, 1130–32 (D. Haw.
> 2008) (citing Crosby v. State Dep't of Budget &
> Fin., 76 Hawai`i 332, 876 P.2d 1300, 1310
> (1994)).

> The term "adverse action" is construed
> liberally to include various forms of
> retaliation, not only termination of employment.
> See Crosby, 876 P.2d at 1309–10.  The employee
> must show that his or her protected activity was
> the "substantial or motivating factor" for the
> adverse action.  Griffin, 654 F. Supp. 2d at
> 1131–32.  A court may infer a causal connection
> between a protected activity and a retaliatory
> action when there is proximity in time between
> the two.  Id.

Cambron, 945 F. Supp. 2d at 1142–43.  "Under this analysis,

employers are 'entitled to summary judgment if they can

demonstrate that they would have reached the same adverse

employment decision even in the absence of the employee's

protected conduct.'"  Tagupa v. VIPdesk, Inc., 125 F. Supp. 3d

1108, 1120 (D. Hawai`i 2015) (some internal quotation marks

omitted) (quoting Anthoine v. N. Cent. Counties Consortium, 605

F.3d 740, 752 (9th Cir. 2010)).  HWPA claims are reviewed under

the McDonnell Douglas burden-shifting framework.  See Chan v.

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 42 of 51
                                    PageID.1242
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 40 of 42   PageID #:
                                    1144

Wells Fargo Advisors, LLC, 124 F. Supp. 3d 1045, 1055 (D.
Hawai`i 2015).

     Here, Lee claims that the protected activities he
engaged in were: (1) reporting to Martin and L3Harris that Igne
stole gasoline; and (2) objecting to the violation of the law
related to his security clearance card.  See Mem. in Opp. at 24–
25.  First, Lee reported Igne's alleged gasoline thefts during
Martin's investigation of the incident between Lee and Igne in
November 2019.  Although the decision to terminate Lee's
employment was made approximately two months after Lee reported
Igne's alleged thefts, an inference of causation based on
proximity in time is not enough.  Lee was already being
investigated for misconduct before he reported the gasoline
thefts.  Furthermore, other than timing, Lee fails to point to
any evidence that his report was the substantial or motivating
factor in L3Harris's decision to terminate his employment.

     Second, Lee appears to claim that he was terminated
because he took issue with West asking Lee to give back his
security clearance card.  Specifically, Lee argues that, because
West told Lee that he could give the security card to West's
secretary, West was asking Lee to do something illegal.  See id.
at 25.  Lee testified in his deposition that he neither told
West that giving the security card to West's secretary was
illegal nor objected to West's instruction.  See Lee Depo.

                              40

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 43 of 51
PageID.1243
Case 1:20-cv-00489-LEK-KJM   Document 82   Filed 01/31/22   Page 41 of 42   PageID #:
1145

Trans. at 101:3-102:9.  However, in his declaration in support of his opposition, Lee states that he objected to West on grounds that giving his secretary his security card was not proper.  [Lee Decl. at ¶¶ 115-16.]  "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted).  Even if Lee could point to non-contradictory evidence that he informed West that giving his security clearance to West's secretary was illegal, Lee does not provide any evidence that his employment termination was caused by his remark to West.

Finally, even assuming that Lee established a prima facie case of retaliation under the HWPA, for either purported protected activity, L3Harris has a legitimate non-retaliatory reason for terminating Lee's employment and, Lee has not shown pretext.  <u>See</u> <u>supra</u> Discussion Sections II.B.3 & 4.  Summary judgment is therefore appropriate as to Count V.

<u>CONCLUSION</u>

On the basis of the foregoing, L3Harris's Motion for Summary Judgment on All Claims, filed September 29, 2021, is HEREBY GRANTED, and summary judgment is granted in favor of L3Harris as to all of Lee's claims.  The Clerk's Office is directed to enter final judgment and close the case immediately.

IT IS SO ORDERED.

Case 1:20-cv-00489-LEK-KJM    Document 87-1    Filed 03/02/22    Page 44 of 51
PageID.1244
Case 1:20-cv-00489-LEK-KJM    Document 82    Filed 01/31/22    Page 42 of 42    PageID #:
1146

DATED AT HONOLULU, HAWAII, January 31, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

PRESTON LEE VS. L3HARRIS TECHONOLOGIES, INC.; CV 20-00489 LEK-
KJM; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Case 1:20-cv-00489-LEK-KJM   Document 87-1   Filed 03/02/22   Page 45 of 51
PageID.1245
Case 1:20-cv-00489-LEK-KJM   Document 83   Filed 01/31/22   Page 1 of 1   PageID #: 1147

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

PRESTON LEE

      Plaintiff,

      V.

L3HARRIS TECHNOLOGIES, INC.,
JOHN DOES 1-10, JANE DOES 1-10,
DOE CORPORATIONS 1-10, DOE
PARTNERSHIPS 1-10, DOE
UNINCORPORATED
ORGANIZATIONS 1-10, DOE
GOVERNMENTAL AGENCIES 1-10

      Defendants.

**JUDGMENT IN A CIVIL CASE**

Case: CV 20-00489 LEK-KJM

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

January 31, 2022

At 4 o'clock and 15 min p.m.
MICHELLE RYNNE, CLERK

[ ] **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[✓] **Decision by Court**. This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Defendant L3Harris Technologies, Inc., pursuant to the "Order Granting Defendant's Motion for Summary Judgment", ECF No. 82, filed on January 31, 2022. It is further ordered that the Clerk's Office shall close this case.

January 31, 2022                          MICHELLE RYNNE
—————————————                 —————————————
Date                                          Clerk

                                          /s/ Michelle Rynne by ET
                                   —————————————

                                   (By) Deputy Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                    *1*                        *Rev. 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**<u>Appellants</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**<u>Appellees</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                    *2*                          *Rev. 12/01/2018*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE, | ) CIVIL NO. 20-00489 LEK-KJM |
| | ) (Other Civil Action) |
| Plaintiff, | ) |
| | ) CERTIFICATE OF SERVICE |
| vs. | ) |
| | ) |
| L3HARRIS TECHNOLOGIES, INC.; | ) |
| JOHN DOES 1-10; JANE DOES 1-10; | ) |
| DOE CORPORATIONS 1-10; DOE | ) |
| PARTNERSHIPS 1-10; DOE | ) |
| UNINCORPORATED | ) |
| ORGANIZATIONS | ) |
| 1-10; and DOE GOVERNMENTAL | ) |
| AGENCIES 1-10, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

CERTIFICATE OF SERVICE

I hereby certify that on today's date a copy of the foregoing documents were
duly served via EM/ECF to the following:
   AMANDA M. JONES
   MICHAEL R. SOON FAH
   1000 Bishop Street, Ste. 1200
   Honolulu, HI 96813
   Attorneys for Defendant
   L3HARRIS TECHNOLOGIES, INC.

DATED:  Honolulu, Hawaii, February 25, 2022.

FUJIWARA AND ROSENBAUM, LLLC

By  /s/ Joseph T. Rosenbaum

JOSEPH T. ROSENBAUM
Attorney for Plaintiff
PRESTON LEE

```
MIME-Version:1.0
From:hid_resp@hid.uscourts.gov
To:hawaii_cmecf@hid.uscourts.gov
Message-Id:<3088690@hid.uscourts.gov>
Subject:Activity in Case 1:20-cv-00489-LEK-KJM Lee v. L3Harris Technologies, Inc. Notice
of Appeal
Content-Type: text/html
```

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Hawaii

### Notice of Electronic Filing

The following transaction was entered by Rosenbaum, Joseph on 2/25/2022 at 10:44 AM HST and filed on 2/25/2022

**Case Name:**      Lee v. L3Harris Technologies, Inc.
**Case Number:**    1:20-cv-00489-LEK-KJM
**Filer:**          Preston Lee
**WARNING: CASE CLOSED on 01/31/2022**
**Document Number:** 84

**Docket Text:**
**NOTICE OF APPEAL as to [83] Clerk's Judgment, [82] Order on Motion for Summary Judgment, by Preston Lee. Filing fee $ 505, receipt number AHIDC-2647533. Appeal Record due by 3/28/2022. (Attachments: # (1) Exhibit Order Appealed From, # (2) Exhibit Judgment Appealed From, # (3) Representation Statement, # (4) Certificate of Service) (Rosenbaum, Joseph)**

**1:20-cv-00489-LEK-KJM Notice has been electronically mailed to:**

Amanda M. Jones      ajones@cades.com, rdelto@cades.com

Elizabeth Jubin Fujiwara      elizabeth@hawaii-adr.com, ejf@frlawhi.com, ejfujiwara.paralegal@gmail.com, jtr@frlawhi.com

Joseph T. Rosenbaum      jtr@frlawhi.com, ejfujiwara.paralegal@gmail.com

Michael Raymond Soon Fah      msoonfah@cades.com, ltam@cades.com

**1:20-cv-00489-LEK-KJM Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=2/25/2022] [FileNumber=3088688-0
] [9e7ee1c37524bed4f5a71d62fac173ae677a7f89034b644048fd5e1ae85061682f3
ccb6de74ff0164c92f05e12a1bd926fba2fd2f829bb474e75a235e23940f6]]
**Document description:**Exhibit Order Appealed From
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=2/25/2022] [FileNumber=3088688-1
] [4fa8b1fb74a30f4eedd49d53516b354873512331676a35c99eb3902f3cc269f9c7e
a179b54da8e92e894291d19d1dea6a34d9514ea32c628ecbbb1d1b9837b39]]
**Document description:**Exhibit Judgment Appealed From
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=2/25/2022] [FileNumber=3088688-2
] [916e23afa6ae49689bf0e0457c4af112b05de64d935e02a674f952a91dc61b31695
a92d1fee5bff8562efc22268040ab9415a0f1318e676d1667edc98596cd63]]
**Document description:** Representation Statement
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=2/25/2022] [FileNumber=3088688-3
] [78e7fcfbef72f9638f46ce16cdf9f3c3aeee8e03223ac8b2fec0fce7bf712b235aa
8347d8eba2e2558cb62a817bc8bb37527d890b4feee830067e7089554f778]]
**Document description:**Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=2/25/2022] [FileNumber=3088688-4
] [009ecaa6aed469da75e3152fd2b86fbf45aed4f183680d29fb67bf6e187fb5a39f2
0aa87370a822bc84560d776b89c29e2cf0084d0e073452505c9f75791f2ba]]