IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>    Plaintiff,<br><br>    v.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS 1-10; and DOE<br>GOVERNMENTAL AGENCIES 1-10,<br><br>    Defendants. | CIVIL NO.  1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION FOR SUMMARY<br>JUDGMENT** |

**MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................1

III.  PROCEDURAL HISTORY ...................................................................................6

IV.   LEGAL STANDARDS ..........................................................................................7

    A.    Summary Judgment Standard.......................................................................7

    B.    Spoliation Sanctions ....................................................................................8

V.    ARGUMENT..........................................................................................................9

    A.    Lee's Disability Discrimination Claims Fail As a Matter of Law
        Because He Cannot Meet His Burden to Show That He Is a
        Qualified Individual. ....................................................................................9

    B.    Dismissal Is Also Warranted As a Sanction Due to Lee's
        Spoliation of Evidence. ..............................................................................14

    C.    If Summary Judgment Is Not Entered in its Entirety, Lee's
        Claim for Back Pay and Front Pay Should Also Be Barred
        Based on Lee's Admitted Inability to Work. ..............................................17

VI.   CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adkins v. Wolever*,
    554 F.3d 650 (6th Cir. 2009) .............................................................................. 8

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405–22 (1975) .............................................................................. 18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242–52 (1986) .............................................................. 7, 8, 14

*Anheuser–Busch, Inc. v. Natural Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) .......................................................................... 9

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) (en banc) ...................................................... 9, 10

*Bohl v. City of Sparks*,
    320 F. App'x 770–71 (9th Cir. 2009) .............................................................. 10

*Bushman v. Halm*,
    798 F.2d 651 (3d Cir. 1986) ........................................................................ 22

*Canova v. N.L.R.B.*,
    708 F.2d 1498 (9th Cir. 1983) .................................................................... 19

*Caudle v. Bristow Optical Co.*,
    224 F.3d 1014 (9th Cir. 2000) .................................................................... 18

*Charlton v. Yepez, No. 20-35206*,
    2022 WL 2953699 (9th Cir. July 26, 2022) ...................................................... 8

*Claar v. Burlington N. R. Co.*,
    29 F.3d 499 (9th Cir. 1994) ........................................................................ 22

*E.E.O.C. v. Timeless Invs., Inc.*,
    734 F. Supp. 2d 1035 (E.D. Cal. 2010) ................................................ 19, 20, 21

*Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*,
    116 Hawai'i 277, 172 P.3d 1021 (2007) ...................................................... 22

*French v. Hawaii Pizza Hut, Inc.*,
    105 Hawai'i 462, 99 P.3d 1046 (2004) ............................................................ 9

*Frisone v. United States*,
  270 F.2d 401 (9th Cir. 1959) ................................................................. 22

*Glover v. BIC Corp.*,
  6 F.3d 1318 (9th Cir. 1993) ................................................................. 8

*Head v. Glacier Nw. Inc.*,
  413 F.3d 1053–63 (9th Cir. 2005) ....................................................... 22

*Hutton v. Elf Atochem N. Am., Inc.*,
  273 F.3d 884 (9th Cir. 2001) ............................................................... 9

*Jones v. Williams*,
  791 F.3d 1023 (9th Cir. 2015) ............................................................. 7

*Kaplan v. City of N. Las Vegas*,
  323 F.3d 1226 (9th Cir. 2003) ........................................................... 10

*Kennedy v. Applause, Inc.*,
  90 F.3d 1477 (9th Cir. 1996) ................................................... 7, 10, 11

*Lawler v. Montblanc N. Am., LLC*,
  704 F.3d 1235 (9th Cir. 2013) ........................................................... 11

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
  306 F.3d 806 (9th Cir. 2002) ............................................................... 8

*Moody v. Maine Cent. R. Co.*,
  823 F.2d 693 (1st Cir. 1987) ............................................................. 22

*Porter v. California Dep't of Corrections*,
  419 F.3d 885 (9th Cir. 2005) ............................................................... 7

*Rivera v. NIBCO, Inc.*,
  384 F.3d 822 (9th Cir. 2004) ....................................................... 18, 19

**Statutes**

Haw. Rev. Stat. § 378–2 ......................................................................... 9

**Rules**

Fed. R. Civ. P. 56 ................................................................................... 7

Fed. Rr. Evid. 701 ......................................................................... 21, 22

## I.    INTRODUCTION

The remaining claims at issue require Lee to prove that he was a "qualified individual with a disability" at the time he was terminated, which means that he was able to work and perform his essential job functions.  Lee told SSA and admitted at his deposition he was not able to work beginning in November 2019 (seven months prior to his termination) to the present.  These admissions negate a necessary element of the *prima facie* case upon which Lee bears the burden of proof.  His admissions warrant summary judgment on his remaining claims.  Further, Lee should not be permitted to create a genuine issue of fact by contradicting his sworn testimony or by relying on denials that he hindered L3Harris from challenging by destroying documents after L3Harris requested them.  Lee's spoliation is a separate basis warranting dismissal of his remaining claims.

## II.    FACTUAL BACKGROUND

On June 22, 2020, L3Harris terminated Lee's employment. First Amended Complaint (Dkt. 20) ("**FAC**") ¶ 90.  Records produced by the SSA reflect that ***a week prior to his termination***, Lee contacted the SSA regarding his eligibility for Supplemental Security Income ("**SSI**")[1]. Ex. C.  Despite SSA's letter addressed to

---

[1]SSI is a Social Security program that available to those who have little or no income or resources and are either disabled, blind, or over age 65. *See, e.g.*, SSA website, www.ssa.gov/ssi (last visited June 25, 2024).  Lee is under 65 and thus could only qualify if he were disabled and satisfied the income and resource limits.

Lee at the P.O. Box he used in 2020 confirming this conversation, Lee denies having received the document and denies contacting SSA prior to his termination. *See* Ex. C; Lee Trans. dated May 20, 2024 (**Lee Tr.**) (Ex. A) at 13:10-15:6; 11:24-12:12.

However, Lee **does not dispute** that he contacted SSA three days after his termination, on June 25, 2020, to submit an application for disability benefits. Lee Tr. (Ex. A) at 25:9-25:18, 32:10-13; Ex. D.  SSA sent Lee a summary of that application, in which Lee stated he "**became unable to work because of my disabling condition on November 18, 2019**." Ex. D at 3 (emphasis added); *see also* Ex. J (Lee's Responses to L3Harris's First Request for Admissions ("**RFA**") No. 5 (admitting that Lee informed the SSA that he had been fired on June 22, 2020 and his conditions made him unable to work as of November 18, 2019).  Lee similarly admitted at his deposition that his disability prevented him from working from November 2019 (seven months prior to his termination) to the present.  Lee Tr. (Ex. A) at 38:24-39:3 ("**[B]ecause of my disability it's prohibiting me from working, from November 18th, 2019, to present**.") (emphasis added).

SSA reminded Lee that he submitted his application and statements in support of his benefits claim under penalty of perjury and that Lee examined all the information in the form and the information in his application was true and correct to the best of his knowledge. Ex. D  at 1. SSA's letter also contained a warning that Lee could be prosecuted for making any false statements to the SSA associated with

2

a request for benefits and that Lee had a responsibility to report any changes to the information in his application, such as if his condition improved. *Id.* at 4. Lee never informed SSA that his condition had improved.  Lee Tr. (Ex. A) at 41:21-42:2.

Lee acknowledged his understanding that he was obligated to be truthful in his SSA benefits applications and confirmed that all his statements submitted to the SSA were true and accurate. Ex. J (RFA) No. 26; Lee Tr. (Ex. A) at 10:15-11:1 (testifying that he did not submit any untrue, inaccurate, or false statements to the SSA); 30:22-31:6 ("What they trying to say is don't lie, right, when you fill out. I never lie."); 31:18-31:22 (acknowledging his responsibility to tell the SSA the truth). Lee also understood his obligation to report any changes to the SSA regarding his condition. *Id.* at 30:2-6; 41:17-20.  Lee never amended or corrected any of the information contained in his statements submitted to the SSA or informed the SSA that any information was false, inaccurate, or mistaken. *Id.* at 11:2-5; 71:13-16; Ex. J (RFA) No. 27.

On November 12, 2020, the SSA informed Lee that his application for benefits was disapproved because the SSA determined that Lee was not disabled under the SSA's rules. Ex. F. On December 2, 2020, Lee submitted a Request for Reconsideration which stated: "I disagree with the determination made on my claim for disability-worker or child benefits because 100% disability of PTSD." Ex. G; Lee Tr. (Ex. A) at 50:23-51:7; 51:8-51:21 (confirming that his position when

3

submitting the request for reconsideration was that his PTSD rendered him disabled from working); Ex. J (RFA) Nos. 8, 9 & Ex. A to RFA.

In September 2021, Lee filed another claim for disability benefits with the SSA. Ex. J (RFA) Nos. 10-11; Ex. B to RFA; Ex. H.  Lee's second application provided a different date for when his conditions became severe enough to prevent him from working—June 23, 2020.  Ex. J (RFA) at Ex. B to RFA ¶9; Ex. H (indicating start date of disability on June 23, 2020). Lee testified that this application used that date because his employment was terminated on June 22, 2020. Lee Tr. (Ex. A) at 61:8-15; 62:15-22; 63:7-25.  The disability report submitted on Lee's behalf stated that he stopped working on 6/23/20 "[b]ecause of [his] condition(s)." Ex. J (RFA) at Ex. D to RFA ¶4.C; *see also* Ex. K (same).

In connection with Lee's claims for SSA benefits, Lee submitted reports describing his conditions that rendered him unable to work. Ex. K at 2, Sections 3A & 11 (identifying PTSD and other conditions that limit Lee's ability to work). Ex. J (RFA) at Exs. E & F to RFA.  Lee does not dispute these conditions all predated the termination of his employment.  *See, e.g.*, Lee Tr. (Ex. A) at 67:15-69:7 (testifying that he had all of the conditions listed in the disability report prior to his termination); Ex. L at Section B ¶5, Section C ¶11; (describing problems stemming from his overseas deployment); *see also* Lee Tr. (Ex. A) at 74:6-77:11 (testifying that his preexisting conditions are the reason Lee is on his third marriage and why he lost his

4

kids many years ago).

The SSA awarded Lee with disability benefits and issued the first payment to Lee in March 2023.[2]  Ex. I.  He currently receives $3,032.40 in SSA disability benefits every month. Ex. J (RFA) No. 28; Lee Tr. (Ex. A) at 10:7-10:14.  He also is still receiving VA disability benefits.  Lee Tr. (Ex. A) at 102:7-9.  The amount of disability benefits he is receiving from the SSA and VA is approximately the same as the income he earned when he was working, except that the disability income is tax-free.  *Id.* at 102:10-13; 102:20-23; 103:22-104:6.

Since submitting his application for Social Security disability benefits in June 2020, Lee has never informed the SSA that he became able to work at any time on or after November 18, 2019.  Lee Tr. (Ex. A) at 33:19-23, 108:25-109:2; Ex. J (RFA) No. 30.

Lee contends he remains unable to work. Lee Tr. (Ex. A) at 38:24-39:3; 41:21-42:2; 94:17-94:18 ("Q. Are you able to hold an employment position? A. No."); *id.* at 94:24-95:3 ("Q. So you believe that you don't have the ability to hold down a job? A. No. Q. No, you cannot? A. No, I cannot.").

---

[2] After receiving these benefits, Lee destroyed all the documents relating to his claims for disability benefits, and thus, had nothing to produce.  Lee Tr. (Ex. A) at 15:11-16:8; 16:16-22.  Although Lee listed an email address in documents submitted to SSA and likely corresponded about his claims using that address, he inexplicably was unable to produce any of those emails.  *Id.* at 47:8-18; 48:1-4; 106:13-22; Ex. M (correspondence); Decl. of Amanda M. Jones ("**Jones Decl.**") ¶¶14-15.

## III.   PROCEDURAL HISTORY

On November 13, 2020, Lee initiated this lawsuit. *See* Dkt. 1. On February 11, 2021, he filed the First Amended Complaint. *See* Dkt. 20.

On January 31, 2022, this Court granted L3Harris's Motion for Summary Judgment on all of Plaintiff's claims asserted in his FAC. *See* Dkt. 82. On appeal, the Ninth Circuit affirmed the grant of summary judgment on all claims except for Lee's disability discrimination claims premised on Lee's termination. *See id.* at 1-5.

Prior to the scheduled trial date following remand, L3Harris learned that Lee had applied for and received disability benefits from the SSA.  Jones Decl. ¶23. However, Lee failed to produce relevant documents relating to his SSA benefits, which forced L3Harris to file a motion to continue the trial and reopen discovery. *See* Dkt. 105.  The Court granted the motion. Dkt. 173.

Subsequently, at L3Harris's request, the Court issued a subpoena to the SSA for documents relating to Lee's application for and receipt of SSA benefits. *See* Dkt. 180. L3Harris also sent requests for admissions to Lee and then took his deposition. *See* Dkts. 182, 187.  L3Harris now brings this Motion for Summary Judgment, as authorized by the Second Amended Scheduling Order.[3]  Dkt. 176.

---

[3] Due to delays with receiving the documents subpoenaed from SSA, the parties stipulated to extend the discovery and dispositive motions deadlines.  *See* Dkt. 186.

## IV.   LEGAL STANDARDS

### A.   Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("**FRCP**") 56(a). When the moving party does not have the ultimate burden of persuasion at trial, the movant can satisfy its initial burden by "'either produc[ing] evidence negating an essential element of the nonmoving party's claim . . . or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015). Pursuant to FRCP 56(c)(1), a party asserting that there is no genuine dispute of a fact may support that assertion by citing to materials in the record, including depositions, documents, affidavits, declarations, admissions, and interrogatory answers.

"[O]nce the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who must set forth specific facts showing that there is a genuine issue for trial." *Porter v. California Dep't of Corrections*, 419 F.3d 885, 891 (9th Cir. 2005) (cleaned up). The non-moving party cannot satisfy this burden by presenting testimony that contradicts his prior sworn testimony. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (holding that the plaintiff's testimony did not "'present a sufficient disagreement to require submission to the jury'" where it contradicted both her prior sworn statements and the medial evidence).

## B.    Spoliation Sanctions

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (citation omitted). "Thus, a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009). "A party's duty to preserve begins when it has 'some notice that the [evidence is] potentially relevant to the litigation.'" *See Charlton v. Yepez*, No. 20-35206, 2022 WL 2953699, at \*1 (9th Cir. July 26, 2022) (citation omitted, brackets in the original). A finding of bad faith is not required for the court to impose sanctions, and "simple notice of potential relevance to the litigation" suffices. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (quotation omitted).

Before imposing dismissal as a sanction, courts must consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the

8

public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

### V.    <u>ARGUMENT</u>

**A.    Lee's Disability Discrimination Claims Fail As a Matter of Law Because He Cannot Meet His Burden to Show That He Is a Qualified Individual.**

To establish a *prima facie* case of discrimination under the Americans with Disabilities Act ("**ADA**") and the Hawai'i Employment Practices Act ("**HEPA**"), the plaintiff bears the burden of proving that he: (1) is a disabled person within the meaning of the statute; (2) **is a qualified individual with a disability**; and (3) suffered an adverse employment action because of his disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001) (explaining the elements of the *prima facie* case of discrimination under the ADA that the plaintiff bears the burden of proving); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (en banc) (explaining that "under the ADA, an employee bears the ultimate burden of proving that he is . . . a 'qualified individual with a disability'") (citation omitted); *see also French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004) (holding that the requirements to make out a *prima facie* case of disability discrimination under HRS § 378–2 are the same as under the ADA).

To be a qualified individual, the plaintiff must be able to perform the essential functions of his job with or without a reasonable accommodation.  *Bates*, 511 F.3d

at 989.  If he cannot, "then the ADA's employment protections do not apply." *Id.*

(citation and quotation marks omitted); *see also Kaplan v. City of N. Las Vegas*, 323

F.3d 1226, 1230 (9th Cir. 2003) (holding that an employee must be able to perform

his essential job functions at the time of termination).[4]

Thus, summary judgment is warranted (and has been affirmed by the Ninth

Circuit) where the employee admits that he is unable to work or not capable of

performing the essential functions of his position at the time of his termination.  *See,*

*e.g.*, *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1230–31 (9th Cir. 2003) ("Given

the undisputed medical records and Kaplan's admissions, there is no genuine issue

of material fact whether Kaplan could perform the essential job functions of a deputy

marshal at the time of termination."); *Bohl v. City of Sparks*, 320 F. App'x 770, 770–

71 (9th Cir. 2009) (affirming summary judgment on ADA claim where "Bohl's

admitted inability to perform the essential functions of Senior Marshal compels the

conclusion that he is not a qualified individual"); *Kennedy v. Applause, Inc.*, 90 F.3d

1477, 1482 (9th Cir. 1996) (finding no genuine issue of material fact that plaintiff

could not meet her burden of establishing she was a qualified individual and agreeing

---

[4] Lee has not alleged that he could have performed his job with an accommodation and did not assert a failure to accommodate claim. *See generally* FAC.  When asked prior to his termination whether he needed an accommodation, Lee denied the need for any.  *See, e.g.*, Ex. P (Decl. of Preston Lee (Dkt. 61-5) ¶¶ 59-61).  Therefore, the sole issue is whether Lee was capable of performing his essential job functions at the time of his termination.

that the district court did not need to determine which functions of her position were essential since plaintiff admitted in her Social Security benefit forms and her doctor stated that she was "totally disabled")[5]; *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013) (affirming summary judgment for employer on the plaintiff's state disability discrimination claim based on the plaintiff's admitted inability to perform her essential job functions).

Likewise here, summary judgment should be entered on Lee's disability discrimination claims because Lee has admitted his disability "**prohibit[ed] [him] from working, from November 18th, 2019, to present [2024]**." Lee Tr. (Ex. A) at 38:24-39:3 (emphasis added). Lee made similar assertions under penalty of perjury[6] to the SSA in seeking disability benefits. *See* Ex. J (RFA) No. 5 (admitting that "[a]fter his employment was terminated, Plaintiff Preston Lee told the Social Security Disability Administration that he had been fired on June 22, 2020, and that **his conditions became severe enough to keep from working as of November 18,**

---

[5] The Ninth Circuit found it was not necessary to consider the parties' arguments regarding judicial estoppel because the court found no genuine issue of material fact regarding the "qualified individual" element. *Kennedy*, 90 F.3d at 1481 & n.3.

[6] *See* Ex. J (RFA) No. 26 (admitting that he understood when submitting statements to SSA that anyone who made or caused to be made a false statement or representation of material fact committed a crime punishable under federal law); *see also* Lee Tr. (Ex. A) at 31:18-22 (admitting he understood when submitting information to SSA that he was required to tell the truth).

**2019**")[7] (emphasis added); Ex. D at 3 (asserting in his application to the SSA on June 25, 2020, that he "**became unable to work because of [his] disabling condition on November 18, 2019**") (emphasis added).

Lee denies having submitted any information to SSA that was untrue or inaccurate or that required amendment, Lee Tr. (Ex. A) at 10:15-11:5, and he never informed SSA that these submissions were false, inaccurate, or mistaken, Ex. J (RFA) No. 27. In response to the SSA's initial denial of his disability benefits claim, Lee requested reconsideration, stating he disagreed with the denial because it was his position was that his PTSD rendered him 100% disabled from working. Ex. G; Ex. J (RFA) Nos. 8 & 9 & Ex. A to RFA; Lee Tr. (Ex. A) at 50:10-51:21.

In connection with his claims for disability benefits, Lee also submitted "function reports" to SSA[8] in which Lee stated that his conditions affected his memory, completion of tasks, concentration, following instructions, and getting along with others. Ex. J (RFA) at Ex. E to RFA at page 8 of 10, Question 20a; Ex. L (same document). He told SSA that he could not follow written or spoken instructions well, could not get along with authority figures well, had been fired from

---

[7] *See also* Ex. J (RFA) No. 29 (admitting that at all times since filing his first request for disability benefits that he has taken the position with SSA that he is unable to work due to his conditions); Ex. J (RFA) No. 30 (admitting that he has not at any time since filing his first request for Social Security disability benefits in June 2020 told that SSA that he is able to work).

[8] *See* Ex. J (RFA) Nos. 18-20.

L3Harris because of his problems getting along with other people, did not handle stress well, and could not handle changes in routine. *Id.* at 8-9, Questions 20f-20k.[9]

Lee does not dispute that the conditions that led to the problems described in the documents he submitted to SSA all existed prior to the termination of his employment from L3Harris. Lee Tr. (Ex. A) at 67:15-69:7 (confirming that he had the conditions listed in his second disability claim, which contained a more expanded list of conditions, all existed prior to his termination from L3Harris); *id.* at 74:6-77:11 (testifying that the conditions described in the function report he submitted caused him two prior failed marriages and the loss of his kids many years ago). Lee's assertions that these problems pre-existed his termination is also confirmed by records from the VA, in which prior to his termination, Lee reported getting into fights with co-workers on multiple occasions and had been reprimanded for anger and aggression by his employers. Ex. R. Based on Lee's reports and medical assessments, the VA concluded, prior to Lee's termination, that Lee was 100% disabled based on "occupational and social impairment," "difficulty in adapting to stressful circumstances," "impaired impulse control," and other conditions. Ex. Q. These records are all consistent with the problems that Lee reported to SSA in support of his claim that he was disabled from working beginning November 2019

---

[9] Although Lee did not recall this document, he acknowledged it was his handwriting and after reviewing it at his deposition, confirmed there was no information in it that was incorrect. Lee Tr. (Ex. A) at 73:13-19.

13

to the present.

In sum, Lee's admissions at his deposition, in his responses to the requests for admission, and in statements he made to SSA (submitted under penalty of perjury) in support of his disability benefits claim all demonstrate that Lee cannot establish he was a "qualified individual" when his employment was terminated in June 2020. Lee himself said the opposite. Thus, Lee cannot make a *prima facie* case of disability discrimination. Furthermore, based on his admissions, a jury could not "reasonably find for plaintiff." *Anderson*, 477 U.S. at 252. Therefore, summary judgment should be entered dismissing Lee's disability discrimination claims.

## B. Dismissal Is Also Warranted As a Sanction Due to Lee's Spoliation of Evidence.

In April 2021, L3Harris requested that Lee produce documents relating to his receipt of disability benefits. Jones Decl. ¶16; Ex. N at Nos. 38-40. Despite that pending request and despite having corresponded with SSA throughout 2021 and 2022, Lee did not disclose his Social Security disability benefits claims or receipt of benefits until November 2023. Jones Decl. ¶23. By this point, Lee had destroyed all the documents he had relating to his attempts to obtain SSA benefits. Lee admitted he destroyed everything he had when he received benefits, which occurred in early 2023. Lee Tr. (Ex. A) at 15:11-16:8, 16:16-22; Ex. I. Lee also has not produced any email correspondence regarding his claims for Social Security benefits, despite listing his email address on documents submitted to SSA and being

14

"pretty sure" he used that email address to correspondence with SSA about his claims.  Lee Tr. (Ex. A) at 47:8-18; Ex. E at 8; Ex. K at 1; Ex. M.  No explanation for the lack of emails has been provided.  Jones Decl. ¶¶14-15. If summary judgment were not entered entirely for the reasons described in the prior section, Lee's intentional destruction of documents warrants sanctions including dismissal of his claims.

As discussed above, Lee's admissions about his inability to work from November 2019 to the present demonstrates Lee cannot establish he was a "qualified individual" in June 2020 when L3Harris terminated his employment.  To the extent Lee contends that these admissions do not doom his claim or that his statements to SSA mean something else, Lee should not be allowed to benefit from his destruction of evidence from which L3Harris may have been able to challenge those assertions.

Importantly, Lee responded to many questions at his deposition by contending he could not remember what he said or what he had submitted to SSA as evidence in support of his disability benefits claims.  *See* Lee Tr. (Ex. A) at 52:1-52:22; 65:22-66:9; 66:19-25.  Despite records reflecting that Lee authorized a third party (Andrew Youngman of Citizens Disability) to assist him with his claim[10], Lee testified he did not remember Mr. Youngman and believed he had submitted everything on his own. *Id.* at 52:10-52:15; 54:10-15; 54:23-55:2: 56:17-57:10; 67:4-14.  Lee also could not

---

[10] *See* Ex. J (RFA) Nos. 16-17; Exs. S and T.

recall anything about the medical professionals he was evaluated by or what he said to them. *Id.* at 23:9-14; 28:5-7; 82:11-84:5; 84:15-85-10; 98:11-23.

The delayed production and destruction of documents and emails inhibits L3Harris's ability to fully explore Lee's submissions to SSA, including for example, why when he filed his second disability claim with SSA, he changed the onset date for his disabling condition from November 18, 2019 to June 23, 2020. Ex. H; *see also* Ex. J (RFA) at Ex. B to RFA ¶9. Given his sworn statements that he was disabled from working since November 2019 up to the present, his decision to later change the date on his application should not matter, but if Lee contends it does, he should be precluded from relying on this confusion when he destroyed the evidence that could enable L3Harris to clear it up.

A further example of the prejudice to L3Harris from Lee's destruction of documents relates to Lee having contacted SSA even before his termination, as reflected by a letter produced by SSA confirming a phone call with Lee on June 16, 2020 about his eligibility for SSI. *See* Ex. C. Lee denied having contacted SSA prior to his termination despite his acknowledgment that this letter was properly addressed to the P.O. Box he had in 2020, at which he received other correspondence from SSA. Lee Tr. (Ex. A) at 11:9-12:3; 12:13-15; 13:10-14:12. Had Lee retained the documents he received from SSA, L3Harris may have been able to negate his contention that he did not contact SSA prior to his termination to inquire about

16

benefits due to his disability. Lee should not be able to use his denial of contact (despite a letter produced by SSA to the contrary) to contend there is some factual dispute.

Thus, to the extent that Lee claims that some genuine issue of fact exists with respect to his statements to SSA, he should be precluded from making that assertion given his intentional destruction of documents and failure to produce correspondence that could have enabled L3Harris to address those contentions. If summary judgment were not entered, L3Harris should at a minimum be entitled to an adverse instruction relating to his improper delay in notifying L3Harris of his SSA claims and his improper destruction of documents at a time that Lee was clearly on notice of L3Harris's request for them. The adverse inference/presumption would be that the documents Lee destroyed contained representations that were harmful to Lee's assertions in this action.

**C.    If Summary Judgment Is Not Entered in its Entirety, Lee's Claim for Back Pay and Front Pay Should Also Be Barred Based on Lee's Admitted Inability to Work.**

If the Court does not enter summary judgment entirely, summary judgment should nevertheless be entered on Lee's demand for back and front pay because it is undisputed that Lee was unable to work at the time of his termination to the present. Because Lee admits he was unable to work due to preexisting medical conditions, Lee cannot establish he would have earned wages but for his termination.

17

Consequently, Lee's requests for back pay and front pay should be eliminated as potential remedies.

When exercising their equitable powers to award back pay or front pay, courts are required to focus on the objectives of employment discrimination statutes which is to make victims of unlawful discrimination whole. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421–22 (1975). "An award of back pay is appropriate to advance Congress' intent to make persons whole for injuries suffered through past discrimination." *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) (internal quotations omitted). Similarly, front pay is "made in lieu of reinstatement" and "used to describe damages paid as [prospective] compensation for training or relocating to another position." *Id.* (brackets in the original).

Since the purpose of back pay and front pay is to remedy lost earnings, it is well-established that a precondition for such awards "is that the plaintiff be in all manner **ready, willing and legally capable** of performing alternate work at the commencement and through the backpay period." *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 832 (9th Cir. 2004) (emphasis added); *see also Caudle*, 224 F.3d at 1021 (explaining that "backpay and frontpay or reinstatement are provided as remedies if and only if the alleged discrimination caused the plaintiff damage").

Thus, the plaintiff is not entitled to an award of backpay or front pay for

18

periods where he is unable to work. *See Rivera*, 384 F.3d at 832 (noting that "physical inability to work bars a backpay claim"); *see also*, *Canova v. N.L.R.B.*, 708 F.2d 1498, 1505 (9th Cir. 1983) ("Canova rightly contends that, absent unusual circumstances not here present, an employer is not liable for backpay during periods that an improperly discharged employee is unavailable for work due to a disability."). "The rationale behind this rule is that, because back pay is a compensatory remedy intended to restore the plaintiff to the position that he would have been in had he not been discriminated against, a plaintiff should not be able to receive back pay for a period when he was unable to work for reasons unrelated to the defendant's conduct." *E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1059 (E.D. Cal. 2010).

Here, as discussed above, Lee admits that he was unable to work due to his PTSD and other conditions since November 18, 2019, and he has been unable to work through the present. *See, e.g.*, Lee Tr. (Ex. A) at 38:24-39:3 ("Right now I want to go back to work if I could, but because of my disability it's prohibiting me from working, from November 18th, 2019, to present."); *id.* at 94:17-94:18 ("Q. Are you able to hold an employment position? A. No."); *id.* at 94:24-95:3 ("Q. So you believe that you don't have the ability to hold down a job? A. No. Q. No, you cannot? A. No, I cannot."); *id.* at 33:19-23 (stating that at no time since submitting his application to SSA in June 2020, in which he claimed he was disabled since

19

November 2019, did he inform SSA that he was able to work); *id.* at 108:25-109:2 (confirming he never told SSA that he was capable of working).

Lee's admission that he was unable to work from November 2019 to the present means Lee cannot recover back pay. Further, Lee's contention that he is still unable to work, demonstrates that front pay cannot be awarded either.

Courts have recognized a limited exception to the above where a defendant's discriminatory conduct causes the plaintiff's inability to work. *See, e.g., Timeless Invs.*, 734 F. Supp. 2d at 1059. Lee cannot rely on this exception for several reasons.

First, Lee admitted in his deposition that his inability to work from his PTSD and other conditions started on November 18, 2019, which is **seven months prior** to his termination. His admission negates any contention that his inability to work was caused by an alleged discriminatory termination. Moreover, Lee's remaining disability claims are premised solely on his termination, as any claims based on alleged pre-termination events were previously dismissed.

Second, while Lee may argue that his termination exacerbated his conditions, even if he could prove that, it would not change the fact that he admitted an inability to work ***before*** the termination. Thus, any alleged exacerbation was not the cause of his previously existing inability to work. Indeed, Lee testified that the conditions that made him unable to work starting on November 18, 2019 **have never gotten better** and he continues to suffer from the same conditions to this day. Lee Tr. (Ex.

20

A) at 41:21-42:2 ("Q. Okay. And at any time did you report to the Social Security Administration that your condition had improved from what you initially reported in June, 2020? A. No. The reason why they report nothing because my condition didn't improve. As a matter of fact, it's getting worse."). Therefore, Lee has no evidence to establish that his termination caused his inability to work. *See Timeless Invs.*, 734 F. Supp. 2d at 1059 (holding that "a plaintiff should not be able to receive back pay for a period when he was unable to work for reasons unrelated to the defendant's conduct").

Third, even Lee's second SSA claim, which pushed back the date he contended his condition caused him not to be able to work to June 23, 2020, asserted that his inability to work was due to his conditions, not an alleged wrongful termination.  Ex. J (RFA) at Ex. D to RFA ¶4.C (The disability report submitted on Lee's behalf stated that he stopped working on 6/23/20 "[b]ecause of [his] condition(s)"); Ex. K (same).

Fourth, to establish that he was able to work prior to his termination and the termination itself exacerbated his condition causing him to be unable to work as a result of the termination would require expert testimony, which Lee does not have. Expert testimony is required to establish causation when medical or other scientific knowledge is needed to determine the causal link. *See, e.g.*, FRE 701 (providing that a lay witness may not testify as to anything "based on scientific, technical, or other

21

specialized knowledge" or anything which would not be "helpful to clearly understanding the witness's testimony or to determining a fact in issue"); *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1062–63 (9th Cir. 2005), *overruled on other grounds*, 934 F.3d 1101 (9th Cir. 2019) (holding that a lay witness may not testify as to causation because the witness's lay opinion would not be helpful to the jury); *Frisone v. United States*, 270 F.2d 401, 403 (9th Cir. 1959) ("It is well settled that only expert testimony will be allowed on technical questions of causation.").

Furthermore, if "the question of causal relation is so esoteric that lay minds cannot form any intelligent judgment about it without expert aid an opinion from an expert may be required." *Bushman v. Halm*, 798 F.2d 651, 659 (3d Cir. 1986); *see also Claar v. Burlington N. R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (holding that establishing causation requires expert testimony if it involves specialized knowledge); *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 300, 172 P.3d 1021, 1044 (2007) (collecting Hawaii cases for the same proposition); *Moody v. Maine Cent. R. Co.*, 823 F.2d 693, 696 (1st Cir. 1987) (holding that plaintiff was required to submit expert testimony to show that his fatigue, depression, and angina attacks were caused by workplace harassment because these were not matters "that jurors, as a matter of everyday experience, could casually connect with the injury alleged").

Lee has not identified any expert to opine on the medical conditions that Lee

has, much less to give an opinion that his complex mental health issues were exacerbated by his termination to the point that Lee became unable to work because of the termination. *See* Ex. O at No. 12 (only identifying a wage loss expert); Dkt. 135 (Lee's Final Comprehensive Witness List (identifying no medical expert witness). Because Lee cannot establish that he was able to work during the periods he is seeking wage loss and his testimony establishes the opposite is true, the remedies of back pay and front pay are not available. Thus, the court should enter summary judgment in favor of L3Harris dismissing these remedies.

## VI.    CONCLUSION

For the foregoing reasons, L3Harris respectfully requests that the Court enter summary judgment in its favor on all remaining claims asserted by Lee.

DATED:  Honolulu, Hawai'i, June 28, 2024.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/* Amanda M. Jones
AMANDA M. JONES
MICHAEL R. SOON FAH
Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

23