FUJIWARA AND ROSENBAUM, LLLC

ELIZABETH JUBIN FUJIWARA 3558
JOSEPH T. ROSENBAUM 9205
1100 Alakea St., 20th Fl., Ste B
Honolulu, Hawaii 96813
Telephone: 808-203-5436

Attorneys for Plaintiff
PRESTON LEE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>Plaintiff,<br><br>vs.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS<br>1-10; and DOE GOVERNMENTAL<br>AGENCIES 1-10,<br><br>Defendants. | ) CIVIL NO. 20-00489 LEK-KJM<br>) (Other Civil Action)<br>)<br>) **PLAINTIFF'S MEMORANDUM**<br>) **IN OPPOSITION TO**<br>) **DEFENDANT L3HARRIS**<br>) **TECHNOLOGIES, INC.'S**<br>) **MOTION FOR SUMMARY**<br>) **JUDGMENT ON REMAINING**<br>) **CLAIMS [Dkt. 189];**<br>) **CERTIFICATE OF SERVICE.**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
L3HARRIS TECHNOLOGIES, INC.'S MOTION FOR SUMMARY
<u>JUDGMENT ON REMAINING CLAIMS [Dkt. 189]</u>**

i

# **TABLE OF CONTENTS**

PAGE
I. FACTS RELEVANT TO DEF.'S MOTION……...……………………………….2
II. DEFENDANT'S MOTION DOES NOT MEET THE SUMMARY
JUDGMENT STANDARD……………………………………………………….….5
III. ARGUMENT..…………………….…………….………........................6

   **A.** All Plaintiff's Remaining Claims Meet the Legal Standard to Pass Summary
     Judgment As Mr. Lee Can Show He was a Qualified Individual At the Time
     of Termination………………………………………………………………..6
       i. Plaintiff Is Without Doubt a Qualified Individual with a Disability..…7

       ii. Plaintiff's Throwing Out His SSA Documents Should Not Result In
       Dismissal of This Action……………………………………….……10
   **B.** Mr. Lee's Claim for Back Pay and Front Pay Should Not Be Barred Based
     on Mr. Lee's Admitted Inability to Work As It Was Caused by L3…..……13
IV.CONCLUSION………………………………………...………..……..….…18

# TABLE OF AUTHORITIES

**CASES**                                                          **Page(s)**

*Anheuser–Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir. 1995)……………………………………………….…………………………..12

*Anthony v. Trax Int'l Corp*., 955 F.3d 1123, 1131 (9th Cir. 2020)…………………9

*Asberry v. Relevante*, No. 1:16-cv01741 JLT HBK (PC), 2023 U.S. Dist. LEXIS 45457, at *14-16 (E.D. Cal. Mar. 17, 2023)…………………….......………….16, 17

*Bates v. UPS*, 511 F.3d 974, 989 (9th Cir. 2007)…………………………….….8

*Boren v. Harrah's Entm't*, No. 2:08-cv-00215-GMN-LRL, 2010 U.S. Dist. LEXIS 145231, at *5 (D. Nev. Oct. 26, 2010)……………………….………………15, 16

*Clehm v. BAE Systems Ordnance Systems, Inc.*, No. 7:16-CV-00012, 2018 WL 6594612, at *1 (W.D. Va. Dec. 14, 2018)…………………………………..………13

*Cripe v. City of San Jose,* 261 F.3d 877, 884 (9th Cir.2001)………………...….7

*EEOC v. CTI, Inc*., 2015 U.S. Dist. LEXIS 197452 at 17…………………………8

*E.E.O.C. v. Timeless Invs., Inc.,* 734 F. Supp. 2d 1035, 1059 (E.D. Cal. 2010)…..13

*French v. Hawaii Pizza Hut, Inc.,* 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004)…………………………...……………………………………………………..7

*Gilmore v. Lockard*, 2017 U.S. Dist. LEXIS 20819, 2017 WL 615155, at *2 (E.D. Cal. Feb. 14, 2017)………………………………………………………………16

*Hilliard v. Twin Falls Cty. Sheriff's Office*, 2021 U.S. Dist. LEXIS 199428 at 7………………………………………………………………………………….8,9

*Hutton v. Elf Atochem N. Am., Inc.,* 273 F.3d 884, 891 (9th Cir. 2001)………..….7

*Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1230 (9th Cir. 2003)……………..8

*Kennedy v. Applause,* 90 F.3d 1477, 1481 (9th Cir.1996)…………………………7

*Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir.1994)…………………..…..6

*Lane v. Beach*, 1:20-cv-00147-JLT-GSA (PC), 2023 U.S. Dist. LEXIS 141020, 2023 WL 5183685, at *2 (E.D. Cal. Aug. 11, 2023)………………...……16, 17

*Perez v. Curcio,* 841 F.2d 255, 258 (9th Cir. 1988)………………….....………..6

*Pinson v. United States,* No. CV-19-00401-TUC-RM, 2023 U.S. Dist. LEXIS 159401, at *9 (D. Ariz. Sep. 8, 2023)…………………………….……16

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49, n.3 (2003)…………………….....6

*Sanchez v. County of Graham*, CV-21-73-TUC-JCH, 2023 U.S. Dist. LEXIS 69400, 2023 WL 3022467, at *3 (D. Ariz. Apr. 20, 2023)…………………15-16
*Sanchez v. Master Protec.*, LP, No. CV 208472 PSG (RAOx), 2022 U.S. Dist. LEXIS 105646, 2022 WL 2092995, at *2 (C.D. Cal. May 4, 2022)……………...15

*Schefte v. Reliable Collection Agency, Ltd*., 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001)………………………………………..…………………………7

*Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 956 (9th Cir. 2013)………………..8

*Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987)……………..…………6

iv

## PLAINTIFF'S  MEMORANDUM  IN OPPOSITION  TO DEFENDANT L3HARRIS  TECHNOLOGIES,  INC.'S MOTION  FOR  SUMMARY JUDGMENT  ON REMAINING  CLAIMS  [Dkt. 189]

Plaintiff PRESTON  LEE ("Plaintiff and/or Mr. Lee) **opposes** and urges this Honorable Court to reject Defendant L3HARRIS  TECHNOLOGIES,  INC.'s Motion For Summary Judgment on Remaining Claims [Dkt. 189]("Def.'s Motion").

### I.  FACTS  RELEVANT  TO DEF.'S MOTION

Mr. Lee is a combat veteran who served our country in the United States Navy from 1982-1992. *See* Declaration of Preston Lee ("Lee Decl.") at ¶ 4 attached to Mr. Lee's Concise Statement of Facts ("CSF").  Mr.  Lee served two tours in the Persian Gulf in the late 1980's/early 1990's and has PTSD as a result since 1991. *Id*. at 5-11. Mr. Lee never knew what PTSD was until he was informed of what it is by his doctor in or about 2016-2017 when he spoke about his PTSD symptoms with his VA doctor. *Id*. at 12. Mr. Lee was formally diagnosed with PTSD by at least one of his doctor in or about 2017 or 2018. *Id*. at 13.

After disclosing his PTSD status to Defendant L3HARRIS TECHNOLOGIES,  INC.  (L3), Mr. Lee experienced a variety of actions taken against him in the workplace that ultimately led to Mr. Lee's wrongful termination based on his disability. For the full background of the pertinent facts giving rise to

Mr. Lee's disability claims please see Mr. Lee's Decl. at ¶¶ 4-147.

After Mr. Lee was terminated and as a result of being discriminated against and wrongfully terminated, his PTSD condition and related symptoms deteriorated substantially. *Id.* at ¶ 148. As a result of Mr. Lee's termination and his emotional fallout related thereto, Mr. Lee's condition of PTSD became such that he could no longer work, think clearly, interact with others, be around people, sleep or eat as he normally could prior to the wrongful termination. *Id.* at ¶ 149.

After Mr. Lee's termination, he contacted the Social Security ("SS") Office on June 25, 2020 to file for Social Security Disability Benefits (SSD) as the exacerbation of his PTSD caused by his wrongful termination and his negative thoughts, anxiety and worry regarding the same caused him to be no longer be able to work, think clearly, interact with others, be around people, sleep or eat. *Id.* at ¶ 150. Several of the documents that were produced as a result of Defendant L3Harris's subpoena to the SS office reflect that Mr. Lee initially filed on June 25, 2020. *Id.* at ¶ 151; Ex. B. After being wrongfully terminated, Mr. Lee was essentially losing his mind. He just wanted to be alone and rarely left his house. *Id.* at ¶ 153. Mr. Lee fell into a deep depression. *Id.* at ¶ 154.

Mr. Lee never contacted or filed anything regarding SSD until he was terminated. He did not file anything with the SS office on June 17, 2020. *Id.* at ¶ 155.

2

When Mr. Lee did file for SSD benefits, no one assisted him with filing his initial SSD filing on June 25, 2020. *Id.* at ¶ 156. In fact, Mr. Lee's current counsel was unaware that Mr. Lee filed for SSD until November 2023. Declaration of Joseph T. Rosenbaum at ¶ 4.

In his June 25, 2020 SSD filing, Mr. Lee submitted everything to the best of his knowledge and ability. *Id.* at ¶ 157. Mr. Lee's first SSD application was denied likely because he didn't know how to fill out the form or provide the necessary information and documentation. *Id.* at ¶ 158. When Mr. Lee tried to fill out and file his initial SSD application, he probably filled it out wrong as he gets confused and has headaches when he fills out these types of forms. *Id.* at ¶ 159. As is a well-known symptom of PTSD, Mr. Lee's PTSD causes him to have issues with his short-term memory. *Id.* at ¶ 160. Numerous studies and expert testimonies, in psychology and psychiatry support the phenomenon of delayed and fragmented memory recall in PTSD patients. *See, e.g.*, *Clehm v. BAE Systems Ordnance Systems, Inc.*, No. 7:16-CV-00012, 2018 WL 6594612, at *1 (W.D. Va. Dec. 14, 2018).

In his June 25, 2020 SSD filing, Mr. Lee put the date of disability as November 18, 2019 as that was the last day he actually worked before being terminated. This is what he understood the question to mean at the time. Lee Decl. at ¶ 161.

Mr. Lee never contacted the Social Security office to apply for disability benefits before he was terminated as he thought he would be returned to the workplace after taking his stress leave. *Id*. at ¶ 162; Ex B. Mr. Lee never thought about contacting the Social Security office until he was terminated, and his PTSD symptoms got much worse to the point he could no longer work. at *Id*. ¶ 163. Up until his termination, Mr. Lee was ready and willing to return to work as he previously had been working and completing all of the essential job duties. *Id*. at ¶ 152.  Prior to his termination, Mr. Lee was ready and willing to return to work as he informed L3 via Mr. Lee's doctor, Dr. Williamson. *Id*. ¶ 164.

Mr. Lee filed a second request for SSD benefits on or about October 6, 2021 after his first application was denied. The date Mr. Lee put for the start of his disability in this second SSD application was June 23, 2020, the day after his termination when his PTSD condition got much worse. *Id*. ¶ 165 and Ex C.

Mr. Lee was finally granted his SSD benefits in 2023. *Id*. ¶ 166. When Mr. Lee received his SSD benefits in 2023, he discarded any documents related to his SSD filing as he received the benefits and didn't need them any longer. *Id*. ¶ 167. Mr. Lee searched his email accounts and found no emails from the SS office related to his applications for Social Security Disability benefits. *Id*. ¶ 169.

Mr. Lee has not worked a day since being terminated as he is unable to function at a level that he could be employed. *Id*. ¶ 168.

4

## II. DEFENDANT'S MOTION DOES NOT MEET THE SUMMARY JUDGMENT STANDARD

The Ninth Circuit Court of Appeals is generally reluctant to approve summary judgment in a case in which the motivation or intent of a party is placed at issue, especially in employment rights cases. *See, e.g., Perez v.Curcio,* 841 F.2d 255, 258 (9th Cir. 1988)(emphasis added); *Yartzoff v. Thomas,* 809 F.2d 1371, 1377 (9th Cir. 1987).  Consequently, as the requisite discriminatory intent is inherently a factual question, and is usually proven by inference and circumstantial evidence, it is rare to grant summary judgment in favor of a defendant in a discrimination case. *See Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir.1994) (emphasis added). In employment discrimination cases brought under the *McDonnell Douglas* framework, "[w]e require very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a searching inquiry -- one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. University of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994).

### III.  ARGUMENT

**C. All Plaintiff's Remaining Claims Meet the Legal Standard to Pass Summary Judgment As Mr. Lee Can Show He was a Qualified Individual At the Time of Termination**

5

Discrimination claims under the Americans with Disabilities Act ("ADA") and Section 378-2 of the Hawaii Revised Statutes ("HRS") are analyzed under the McDonnell Douglas burden-shifting framework. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49, n.3 (2003); *Schefte v. Reliable Collection Agency, Ltd*., 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001).

Plaintiff establishes a prima facie case by showing that "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.,* 273 F.3d 884, 891 (9th Cir. 2001); *French v. Hawaii Pizza Hut, Inc.,* 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004).

Def.'s Motion only argues Mr. Lee can't meet the second element of the prima facie case. Because the wrongful termination of Mr. Lee exacerbated his PTSD resulting in his current inability to work, L3 is the cause of Mr. Lee's inability to work and should not be protected by its own adverse actions.

### i.    Plaintiff Is Without Doubt a Qualified Individual with a Disability

An individual is a "qualified individual with a disability" if he can perform the essential functions of the position ***that he holds*** or desires, with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Kennedy v. Applause,* 90 F.3d 1477, 1481 (9th Cir.1996); *see also Cripe v. City of San Jose,* 261 F.3d 877, 884

6

(9th Cir.2001). For twenty-six (26) years Mr. Lee performed his job duties at Barking Sands and with L3 without any negative performance evaluations. Lee Decl at 18, 47, 60-61, 145. Mr. Lee's ability to perform his essential job functions was never called into question. *Id*.

L3 argues that because Mr. Lee can no longer work, evidenced by his SSD filing, after his wrongful termination, this Court should dismiss Mr. Lee's claims because he is not a qualified individual under the ADA or analogous state disability law. However, it is clear from the record and this Court's prior ruling on L3's first Motion for Summary Judgment, that Mr. Lee was a qualified individual at the time of his wrongful termination. *See* this Court's Order Granting Defendant's Motion for Summary Judgment at pgs. 20-26 [Dkt. 82]. Mr. Lee's wrongful termination is what pushed him over the edge resulting in an exacerbation of his PTSD symptoms and his downward spiral causing his current inability to work.

The ADA defines a "qualified individual" as someone who, with or without reasonable accommodation, can perform the essential functions of the employment position ***that they hold or desire***. (Emphasis added). 29 CFR § 1630.2 Definitions; *Bates v. UPS*, 511 F.3d 974, 989 (9th Cir. 2007); *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1230 (9th Cir. 2003) To be considered a qualified individual, the person must meet the requisite skill, experience, education, and other job-related

requirements of the position. *Hilliard v. Twin Falls Cty. Sheriff's Office*, 2021 U.S.

Dist. LEXIS 199428 at 7; *EEOC v. CTI, Inc*., 2015 U.S. Dist. LEXIS 197452 at 17;

*Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 956 (9th Cir. 2013).

In the 9th Circuit, courts have held that an employee must be able to

perform the essential functions of their job **at the time of the adverse**

**employment action, not at some earlier or later time.** *Hilliard v. Twin Falls Cty.*

*Sheriff's Office,* 2021 U.S. Dist. LEXIS 199428 at 7. (Emphasis added). An

employee asserting an ADA claim must show he or she was qualified for the

position *at the time of the adverse employment action*, *rather than some earlier*

*or later time. See Anthony v. Trax Int'l Corp*., 955 F.3d 1123, 1131 (9th Cir.

2020) (citing 29 C.F.R. § 1630.2(m)). (Emphasis added). Thus, evidence of Mr.

Lee's mental breakdown and exacerbation of his PTSD symptoms that occurred

after the discriminatory acts alleged in his ADA and associated state law disability

claims (his termination) is not relevant to whether Mr. Lee was a qualified

individual *at the time* of his termination. Clearly, the evidence, and this Court's

prior ruling on this issue, show that Mr. Lee was a qualified individual under the

ADA *at the time of his termination*.

Although Mr. Lee's disability existed before his termination, it was only

after his termination, which exacerbated his PTSD, that Mr. Lee could no longer

work at all as a result of his PTSD.

Any assertion that Mr. Lee could not work after November 18, 2019 is clearly a disputed fact as Mr. Lee has submitted facts that he was ready and willing to return to work after November 18, 2019 and was cleared to do so by his doctor. Lee Decl. at ¶¶ 122, 148-165 and Exhibit C (Mr. Lee's 2nd SSD application showing he was rendered completely disabled and unable to work as of June 23, 2020). Mr. Lee's first filing *pro se* with the SS Office erroneous informed them his disability began on the last day he actually worked for L3: November 18, 2019. This error was rectified in Mr. Lee's second SSD filing in which Mr. Lee submitted that his disability rendering him unable to work began on June 23, 2020. These facts clearly show that the November 18, 2019 date for Mr. Lee being unable to work was an error by an unsophisticated *pro se* filer who did not understand that the date he last worked was not the date his disability rendered him unable to work.

Based on the facts herein and the clear dispute of material fact as to Mr. Lee being a qualified individual under the ADA, at the time of his termination, a reasonable trier of fact could find for Mr. Lee based on these facts. A reasonable trier of fact could find that Mr. Lee was a qualified individual at the time he was employed and only became unable to work due to his PTSD after he was wrongfully terminated.

### ii.   Plaintiff's Throwing Out His SSA Documents Should Not Result In Dismissal of This Action

It is undenied that after Mr. Lee received his SSD benefits in 2023 he destroyed the documents he received from the SSA office. Mr. Lee testified at his deposition that he was not in possession of any documents he sent to the SSA office as he submitted them to the SSA Office and never retained copies. Ex D. at pg 42-43.

It is also admitted and undeniable that L3 subpoenaed all of the records related to Mr. Lee's SSD filing from the SSA Office and was provided the same. Therefore, L3 has all of the documents that ever existed related to Mr. Lee's application for SSD benefits with the SSA office. Consequently, L3 has in no way been prejudiced by Mr. Lee's throwing away his SSD documents he received from the SSA Office.  Mr. Lee has also provided undisputed evidence that he has no email communications from the SSA office on his email account. Lee Decl at ¶ 169. Moreover, any emails that existed would have been provided in the documents responding to L3's subpoena to the SSA Office.

As made clear by L3 lack of arguing as to the elements of the legal standard L3 cites in *Anheuser–Busch, Inc. v. Natural Beverage Distribs* that would allow for dismissal sanctions based on spoilation, L3 has not met its burden in showing that Mr. Lee's throwing out of the SSA documents should result in sanctions and

10

definitely not a dismissal.  Before imposing dismissal as a sanction, courts must consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser–Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir. 1995). The only element L3 argues, as all others are in favor of Mr. Lee, is the prejudice element. Clearly, as L3 subpoenaed and received all the documents related to Mr. Lee from the SSA Office it can in no way be prejudiced by Mr. Lee not producing the same records (which he did not have in his possession or control). All other elements of the *Anheuser– Busch, Inc. v. Natural Beverage Distribs* test are in favor of Mr. Lee. *To wit:* the public's interest in expeditious resolution of litigation has in no way been hurt by Mr. Lee's throwing away his SSA documents as this matter is set for trial and has not been delayed by Mr. Lee's throwing out his SSA documents. Second, the court's need to manage its dockets has not, in any way, been harmed by Mr. Lee's throwing away of his SSA documents. Third, as noted above there is no prejudice to L3 as they subpoenaed and received the documents related to Mr. Lee's SSD filings. Fourth, as a matter of public policy this case should be heard on the merits and not dismissed on a technicality. Lastly, there are less drastic sanctions including a jury instruction that Mr. Lee threw away his SSA documents. If such

11

an instruction is given, Mr. Lee requests that the instruction also inform the jury that L3 subpoenaed all of the records from the SSA Office related to Mr. Lee and was provided the same from the SSA Office.

As a part of its argument for dismissal sanctions L3 takes issue with Mr. Lee's memory issues. Although the issue of Mr. Lee's memory is not disposition of any issues or arguments raised in Def.'s Motion, Mr. Lee does have memory issues resulting from his PTSD as he testified to at his deposition. Ex D. at pg 26-27. Numerous studies and expert testimonies, in psychology and psychiatry support the phenomenon of delayed and fragmented memory recall in PTSD patients. *See, e.g.*, *Clehm v. BAE Systems Ordnance Systems, Inc.*, No. 7:16-CV-00012, 2018 WL 6594612, at *1 (W.D. Va. Dec. 14, 2018). If Mr. Lee's memory issues are a point of contention as to Mr. Lee's claims or submissions to the SSA Office, L3 has every right to question Mr. Lee at trial or argue the same to the jury at trial. Mr. Lee's poor memory is no reason for a dismissal of this action.

### D. Mr. Lee's Claim for Back Pay and Front Pay Should Not Be Barred Based on Mr. Lee's Admitted Inability to Work As It Was Caused by L3.

As noted in Def.'s Motion at pg. 21, courts have recognized a limited exception to the barring of front and back wages where a former employee is no longer able to work: where a defendant's discriminatory conduct causes the

12

plaintiff's inability to work. *See, e.g.*, *E.E.O.C. v. Timeless Invs., Inc.,* 734 F. Supp. 2d 1035, 1059 (E.D. Cal. 2010).

Mr. Lee can rely on *E.E.O.C. v. Timeless Invs., Inc.* to support his argument that L3 exacerbated his PTSD symptoms via his wrongful termination rendering him unable to work any longer. Therefore, Mr. Lee's back and front wags should not be barred. First, Mr. Lee has repeatedly stated both in his SSA filings, his deposition and in his attached declaration that ***after he was wrongfully terminated*** his PTSD was exacerbated rendering him unable to work from the day after his termination to present.

L3 continues to argue and rely on Mr. Lee's initial mistaken date to the SSA for the beginning of his disability rendering him unable to work. Mr. Lee's mistake is not dispositive and based on the documentation and evidence clearly raises a genuine issue of material fact as to whether L3's wrongful termination of Mr. Lee exacerbated his PTSD and resulted in his inability to work. Mr. Lee has repeatedly contended that he was unable to work as of June 23, 2020. If nothing more, this has now become a disputed material fact.

L3 then argues because Mr. Lee put "his condition" made him unable to work as of June 23, 2020 in his *pro se* SSA filing that it was not his termination and instead his "condition" that was at fault for his inability to work. This myopic, semantic review of the evidence and associated argument can't

13

possibly hold the day as to whether the evidence would allow a reasonable try

of fact to find that Mr. Lee's termination did in fact exacerbated his PTSD

"condition" rendering him unable to work. The undisputed evidence shows that

Mr. Lee worked with PTSD for L3 and its predecessor for decades. Clearly, Mr.

Lee's PTSD condition did not inhibit him from working until it was

exacerbated via his wrongful termination. Mr. Lee has submitted sufficient

evidence that his termination exacerbated "his condition" rendering him unable

to continue to work.

Lastly, L3 argues that Mr. Lee would need expert testimony to show his

termination caused his PTSD to worsen to the point he could no longer work. As

an initial matter, Plaintiff does not dispute that he does not have an expert to

testify. Case law clearly shows that just because a plaintiff does not have an expert

to testify to the causation of a plaintiff's emotional distress, this alone does not

preclude a plaintiff from testifying of how his wrongful termination made him feel.

Ultimately, it should be left up to a jury to determine if Mr. Lee's exacerbation of

his PTSD was caused by the wrongful termination and discrimination.  FRE 701

can be used to bar a lay witness from testifying as to their opinion regarding

causation. *Boren v. Harrah's Entm't*, No. 2:08-cv-00215-GMN-LRL, 2010 U.S.

Dist. LEXIS 145231, at *5 (D. Nev. Oct. 26, 2010). FRE 701 also does not permit

a plaintiff to self-diagnose because this testimony involves scientific, technical, or

14

specialized knowledge. *Sanchez v. Master Protec.*, LP, No. CV 208472 PSG

(RAOx), 2022 U.S. Dist. LEXIS 105646, 2022 WL 2092995, at *2 (C.D. Cal. May

4, 2022). Likewise, a plaintiff may not "testify as a lay witness regarding the

causation of any specific diagnoses or condition." *Sanchez v. County of Graham*,

CV-21-73-TUC-JCH, 2023 U.S. Dist. LEXIS 69400, 2023 WL

3022467, at *3 (D. Ariz. Apr. 20, 2023).

However, as a non-expert witness under FRE 701, a plaintiff may testify as

to what he saw or felt relating to his medical needs or condition. *See Gilmore v.*

*Lockard*, 2017 U.S. Dist. LEXIS 20819, 2017 WL 615155, at *2 (E.D. Cal. Feb.

14, 2017). A lay witness "may relay circumstantial facts to the jury that would

support a finding of causation." *Lane v. Beach*, 1:20-cv-00147-JLT-GSA (PC),

2023 U.S. Dist. LEXIS 141020, 2023 WL 5183685, at *2 (E.D. Cal. Aug. 11,

2023); *Pinson v. United States*, No. CV-19-00401-TUC-RM, 2023 U.S. Dist.

LEXIS 159401, at *9 (D. Ariz. Sep. 8, 2023)

Under FRE 701, a plaintiff may testify about what he did, felt, and

experienced and everything else within his personal perception, including as to

medically related experiences and emotional distress, but not about the conclusions

that his doctors reached about his injuries. *Asberry v. Relevante*, No. 1:16-cv01741

JLT HBK (PC), 2023 U.S. Dist. LEXIS 45457, at *14-16 (E.D. Cal. Mar. 17,

2023). "Just because a lay witness cannot testify about his opinion as to the

15

causation of the emotional distress does not mean that a plaintiff cannot testify about the surrounding facts which prove a causal link between the alleged wrong and the alleged damage, even without an expert." *Boren v. Harrah's Ent. Inc.*, No. 2:08-CV-00215-GMN, 2010 U.S. Dist. LEXIS 145231, 2010 WL 4340641, at *2 (D. Nev. Oct. 26, 2010)

For example, if a plaintiff felt pain or other sensation, this testimony is permitted, but a plaintiff cannot testify as to injuries or causal connections that can only be explained by an expert. *Lane v. Beach*, No. 1:20-cv-00147-JLT-GSA (PC), 2023 U.S. Dist. LEXIS 141020, at *4-5 (E.D. Cal. Aug. 11, 2023); see also *Asberry v. Relevante*, No. 1:16-cv-01741 JLT HBK (PC), 2023 U.S. Dist. LEXIS 45457, at *14-16 (E.D. Cal. Mar. 17, 2023) ("For example, if Plaintiff perceived the bumpy ride and felt the resulting pain, this testimony is permitted. However, he cannot testify as to the injuries he suffered that can only be explained by an expert.)

A plaintiff may also testify as to how *he believes or opines* his injuries were caused. See *Sienze v. Kutz*, 2019 U.S. Dist. LEXIS 49555, 2019 WL 1332184, at *3 (E.D. Cal. Mar. 25, 2019) ("Plaintiff may not testify as to a future prognosis, which would require expert medical opinion, but he may testify as to his direct perceptions of pain, function of his own body parts, his own mental perceptions, and his perceived causes of those ailments."). Additionally, a plaintiff may testify

16

as to *his understanding* of any medical diagnosis he received from a medical professional. *Asberry v. Relevante*, No. 1:16-cv-01741 JLT HBK (PC), 2023 U.S. Dist. LEXIS 45457, at *14-16 (E.D. Cal. Mar. 17, 2023); *see also Myers v. Ill. Cent. R.R. Co.,* 629 F.3d 639, 643 (7th Cir. 2010) (In a negligence claim, "Expert testimony is unnecessary in cases where a layperson can understand what caused the injury. But when there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation."

Here, case law clearly indicates that just because Plaintiff does not have an expert to testify to the causation of his PTSD exacerbation, this alone does not preclude Mr. Lee from testifying of how his wrongful termination by L3 made him feel. Plaintiff should be allowed to present or elicit testimony or other evidence of the exacerbation of his PTSD related to his wrongful termination by L3. Ultimately, it should be left up to a jury to determine whether the exacerbation of Mr. Lee's PTSD was caused by the wrongful termination and discrimination. *See Lane v. Beach*, 1:20-cv-00147-JLT-GSA (PC), 2023 U.S. Dist. LEXIS 141020, 2023 WL 5183685, at *2 (E.D. Cal. Aug. 11, 2023) (A lay witness "may relay circumstantial facts to the jury that would support a finding of causation.")

For all of these reasons, Mr. Lee should be allowed to recover his past and future lost wages should he prevail at trial.

## III. CONCLUSION

For all of the reasons set forth herein and supported by the attached

declaration and exhibit, as well as all of the records and files herein, this Honorable

Court must deny Def.'s Motion.

DATED:    Honolulu, Hawaii; August 8, 2024.

/s/ Joseph T. Rosenbaum
JOSEPH  T. ROSENBAUM
Attorney for Plaintiff Preston Lee