CADES SCHUTTE
A Limited Liability Law Partnership

AMANDA M. JONES          8854
MICHAEL R. SOON FAH      11156
Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
Fax: (808) 521-9210
Email: ajones@cades.com
       msoonfah@cades.com

Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PRESTON LEE,<br><br>       Plaintiff,<br><br>v.<br><br>L3HARRIS TECHNOLOGIES, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>       Defendant. | CIVIL NO. 1:20-CV-00489 LEK-KJM (Other Civil Action)<br><br>**DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIMS, FILED JUNE 28, 2024 [DKT. 189];**<br><br>**DECLARATION OF AMANDA M. JONES;**<br><br>**EXHIBIT U;**<br><br>**CERTIFICATE OF SERVICE** |

**DEFENDANT L3HARRIS TECHNOLOGIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIMS, FILED JUNE 28, 2024 [DKT. 189]**

# TABLE OF CONTENTS

Page(s)

I. ARGUMENT ..................................................................................................1

    A. Lee Has Not Met His Burden to Show That He Was a "Qualified Individual" When L3Harris Terminated His Employment. ...................................................................................1

        1. Lee cannot create an issue of material fact regarding his ability to work at the time of his termination by contradicting his deposition testimony. ......................................2

        2. Lee cannot establish that he is a qualified individual based on his assertion that his termination exacerbated his inability to work. ..................................................5

        3. Lee's contention that the Court's ruling on the previous summary judgment motion forecloses this Motion ignores that the Court did not have the SSA information when it ruled on the prior motion. .............................................6

    B. Summary Judgment Is Also Warranted Based on Lee's Admitted Spoliation of Documents Relating to His Disability Claims. ....................................................................................7

    C. Lee Cannot Recover Wage Loss Because He Lacks a Necessary Expert to Support His Assertion that His Termination "Exacerbated" His PTSD and Caused Lee to Be Unable to Work. ..................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
   69 F.3d 337 (9th Cir. 1995) .................................................................... 9, 10, 11

*Anthony v. Trax Int'l Corp.*,
   955 F.3d 1123 (9th Cir. 2020) ........................................................................ 1, 5

*Bleek v. Supervalu, Inc.*,
   95 F. Supp. 2d 1118 (D. Mont. 2000) ....................................................... 13, 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................ 3

*Claar v. Burlington N. R. Co.*,
   29 F.3d 499 (9th Cir. 1994) ............................................................................. 14

*Clancy v. Miller*,
   837 Fed. Appx. 630 (10th Cir. 2020) .............................................................. 12

*Cleveland v. Pol'y Mgmt. Sys. Corp.*,
   526 U.S. 795 (1999) ............................................................................................ 1

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991) ......................................................................... 2-3

*Moody v. Maine Cent. R. Co.*,
   823 F.2d 693 (1st Cir. 1987) ........................................................................... 13

*Pitts v. Indus. Comm'n of Ariz.*,
   438 P.3d 703 (Ariz. Ct. App. 2019) ................................................................ 12

*Schrum v. Burlington N. & Santa Fe Ry. Co.*,
   286 F. App'x 380 (9th Cir. 2008) ............................................................... 12-13

*Van Asdale v. Int'l Game Tech.*,
   577 F.3d 989 (9th Cir. 2009) ......................................................................... 2, 3

*Yeager v. Bowlin*,
   693 F.3d 1076 (9th Cir. 2012) ................................................................ 2, 3, 4, 5

L3Harris Technologies, Inc. ("**L3Harris**") submits this reply in support of its Motion for Summary Judgment on Remaining Claims, Dkt. 189 ("**Motion**") to address Plaintiff's Memorandum in Opposition to the Motion, Dkt. 194 ("**Opp.**").

## I.     ARGUMENT

**A.     Lee Has Not Met His Burden to Show That He Was a "Qualified Individual" When L3Harris Terminated His Employment.**

It is undisputed that Lee bears the burden of establishing that he was able to work **at the time his employment was terminated**. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) ("Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial. . . . An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability[.]'") (cleaned up, citations omitted); *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1129 (9th Cir. 2020) (explaining "an employee must show she was qualified at the time of the adverse employment action, rather than at some earlier or later time," and the determination is not limited to "the facts known to the employer at the time of the challenged employment action").

Plaintiff attempts to satisfy that burden by submitting a declaration stating that "[u]p until my termination, I was ready and willing to return to work," and that "the exacerbation of my PTSD caused by my termination . . . caused me to no longer be able to work," Lee Decl. ¶¶150, 152.  Based on such assertions, Lee contends that

L3Harris' Concise Statement of Fact ("**L3CSF**") No. 6 (that Lee admitted he was unable to work due to his disabling condition from November 18, 2019 to the present) is "disputed." Lee Concise Statement (Dkt. 195) No. 6. However, Lee's declaration directly contradicts his sworn deposition testimony in which Lee stated that "**because of my disability it's prohibiting me from working, from November 18th, 2019, to present [2024]**." Ex. A to L3CSF at 38:24-39:3. Lee's Opposition entirely ignores this contradictory testimony and that a non-moving party cannot create a genuine issue of material fact by contradicting his prior deposition testimony. Lee proffers no explanation for why that rule should not apply here. This ends the inquiry and Lee's case. Because Lee admitted he was not able to work at the time his employment was terminated, Lee cannot make a *prima facie* case.

   1.   Lee cannot create an issue of material fact regarding his ability to work at the time of his termination by contradicting his deposition testimony.

It is well-established in the Ninth Circuit that "'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)). "This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262,

2

266 (9th Cir. 1991)); *accord Van Asdale*, 577 F.3d at 998 ("The Supreme Court has explained that '[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.' . . . Some form of the sham affidavit rule is necessary to maintain this principle.") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)).[1]

Lee's Opposition entirely ignores his deposition testimony that his disability prevented him from working from November 2019 (seven months before his termination) until the present. He offers **no explanation** for this clear and unambiguous testimony that is directly inconsistent with his declaration. *See Yeager*, 693 F.3d at 1080 (providing that the court must make a factual determination that the contradiction is a sham and the inconsistency between the deposition testimony and subsequent affidavit or declaration is clear and unambiguous).

While ignoring his deposition testimony, Lee argues that his statement submitted under penalty of perjury to the SSA that he "BECAME UNABLE TO

---

[1] Lee argues the Ninth Circuit is reluctant "to approve summary judgment in a case in which the motivation or intent of a party is placed at issue," and that "the requisite discriminatory intent is inherently a factual question." Opp. at 5. However, L3Harris's intention in terminating Lee's employment is not the issue raised in the Motion.

3

WORK BECAUSE OF MY DISABLING CONDITION ON November 18, 2019,"[2] was an "error" resulting from his lack of sophistication [3] and he purportedly understood this question to be asking about the last day he worked. Opp. at 3, 9. Even assuming there was a rational explanation for Lee's purported mistake about SSA's question (and there does not appear to be any), Lee admits he never corrected any alleged "error" with SSA. *See* L3CSF, Ex. A at 11:2-5; Ex. J (RFA) No. 27.

More importantly, even if he had made a mistake on the SSA paperwork, it does not avoid the problem that **Lee expressly testified at his deposition that his disability prevented him from working since November 2019 until the present**. Lee does not contend his deposition testimony was an error and he did not correct that testimony when given an opportunity to do so. *See* Ex. U hereto (reporter certification that no changes were made by Lee). Nor could Lee credibly contend his testimony was erroneous given that it was consistent with Lee's prior statements to SSA. Thus, there is no basis to avoid the sham affidavit rule. *See Yeager*, 693 F.3d at 1081 (providing that a non-moving party is not precluded from clarifying prior

---

[2] Ex. B to Lee's Concise Statement (Dkt. 196) at PageID.4946; *accord* Ex. D to L3CSF at PageID.4665 (same); *see also* Ex. J (Admissions) Nos. 3, 5 (admitting that Lee claimed an inability to function and/or work as of November 18, 2019).

[3] Contrary to the Opp.'s contention that Lee is "unsophisticated," Lee bragged at his deposition about helping friends successfully obtain Social Security benefits by speaking on their behalf. *See* Ex. A (Dkt. 190-2) at 21:1-20 (claiming that he "did all the speaking for this individual" at the Social Security office and that the individual got Social Security disability benefits "because of me"); *id.* at 23:15-24.

deposition testimony and minor inconsistencies resulting from an honest mistake, but such new facts would need to be accompanied by a "reasonable explanation" to avoid striking the declaration).

Therefore, the Court should disregard Lee's declaration and conclude based on Lee's testimony and admissions that he was unable to work beginning in November 2019 until the present, and as such, he was not a "qualified individual" when L3Harris terminated his employment in June 2020.

2. Lee cannot establish that he is a qualified individual based on his assertion that his termination exacerbated his inability to work.

Lee seeks to escape his admissions that he was unable to work by arguing that L3Harris caused his inability to work by terminating him and that L3Harris "should not be protected by its own adverse actions." Opp. at 6. Even if Lee had expert opinion testimony necessary to support this exacerbation theory, it would not help him establish a *prima facie* case, however. As Lee's Opposition acknowledges, whether Lee was a "qualified individual" is determined at the time the termination, not after. Opp. at 8; *see also Anthony*, 955 F.3d at 1129 ("[A]n employee must show [he] was qualified at the time of the adverse employment action, rather than at some earlier or later time."). Thus, it does not matter for the "qualified individual" element of the *prima facie* case if there were an issue of fact regarding whether the termination caused Lee to be unable to work thereafter. Lee's argument conflates the analysis for the *prima facie* case with the exception to the general rule that an

5

inability to work precludes an award of backpay and front pay, which is discussed below. To be qualified, Lee must have been able to work when he was terminated. Lee's deposition testimony and his other admissions demonstrate he was not. Thus, summary judgment should be entered.

> 3. Lee's contention that the Court's ruling on the previous summary judgment motion forecloses this Motion ignores that the Court did not have the SSA information when it ruled on the prior motion.

Lee contends that "this Court's prior ruling on this issue" in deciding L3Harris's motion for summary judgment filed in 2021, "show[s] that Mr. Lee was a qualified individual under the ADA *at the time of his termination*." Opp. at 7-8. In the referenced Order, the Court concluded there was a genuine issue of material fact regarding whether Lee was a "qualified individual." Order (Dkt. 82) at 26.

Critically, however, **Lee had not disclosed** at that time that he had submitted a claim for Social Security disability benefits in which he asserted that he was unable to work since November 2019. Indeed, Lee's counsel says he was not aware of it until November 2023. Rosenbaum Decl. (Dkt. 195-1) ¶4. L3Harris's counsel likewise learned about it for the first time in November 2023 when Lee's counsel provided a supplemental interrogatory response disclosing that Lee was receiving Social Security disability benefits. Jones Decl. (Dkt. 190-1) ¶23. Lee's belated disclosure and the inability to obtain relevant documents and discovery regarding this crucial issue prompted L3Harris to move for a trial continuance and to reopen

6

discovery. Dkt. 105. The Court granted that motion and authorized L3Harris to take a further deposition of Lee and conduct other discovery regarding the SSA documents. Dkt. 173. Given that this evidence was not presented in the prior summary judgment motion (because Lee failed to disclose it), the Court's prior ruling is not a basis to deny this Motion.

**B.    Summary Judgment Is Also Warranted Based on Lee's Admitted Spoliation of Documents Relating to His Disability Claims.**

Even if the Court were to conclude that a genuine issue of material fact existed about Lee's ability to work at the time of his termination, summary judgment is warranted as a sanction for Lee's admitted spoliation of evidence and untimely disclosure of his disability benefits claims. Lee does not dispute that he destroyed **all** the documents he had relating to his SSA benefits claims after L3Harris requested those documents in this litigation. *See* Opp. at 4, 10; Lee Decl. ¶167.

Lee argues that he should get a pass for his spoliation because L3Harris purportedly was not prejudiced. The premise of this argument is that because L3Harris was able to subpoena records from SSA, L3Harris purportedly "has all of the documents that ever existed related to Mr. Lee's application for SSD benefits with the SSA office." Opp. at 10. To the contrary, L3Harris does not have documents relating to Lee's SSA benefits claims that were not produced by SSA, such as Lee's notes regarding his claims and communications with others regarding his SSA claims, such as Andrew Youngman and Citizens Disability, who assisted Lee with

7

his claims.  *See* Ex. J (Admissions) Nos. 15-16 (admitting their involvement); Exs. S, T (forms submitted by Citizens Disability).

Lee's destruction of these documents deprived L3Harris of the ability to fully examine Lee and challenge some of his assertions, including Lee's claimed inability to recall things about his claims.  For example, Lee denies contacting SSA regarding disability benefits prior to his termination. Opp. at 2. However, a letter produced by SSA dated **June 17, 2020** (prior to Lee's termination) states that SSA spoke to Lee on **June 16, 2020**, about his eligibility for SSI, a disability program for those with limited financial resources. Ex. C to L3CSF. Lee contends that the date of the letter (June 17, 2020) and the date referenced in the letter (June 16, 2020) "are error," Lee's CSF No. 2, and maintains he never contacted the agency until after his termination on June 22, 2020, Lee Decl. ¶155. The envelope by which this document was mailed to Lee was not in the SSA subpoenaed records, but would have been received by Lee.  That envelope showing the post-date and notes by Lee would refute Lee's claim that the dates in the SSA letter are erroneous.

Lee's correspondence with Citizens Disability and Mr. Youngman, none of which was produced, could also explain the reason he changed the date of disability in his second disability claim and other matters that L3Harris could use to refute Lee's allegations or address his assertions that he could not remember things about his disability claims. *See* Ex. A to L3CSF at 27:4-9; 28:3-6; 29:4-9; 65:22-66:9;

69:24-70:16; 98:11-23, 100:1-7 (testifying he was unable to remember things relating to his claims); *id.* at 54:10-20, 56:17-57:10, 60:16-21; 67:4-14 (claiming, contrary to his admissions that Citizens Disability was his representative to communicate with SSA and submitted a report to SSA on Lee's behalf (Ex. J at Nos. 15 & 16), that nobody had helped him with any paperwork and he had no recollection of appointing Mr. Youngman as his representative or speaking to him); *id.* at 62:15-22 (testifying he could not explain why the date of his disability on his second claim was different than the first claim); *id.* at 63:7-25 (admitting Mr. Youngman asked Lee when he was terminated but had "no clue" if he discussed with Mr. Youngman what disability date to use).

Lee's spoliation warrants dismissal of his remaining claims because he should not be permitted to create a question of fact after having destroyed the evidence by which L3Harris could challenge his assertions. Each of the *Anheuser* factors weigh in favor of dismissing Lee's claims. *See Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). As to the first and second factors, Lee is receiving disability benefits equivalent to his income from working at L3Harris, except that he pays no income tax on those benefits. Ex. A to L3CSF at 102:7-23; 103:22-104:6. The public's interest in expeditious litigation is not benefitted by using court resources on a trial for an individual who cannot make a *prima facie* case and likewise told the government he was unable to work due a

9

disability beginning months prior to his termination.

As discussed above, the third factor heavily favors L3Harris because it has been prejudiced by Lee's destruction of documents directly relevant to Lee's claim that he was able to work at the time of his termination. *See Anheuser*, 69 F.3d at 353–54 ("'[A] defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.'") (quotation omitted). Fourth, while there is a public policy favoring disposition on the merits, Lee's destruction of documents and delayed disclosure that he filed for disability benefits with SSA unfairly hampered L3Harris's ability to address Lee's assertions about his ability to work with evidence that should have been produced years ago.

Finally, there are no lesser available sanctions to address Lee's conduct. Similar to the situation in *Anheuser* which warranted dismissal sanctions, Lee's "pattern of deception and discovery abuse [has] made it impossible for [this court] to conduct [a] trial with any reasonable assurance that the truth would be available." *Anheuser*, 69 F.3d at 352. Here, Lee knew that L3Harris requested documents pertaining to disability benefits claims, but he destroyed his entire folder of documents and hid his request for SSA benefits for years when the question about Lee's ability to work was plainly at issue.

Lee's destruction of documents has created a situation where L3Harris must

extract admissions from Lee at trial as a substitute for presenting the documents he destroyed, which is particularly difficult given Lee will likely claim an inability to remember why things were done, as he did in his deposition. Under these conditions, it is unfair to allow Lee to bring his case to trial. *Anheuser*, 69 F.3d at 355.

C. **Lee Cannot Recover Wage Loss Because He Lacks a Necessary Expert to Support His Assertion that His Termination "Exacerbated" His PTSD and Caused Lee to Be Unable to Work.**

If the Court does not grant summary judgment on Lee's remaining claims in their entirety for the reasons described above, the Court should enter summary judgment on Lee's claim for wage loss. Despite previously claiming he was looking for jobs after his termination[4], Lee now asserts he became unable to work because of his termination and he has "not worked a day since being terminated as [he is] unable to function at a level that [he] could be employed." Opp. at 4; Lee Decl. ¶168. Lee contends he should be permitted to rely on an exception to the rule that inability to work precludes backpay/front pay awards because the termination of his employment "exacerbated" his PTSD and "cause[d]" his inability to work. Opp. at 6. In addition to the fact that this assertion conflicts with his deposition testimony discussed above that his disabling condition prevented him from working in November 2019, a separate problem is that Lee has no expert testimony to support

---

[4] Dkt. 50-7 (Lee Depo. at 198:15-25) (testifying that after his termination, Lee called three painting companies seeking employment); *see also* Dkt. 50-15 (Ex. J at Interrogatory No.3 (referenced in his testimony).

11

his theory that the termination exacerbated his PTSD and caused an inability to work. *Id.* at 14 ("Plaintiff does not dispute that he does not have an expert to testify."). Because specialized knowledge is needed to establish exacerbation of a complex mental health condition and that such exacerbation *caused* an inability to work, the lack of expert testimony precludes Lee's new exacerbation theory.

Lee's exacerbation theory involves three layers of complication that each would require scientific or specialized knowledge. First, Lee would need to establish that his termination caused an exacerbation of a preexisting, complex psychological condition, PTSD, which condition alone a lay witness is unqualified to self-diagnose.[5] *See, e.g.*, *Clancy v. Miller,* 837 Fed. Appx. 630, 636 (10th Cir. 2020) (determining the plaintiff could not diagnose her PTSD condition); *Pitts v. Indus. Comm'n of Ariz.*, 438 P.3d 703, 707 (Ariz. Ct. App. 2019) ("Due to the complex nature of a PTSD diagnosis, expert testimony is generally required to assess when such a diagnosis could have been made."). The additional element that the termination allegedly **caused** an **exacerbation** of this condition likewise would require expert testimony. *See, e.g.*, *Schrum v. Burlington N. & Santa Fe Ry. Co.*, 286 F. App'x 380, 381 (9th Cir. 2008) ("[T]he aggravation of Schrum's pre-existing asthmatic condition is not the kind of obvious work injury that could be presented to

---

[5] Illustratively, Lee testified that he does not know if he has PTSD. Dkt. 114-4 (Lee Depo. at 125:21-24; 128:4-11).

12

a jury without expert testimony."); *Moody v. Maine Cent. R. Co.*, 823 F.2d 693, 696 (1st Cir. 1987) (holding that plaintiff was required to submit expert testimony to show that his fatigue, depression, and angina attacks were caused by workplace harassment because these were not matters "that jurors, as a matter of everyday experience, could casually connect with the injury alleged").

Second, Lee would need to establish that the exacerbation of his PTSD caused his inability to work, which likewise requires specialized knowledge. *See id.*; s*ee also Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1121 (D. Mont. 2000) (explaining that while a plaintiff seeking damages for injury can testify about his past and present condition, such "testimony alone is not sufficient . . . to establish causation of the injury where the nature of the injury is such that laymen can neither plainly see, nor infer from the injury, its cause or its potential for permanency" and that "qualified medical testimony from an expert witness is necessary to prove the cause or permanence of such injuries").

*Bleek* is particularly instructive, as it involved ADA and wrongful discharge claims by an employee who alleged that the termination of his employment caused his PTSD to worsen and caused him to become 100% disabled. 95 F. Supp. 2d at 1121. The plaintiff sought to have two licensed counselors testify to this effect, but neither was a medical expert qualified to testify that his termination caused plaintiff to become 100% disabled. *Id.* The court concluded they were not qualified to render

13

such an opinion and granted the defendant's motion to exclude any evidence or argument on the issue of whether the defendant's termination of plaintiff caused him to become 100% disabled. *Id.*

Third and related to the previous point, Lee would need to establish that his inability to work was not the result of the other conditions in his complicated medical history, including his prior PTSD symptoms, which as noted above, he told SSA caused him to be unable to work in November 2019 through the present, as well as the other conditions identified in his claims for disability benefits that Lee admits all pre-dated his termination. *See* Ex. A to L3CSF at 67:15-69:7; Ex. K to L3CSF.

The Opp. contends that Lee does not need an expert because Lee may "testify as to what he saw or felt relating to his medical needs or condition" and then the jury may infer that Lee's condition was caused by his termination. Opp. at 14-17. While a jury can infer causation based on lay testimony in "situations in which no special expertise was necessary to draw a causal inference," expert testimony is required "if drawing a particular conclusion [regarding causation] requires specialized knowledge." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994). Specialized knowledge is needed for the complex causation issue presented with Lee's new exacerbation theory.

Lee's Opposition acknowledges that a lay witness like Lee cannot testify "regarding the causation of any specific diagnoses or condition." Opp. at 15. But

14

that is precisely what Lee attempts to do. *See* Lee Decl. ¶¶149-150 (asserting that "[a]s a result of my termination and my emotional fallout related thereto, my condition of PTSD became such that I could not work . . . as I normally could prior to the wrongful termination" and "the exacerbation of my PTSD caused by my termination and my negative thoughts, anxiety and worry regarding the same caused me to be no longer able to work").

The Opp. also cites a variety of cases, mostly in the context of excessive force or prisoner abuse, in which plaintiffs were permitted to testify about physical injuries sustained from the alleged abusive conduct or distress from being wrongfully imprisoned. None of these cases involve issues like those that exist here, where a plaintiff seeks to prove that an event **exacerbated a pre-existing, complex psychological condition** and that such exacerbation **caused** an inability to work. Because Lee lacks the requisite expert testimony to establish that his termination caused an exacerbation of PTSD, which caused an inability to work, the Court should enter summary judgment on his wage loss claims.

DATED: Honolulu, Hawaiʻi, August 15, 2024.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/* Amanda M. Jones
AMANDA M. JONES
MICHAEL R. SOON FAH
Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.